No. 22-1843

IN THE UNITED STATES COURT OF APPEALS
FEDERAL CIRCUIT

In re: Chestek PLLC,
*Appellant.*

On Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board
Serial No. 88938938

## Opening Brief of Appellant Chestek PLLC

ANDREW M. GROSSMAN
KRISTIN A. SHAPIRO
RENEE M. KNUDSEN
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., NW,
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

*Counsel for Appellant Chestek PLLC*

## Certificate of Interest

Counsel for Appellant Chestek PLLC certifies the following:

1. The full name of every party represented by me is Chestek PLLC.

2. The real party in interest is named.

3. There is no corporate party to this proceeding.

4. The names of all firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or that are expected to appear in this Court (and who have not already entered an appearance in this case) are: Pamela S. Chestek and Chestek PLLC.

5. Related cases are addressed in the Statement of Related Cases, *infra*.

6. This is neither a criminal case with organizational victims, nor a bankruptcy case with debtors or trustees.

Dated: September 9, 2022          */s/ Andrew M. Grossman*
                                 Andrew M. Grossman

# Table of Contents

Introduction ................................................................................ 1

Jurisdictional Statement ............................................................. 3

Statement of Issues..................................................................... 3

Statement of the Case................................................................. 3

    A.   Statutory and Regulatory Background ............................... 3

    B.   The PTO's 2019 Rulemaking ........................................... 5

          1.   The PTO's Proposed Rule Disclaims Any Impact on U.S. Applicants and Any New Reporting Requirements ......................... 6

          2.   The PTO Reverses Course in the Final Rule and Imposes a Domicile-Address-Disclosure Requirement on All Applicants, Including U.S. Applicants................................ 10

          3.   Facing Serious Criticism, the PTO Scrambles to Limit the Fallout ................................................................. 12

    C.   Chestek's Trademark Application and Administrative Appeal .......... 16

Summary of Argument................................................................ 17

Argument ................................................................................... 18

    I.   Standard of Review ...................................................... 18

    II.   The PTO's Failure to Provide Notice of the Domicile Address Requirement Renders It Invalid and Unenforceable ............................. 19

    III.  The Domicile Address Requirement is Arbitrary and Capricious ...... 26

    IV.  The PTO's Denial of Chestek's Trademark Application Was Arbitrary, Capricious, and Not in Accordance With Law..................... 34

Conclusion ................................................................................ 36

# Table of Authorities

## Cases

*Abbott Lab'ys v. Gardner*,
387 U.S. 136 (1967) .................................................................. 36

*Align Tech., Inc. v. Int'l Trade Comm'n*,
771 F.3d 1317 (Fed. Cir. 2014) ........................................27, 30

*Allina Health Servs. v. Sebelius*,
746 F.3d 1102 (D.C. Cir. 2014) ............................................. 24

*Am. Water Works Ass'n v. EPA*,
40 F.3d 1266 (D.C. Cir. 1994) ............................................... 19

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
941 F.3d 1320 (Fed. Cir. 2019) .............................................. 36

*Ass'n of Priv. Sector Colls. & Univs. v. Duncan*,
681 F.3d 427 (D.C. Cir. 2012) ...........................................20, 21

*Aqua Prod., Inc. v. Matal*,
872 F.3d 1290 (Fed. Cir. 2017) .............................................. 36

*Chesapeake Climate Action Network, et al. v. EPA*,
952 F.3d 310 (D.C. Cir. 2020) ............................................... 25

*CSX Transp., Inc. v. Surface Transp. Bd.*,
584 F.3d 1076 (D.C. Cir. 2009) ............................................. 24

*Daimler Trucks N. Am. LLC v. EPA*,
737 F.3d 95 (D.C. Cir. 2013) ................................................. 22

*Dickinson v. Zurko*,
527 U.S. 150 (1999) .............................................................. 35

*Dominion Resources, Inc. v. United States*,
681 F.3d 1313 (Fed. Cir. 2012) .............................................. 28

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016) .................................................... 27, 28, 29

*Env't Integrity Project v. EPA*,
425 F.3d 992 (D.C. Cir. 2005) ............................................... 24

*GHS Health Maint. Org., Inc. v. United States*,
536 F.3d 1293 (Fed. Cir. 2008) .................................................. 27, 29, 34

*Hylete LLC v. Hybrid Athletics, LLC*,
931 F.3d 1170 (Fed. Cir. 2019) .............................................................. 18

*Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*,
407 F.3d 1250 (D.C. Cir. 2005) ............................................................. 21

*Kooritzky v. Reich*,
17 F.3d 1509 (D.C. Cir. 1994) ................................................... 20, 24, 25

*Ky. Mun. Energy Agency v. FERC*, No. 19-1236, __ Fed. 4th __,
2022 WL 3131169 (D.C. Cir. Aug. 5, 2022) ......................................... 33

*Matal v. Tam*,
137 S. Ct. 1744 (2017) ........................................................................... 36

*McKinney v. McDonald*,
796 F.3d 1377 (Fed. Cir. 2015) ....................................................... 26, 27

*Mid Continent Nail Corp. v. United States*,
846 F.3d 1364 (Fed. Cir. 2017) ...................................................*passim*

*Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.*,
7 F.4th 1110 (Fed. Cir. 2021) ............................................................... 33

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.*,
463 U.S. 29 (1983) ........................................................................... 27, 30

*Nat'l Lifeline Ass'n v. FCC*,
921 F.3d 1102 (D.C. Cir. 2019) ............................................................. 28

*Nat'l Min. Ass'n v. Mine Safety & Health Admin.*,
116 F.3d 520 (D.C. Cir. 1997) ............................................................... 21

*Pro-Football, Inc. v. Blackhorse*,
709 F. App'x 182 (4th Cir. 2018) .......................................................... 36

*Rural Cellular Ass'n v. FCC*,
588 F.3d 1095 (D.C. Cir. 2009) ............................................................. 31

*Shell Oil Co. v. EPA*,
950 F.2d 741 (D.C. Cir. 1991) ............................................................... 25

*Sierra Club v. U.S. Fish & Wildlife Serv.*,
245 F.3d 434 (5th Cir. 2001) .......................................................... 18, 35

*Sirona Dental Sys. GmbH v. Institut Straumann AG*,
   892 F.3d 1349 (Fed. Cir. 2018) .............................................................. 18

*Spirit Airlines, Inc. v. U.S. Dep't of Transp. & Fed. Aviation Admin.*,
   997 F.3d 1247 (D.C. Cir. 2021) ........................................................33, 34

*Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers v. Fed. R.R. Admin.*, 988 F.3d 1170 (9th Cir. 2021) ............................................ 24

*Veterans Just. Grp., LLC v. Sec'y of Veterans Affs.*,
   818 F.3d 1336 (Fed. Cir. 2016) .............................................................. 30

## Statutes and Regulations

5 U.S.C. § 551 ................................................................................................ 19

5 U.S.C. § 552a .............................................................................................. 34

5 U.S.C. § 553 ................................................................................................ 19

5 U.S.C. § 706 ..........................................................................................18, 26

15 U.S.C. § 1051 .............................................................................................. 3

15 U.S.C. § 1070 ............................................................................................ 35

15 U.S.C. § 1071 .............................................................................................. 3

28 U.S.C. § 1295 .............................................................................................. 3

20 C.F.R. § 656.30 .....................................................................................20, 21

37 C.F.R. § 2.2 ...........................................................................................7, 22

37 C.F.R. § 2.6 .........................................................................................14, 32

37 C.F.R. § 2.11 .....................................................................................5, 7, 23

37 C.F.R. § 2.22 .............................................................................................. 8

37 C.F.R. § 2.27 ............................................................................................ 12

37 C.F.R. § 2.32 ............................................................................... 5, 8, 10, 20

37 C.F.R. § 2.63 ............................................................................................ 35

37 C.F.R. § 2.141 .......................................................................................... 35

37 C.F.R. § 2.189 .....................................................................................11, 20

37 C.F.R. § 110.2 (1947) ................................................................ 5

Pub. L. No. 79-489, ch. 540, Title 1, 60 Stat. 429 (July 5, 1946) ...................... 3

*Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants*, 84 Fed. Reg. 4393 (Feb. 15, 2019) .......................................6, 23

*Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants*, 84 Fed. Reg. 31498 (July 2, 2019) .................... 10, 11, 12, 20, 28

## Other Authorities

Anonymous Attorney, Comment Regarding Proposed Rulemaking (Feb. 18, 2019) ...................................................................................... 9

Bill Donahue, Law360, *USPTO Alters Trademark Rules After Immigration Backlash* (Sept. 6, 2019) .......................................................... 15

Carl Oppedahl, *Current status of "tell us where you sleep at night?"* (May 29, 2020) ................................................................................... 13

Carl Oppedahl, *Helping the Commissioner for Trademarks to smoke out non-domicile mailing addresses* (Feb. 2, 2020) ................................................ 25

Dep't of Health and Human Servs., Provider Reimbursement Review Board, *Marion Mem'l Hosp. v. Wis. Physicians Serv.*, 2022 WL 203694 (Jan. 12. 2022) ................................................................................ 35

Domicile, Oxford Dictionary of Law ............................................................ 4

Eric Perrott, *All Foreign Trademark Applicants Must Hire U.S. Attorneys* .............. 5

International Trademark Association Comments in Response to: Proposal to Require U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants (Mar. 15, 2019) ................................................ 9

Josh Gerben, *USPTO 'Oversight' Discloses 21,000+ Email Addresses* .................. 32

Ltr. to David S. Gooder, Commissioner for Trademarks, from One Hundred Eleven Trademark Applicants and Petitioners (May 27, 2022) ......... 32

PTO, Examination Guide 4-19, *Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants* (Aug. 2019) ......................... 15

PTO, Petition to Director Granted (May 23, 2020) ...................................... 14

Rulemaking Docket, Requirement of U.S. Licensed Attorney for Trademark Applicants and Registrants Not Domiciled in the United States ........ 8

Statement and Declaration of Trade-Mark No. 29,034 (registered Oct. 27, 1896) ................................................................................................ 4

Tiffany Hu, Law360, *USPTO Has 'Taken Steps' After Applicant Email Exposure* (May 31, 2022) ................................................................... 32

Tim Lince, World Trademark Review, *"Shaky legal ground"—the unintended consequences of USPTO requests for proof of legal residence* (Aug. 28, 2019) ...................................................................................... 8

Tim Lince, World Trademark Review, *USPTO releases revised examination guide following backlash* (Sept. 6, 2019) .................................. 15

Tim Lince, World Trademark Review, *USPTO to re-allow PO boxes on trademark applications following privacy backlash* (Jan. 13, 2020).................. 14

Tim Lince, World Trademark Review, *"Your very life may be at risk"—USPTO urged to reconsider domicile requirement due to safety concerns* (Sept. 20, 2019) ................................................................................... 13

TMEP § 601.01 ...................................................................... 14, 31

TMEP § 803.05 ............................................................................ 5

TMEP § 1708 ............................................................................. 14

Trademark/Service Mark Application, Principal Register, Version 5.2, PTO Form 1478 (Rev. 09/2006) ............................................... 4

## **Statement of Related Cases**

Pursuant to Federal Circuit Rule 47.5, Appellant Chestek PLLC states that no appellate court has heard an appeal from the proceeding in this case, and that there are no cases known to counsel to be pending in this or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

## Introduction

For well over a century, the Patent and Trademark Office accepted trademark applications and issued trademarks without requiring applicants to disclose their domicile address—that is, for individuals, the place where they sleep at night. In 2019, the PTO abruptly reversed course, issuing a rule requiring all applicants to disclose their domicile address. "Abrupt" is no exaggeration: the PTO's proposed rule did not even hint at that requirement and, in fact, expressly disclaimed that the agency had any intention of imposing new reporting requirements on applicants or affecting U.S. applicants in any fashion. Why the PTO reversed course remains a mystery, as the agency has never offered any logical justification for imposing the requirement.

The PTO's carelessness in this rulemaking has already had serious consequences. Victims of domestic violence, stalking victims, celebrities, and others who safeguard their privacy have good reason to be wary of disclosing their home addresses, particularly when longstanding PTO rules required the agency to make those addresses public. The backlash from the trademark community was swift, and the PTO scrambled to make *ad hoc* adjustments to its procedures to blunt the impact somewhat.

The concern, confusion, and chaos that followed the PTO's final rule could have been avoided if it had followed the Administrative Procedure Act. If the PTO had given notice that it was going to require that applicants disclose their home addresses, the same parties who protested the final rule could have informed the agency that its proposal was dangerous, unworkable, and

unnecessary. And if the PTO had given a moment's thought to any of these things, it would surely have changed course—as it belatedly did, in part, following the backlash. It may have concluded that there was no need to depart from a century of practice, particularly given the risks and burdens of doing so, and dropped the new requirement entirely. Or if it believed that home addresses are somehow necessary to enforce its new U.S.-counsel requirement for foreign applicants—which would be pure speculation—it may have adopted a narrower approach limiting the class of applicants required to disclose their domicile address, such as exempting applicants already represented by U.S. counsel. At a minimum, it may have sought to address the impact on applicant privacy in some way. But the final rule provides no indication that the agency considered any of these things. It does not even explain what the agency believed the new requirement would achieve.

The PTO's failure to seek public comment on the domicile address requirement, and failure to consider the many issues that requirement raises, are not mere technical violations of the APA. They go to the heart of the APA's insistence on public participation in rulemaking, so that agencies can understand the potential effects of their proposals, and rational rulemaking, so that agencies properly and fairly carry out the public missions assigned to them by Congress. The PTO fell far short of those standards here, and then it rejected Appellant Chestek PLLC's trademark application based solely on its non-compliance with the domicile address requirement. That requirement should be set aside as invalid, and the PTO's rejection of Chestek's application vacated.

## Jurisdictional Statement

This Court has jurisdiction over Chestek PLLC's ("Chestek") appeal from the Opinion and Order of the Trademark Trial and Appeal Board, dated March 30, 2022, pursuant to 28 U.S.C. § 1295(a)(4)(B) and 15 U.S.C. § 1071(a). This appeal, noticed on May 26, 2022, is timely.

## Statement of Issues

1.    Whether the domicile address requirement is invalid because it is not a logical outgrowth of the PTO's notice of proposed rulemaking, which affirmatively repudiated any impact on U.S. applicants and any new reporting requirements.

2.    Whether the domicile address requirement is arbitrary and capricious where the PTO failed to provide any explanation for its adoption, failed to consider the requirement's obvious impacts on applicant privacy, and failed to consider obvious alternatives like exempting applicants represented by U.S. counsel.

3.    Whether the PTO's denial of Chestek's trademark application was arbitrary, capricious, or otherwise not in accordance with law.

## Statement of the Case

### A.    Statutory and Regulatory Background

Since its enactment in 1946, the Trademark Act has required trademark applications to include a "specification of the applicant's domicile and citizenship." 15 U.S.C. § 1051(a)(2); *see* Pub. L. No. 79-489, ch. 540, Title 1, § 1(a)(1), 60 Stat. 429 (July 5, 1946). Significantly, the Act's "domicile" specification

requirement does not require applicants to provide any *address*, much less their home address. This is so because the provision only requires applicants to specify their "domicile"—*i.e.*, the *jurisdiction* to which they are most attached and not any *address*. *See* Domicile, Oxford Dictionary of Law ("The country that a person treats as his permanent home and to which he has the closest legal attachment.").[1]

Consistent with the Trademark Act—and prior to the 2019 rule change—the PTO's practice for over 100 years had been *not* to require applicants to specify their home or business address. In order to satisfy the Act's domicile specification requirement, the PTO simply collected city, state, and country information. *See, e.g.*, Trademark/Service Mark Application, Principal Register, Version 5.2, the PTO Form 1478 (Rev. 09/2006) (prior application form with fields for "City," "State," and "Country or U.S. Territory");[2] Statement and Declaration of Trade-Mark No. 29,034 (registered Oct. 27, 1896) (application specifying only state, city, and county);[3] *see also* Appx57 (Chestek's trademark application, specifying country, state, and city).[4]

---

[1]    *Available at* https://www.oxfordreference.com/view/10.1093/oi/authority.20110803095725802#:~:text=N.,birth%20a%20domicile%20of%20origin (last visited Sept. 7, 2022).

[2]    *Available at* https://www.uspto.gov/sites/default/files/trademarks/teas/new_teas.pdf.

[3]    *Available at* https://tsdr.uspto.gov/documentviewer?caseId=sn70029034&docId=ORC20051015220351#docIndex=0&page=1.

[4] The Trademark Act also contains no restrictions preventing applicants from filing *pro se*. Indeed, prior to the 2019 rule change discussed below, the PTO regulations stated that applications *may* be represented by an attorney, but they

In order to facilitate communication with applicants, the PTO regulations long have required applicants to provide their "address." *See* 37 C.F.R. § 2.32(a)(4) (effective July 11, 2015); *see also* 37 C.F.R. § 110.2 (1947); 37 C.F.R. § 2.32 (1965). The PTO interpreted these regulatory provisions to require only that "[t]he written application must specify the applicant's *mailing* address," which could "consist of a post office box" or a care-of address. Trademark Manual of Examining Procedure ("TMEP") § 803.05 (Oct. 2012) (emphasis added).[5]

## B.     The PTO's 2019 Rulemaking

In one of its "biggest policy changes in decades," the PTO commenced a rulemaking in 2019 principally directed at requiring foreign applicants to engage U.S. counsel. Eric Perrott, *All Foreign Trademark Applicants Must Hire U.S. Attorneys*, Gerben.[6] Ultimately, the PTO issued a final rule that, in addition to the U.S. counsel requirement for foreign applicants, ensnared U.S. applicants by requiring all applicants to provide their home or business address ("domicile address"). The PTO did not, however, provide prior notice and opportunity for public comment on the new domicile address requirement. Indeed, its proposed rule disclaimed any impact on U.S. applicants and any new reporting requirements.

---

have never required representation. *See* 37 C.F.R. § 2.11 (effective Sept. 15, 2008) ("Applicants *may* be represented by an attorney." (emphasis added)).

[5]     *Available at* https://tmep.uspto.gov/RDMS/TMEP/Oct2012#/Oct2012/TMEP-800d1e1.html.

[6]     *Available at* https://www.gerbenlaw.com/blog/pro-se-foreign-applicants-must-hire-u-s-attorneys/ (last visited Sept. 7, 2022).

1.    **The PTO's Proposed Rule Disclaims Any Impact on U.S. Applicants and Any New Reporting Requirements**

The PTO issued a proposed rule on February 15, 2019, that would "require applicants, registrants, or parties to a proceeding whose domicile or principal place of business is not located within the United States (U.S.) or its territories…to be represented by an attorney who is an active member in good standing of the bar of the highest court of a state in the U.S." *Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants*, 84 Fed. Reg. 4393, 4393 (Feb. 15, 2019) ("Proposed Rule"). The Proposed Rule explained that its purpose was to prevent the "foreign parties who are not authorized to represent trademark applicants [from] improperly representing foreign applicants before the USPTO" by responding to the "increasing problem of foreign trademark applicants who purportedly are pro se…and who are filing inaccurate and possibly fraudulent submissions that violate the Trademark Act (Act) and/or the USPTO's rules." *Id.* at 4394.

Significantly, nothing in the Proposed Rule—neither the preamble nor the proposed amendments—suggested that the PTO was considering requiring all applicants to provide their domicile address, or that the PTO was considering amendments that would have any impact on U.S. applicants. To the contrary, the Proposed Rule explained that it "would apply to any entity filing with USPTO whose domicile or principal place of business is not located within the U.S. or its territories," *id.* at 4400, and that it "*would not impact individuals or large or small entities with a domicile or principal place of business within the U.S.*," *id.* at

6

4401 (emphases added); *see also id.* ("The costs to comply with the requirement proposed herein would be borne by foreign applicants, registrants, and parties."). The proposed rule also stated that it would "impose[] no new reporting or recordkeeping requirements." *Id.* at 4400.

The PTO instead proposed to revise 37 C.F.R. § 2.11 ("Requirement for representation") subsection (a) to require that "[a]n applicant, registrant, or party to a proceeding whose domicile or principal place of business is not located within the United States or its territories must be represented by an attorney, as defined in § 11.1 of this chapter, who is qualified to practice under § 11.14 of this chapter." *Id.* at 4402. It further proposed to revise section 2.11(b) to provide that "[t]he Office may require an applicant, registrant, or party to a proceeding to furnish such information or declarations as may be reasonably necessary to the proper determination of whether the applicant, registrant, or party is subject to the requirement in paragraph (a) of this section." *Id.*

"To ensure clarity regarding who is subject to the [U.S. counsel] requirement," the PTO proposed to revise 37 C.F.R. § 2.2 ("Definitions") to define "domicile" and "principal place of business"—*i.e.*, the terms used in the proposed revised section 2.11(a) to describe the applicants who would be subject to the U.S. counsel requirement. *Id.* at 4396. The PTO proposed to add section 2.2.(o) to define "domicile" as "the permanent legal place of residence of a natural person," and section 2.2(p) to define "principal place of business" as "the location of a juristic entity's headquarters where the entity's senior executives or

officers ordinarily direct and control the entity's activities and is usually the center from where other locations are controlled." *Id.* at 4402.

The PTO also proposed some minor "conforming amendments" to other sections, such as 37 C.F.R. § 2.32 ("Requirements for a complete trademark or service mark application"). As noted above, *see* pp. 3–4, *supra*, section 2.32(a)(4) already required applications to include "[t]he address of the applicant." The PTO proposed to add to this subsection an additional requirement that, "[w]hen the applicant is, or must be, represented by a practitioner," applications must include "the practitioner's name, postal address, email address, and bar information." *Id.* at 4403; *see also id.* (proposing to amend 37 C.F.R. § 2.22 to add a similar requirement for a TEAS Plus application).

Because the Proposed Rule failed to provide notice of the domicile address requirement and disclaimed any impact on U.S. applicants or new reporting requirements, "trademark practitioners and the public [were not] given any input into the [domicile address requirement] and the unintended consequences it may cause." *See* Tim Lince, World Trademark Review, *"Shaky legal ground"— the unintended consequences of USPTO requests for proof of legal residence* (Aug. 28, 2019).[7] The PTO received 38 comments on the proposed rule. *See* Rulemaking Docket, Requirement of U.S. Licensed Attorney for Trademark Applicants and

---

[7] *Available at* https://www.lexology.com/library/detail.aspx?g=f5a239f9-7004-4fbb-a36b-007390393835 (last visited Sept. 7, 2022).

Registrants Not Domiciled in the United States.[8] Unsurprisingly, none of these comments discussed a proposal to require all applicants to provide their domicile address or any impact on U.S. applicants.

Two comments expressed concerns regarding foreign applicants using fraudulent or virtual U.S. addresses. *See* International Trademark Association Comments in Response to: Proposal to Require U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants (Mar. 15, 2019) ("INTA is concerned that the Proposed Rules and comments do not fully address instances where, for example, foreign applicants or registrants use temporary or intermediary U.S. addresses for purposes of circumventing the Proposed Rules.");[9] Anonymous Attorney, Comment Regarding Proposed Rulemaking (Feb. 18, 2019) ("It appears that there are quite a number of USPTO Applicants that have Colorado addresses and Chinese phone numbers, many of whom are listed on the fraudulent addresses document.").[10] Neither comment proposed that the PTO require applicants to provide a domicile address to address these concerns.

---

[8] *Available at* https://www.regulations.gov/docket/PTO-T-2018-0021 (last visited Sept. 7, 2022).

[9] *Available at* https://www.regulations.gov/comment/PTO-T-2018-0021-0031.

[10] *Available at* https://www.regulations.gov/comment/PTO-T-2018-0021-0008.

2. **The PTO Reverses Course in the Final Rule and Imposes a Domicile-Address-Disclosure Requirement on All Applicants, Including U.S. Applicants**

Less than five months later, on July 2, 2019, the PTO issued a final rule. *See Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants*, 84 Fed. Reg. 31498 (July 2, 2019). Like the Proposed Rule, the final rule required "applicants, registrants, or parties to a trademark proceeding whose domicile is not located within the United States (U.S.) or its territories…to be represented by an attorney who is an active member in good standing of the bar of the highest court of a state in the U.S." *Id.* Unlike the Proposed Rule—and in contravention of the Proposed Rule's assurances that the rule would not impact U.S. applicants or impose new reporting requirements—the final rule required all trademark applicants, including U.S. applicants, to disclose their domicile address to the PTO.

Specifically, the final rule amended 37 C.F.R. § 2.32(a)(2) to require that trademark applications disclose "[t]he name and domicile address of each applicant." *Id.* at 31511; *see also id.* (similar changes to § 2.22 with respect to TEAS Plus applications). Prior to the final rule, section 2.32(a)(2) simply required that applications include the "name" of the applicant. *See* 37 C.F.R. § 2.32(a)(2) (effective July 11, 2015).[11] The final rule also added an entirely new section,

---

[11] In light of the final rule's amendment to section 2.32(a)(2), the final rule amended section 2.32(a)(4) to omit the previous "address" requirement and only require counsel information. *See* 84 Fed. Reg. at 31511. Subsequent to the final rule, the PTO amended section 2.32(a)(2) to require "[t]he name, domicile address, and email address of each applicant." 37 C.F.R. § 2.32(a)(2).

37 C.F.R. § 2.189 ("Requirement to provide domicile address"), to Title 37, which provided that "[a]n applicant or registrant must provide and keep current the address of its domicile, as defined in § 2.2(o)." 84 Fed. Reg. at 31511. For ease of reference, these amendments are referred to herein as the "domicile address requirement."

The final rule also revised the proposed definition of "domicile" in new section 2.2(o) to provide that "[t]he term domicile as used in this part means the permanent legal place of residence of a natural person or the principal place of business of a juristic entity." *Id.* at 3150. The PTO originally proposed to define "domicile" only to mean "the permanent legal place of residence of a natural person" and did not refer to juristic entities. *See* § B.1, *supra*. It was not necessary for the Proposed Rule's definition of "domicile" to cover juristic entities, because the definition in the Proposed Rule merely was intended to provide "clarity" as to which applicants the U.S. counsel requirement applied—and the U.S. counsel requirement covered juristic entities by referring to applicants whose "principal place of business" was outside the United States and not their "domicile." Because the final rule added new sections requiring that *all* applicants—natural and juristic—provide their "domicile" address, the final rule's definition of "domicile" now needed to cover juristic entities in addition to natural persons.

The preamble to the final rule did not explain why the PTO was adding the domicile address requirement. Indeed, it only briefly alluded to the change in two cursory sentences:

> For consistency with this [U.S. counsel] requirement, the USPTO has clarified that the address required in §§ 2.22(a)(1) and 2.32(a)(2) is the domicile address. Further, to authorize the USPTO to require an applicant or registrant to provide and maintain a current domicile address, the USPTO codifies a new regulatory section at 37 CFR 2.189.

84 Fed. Reg. at 31500.

The PTO did respond to the commenters who "expressed concerns regarding efforts by foreign applicants and registrants to circumvent the proposed requirement by using temporary or fraudulent U.S. addresses." *Id.* at 31505. The PTO did not suggest that it added the domicile address requirement to address these concerns, instead explaining that, while the "USPTO does not have the resources to investigate each U.S. domicile address provided by a non-U.S. citizen to determine whether it legitimately identifies a permanent legal residence or a principal place of business," it will "train examining attorneys on identifying characteristics of applicant information that would warrant inquiry as to whether the applicant is subject to the requirement." *Id.*

### 3.    Facing Serious Criticism, the PTO Scrambles to Limit the Fallout

Having implemented the domicile address requirement at the last minute in the final rule, without soliciting comments on it, the PTO failed to appreciate the serious concerns that it raised, leading to a rocky rollout of the new rule. Most notably, the PTO's longstanding rules require it to *make public* applicant address information. *See* Appx12 (citing 37 C.F.R. § 2.27(a), (d)). This practice was noncontroversial prior to 2019, when applicants were only required to provide a mailing address, which could be a P.O. box or care-of address. The PTO

12

failed to realize that the new domicile address requirement would require it to make public the *home* addresses of hundreds of thousands of individuals each year.

The serious privacy concerns raised by the domicile address requirement prompted a swift backlash in the trademark community—which quickly dubbed it the "tell us where you sleep at night" rule. *See e.g.*, Carl Oppedahl, *Current status of "tell us where you sleep at night?"* (May 29, 2020).[12] Trademark attorneys noted that the requirement would endanger many individuals, including victims of domestic violence or stalking and those with unpopular political opinions or who may be targets of hate crimes; disadvantage homeless individuals; and put all applicants at risk of scammers and identity theft. *See* Appx127–128. And, because many small-business owners use their home as their principal place of business, these concerns are not limited to applicants who are natural persons. *See id.*; *see also* Tim Lince, World Trademark Review, *"Your very life may be at risk"—USPTO urged to reconsider domicile requirement due to safety concerns* (Sept. 20, 2019).[13]

The PTO scrambled to address these concerns. On February 15, 2020— *six months after it issued the final rule*—the PTO revised the trademark application form to include two address fields: (1) a mailing address field, which could be a

---

[12] *Available at* https://blog.oppedahl.com/?p=6075.

[13] *Available at* https://www.worldtrademarkreview.com/article/your-very-life-may-be-risk-petition-urges-uspto-reconsider-domicile-requirement-due-safety-concerns.

P.O. box or a care-of address, that would be made public; and (2) a domicile address field that would not be made public. *See* Appx13; TMEP § 601.01(b)(1);[14] *see also* Tim Lince, World Trademark Review, *USPTO to re-allow PO boxes on trademark applications following privacy backlash* (Jan. 13, 2020).[15]

The PTO also revised the TMEP to provide that parties can request a "waiver of the requirement to make a domicile address public" in "extraordinary situations" if the applicant "does not have a mailing address that is different from its domicile address." *See* Appx13; TMEP § 601.01(d).[16] Filing this waiver petition costs $250–350, *see* 37 C.F.R. § 2.6, and can take months to decide, *see, e.g.*, PTO, Petition to Director Granted (May 23, 2020) (granting, after several months delay, an exemption from section 2.189 for an applicant named Robert De Niro due to personal safety concerns).[17]

To implement the domicile address requirement, the PTO initially issued an examination guide stating that "[f]oreign citizens must comply with U.S. visa

---

[14]    *Available at* https://tmep.uspto.gov/RDMS/TMEP/current#/current/ch600_d31194_1b01d_28a.html.

[15]    *Available at* https://www.worldtrademarkreview.com/article/uspto-re-allow-po-boxes-trademark-applications-following-privacy-backlash.

[16]    *Available at* https://tmep.uspto.gov/RDMS/TMEP/current#/current/ch600_d31194_1dd62_1d4.html. The Director also has a general authority to waive "any provision of the rules that is not a provision of the statute," when "(1) an extraordinary situation exists; (2) justice requires; and (3) no other party is injured." TMEP § 1708, *available at* https://tmep.uspto.gov/RDMS/TMEP/Jan2017#/Jan2017/TMEP-1700d1e356.html.

[17]    *Available at* https://tsdr.uspto.gov/documentviewer?caseId=sn85713838&docId=PGR20200523123946#docIndex=1&page=1.

immigration laws to claim the U.S. as their permanent legal residence." *See* PTO, Examination Guide 4-19, *Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants*, at 3 (Aug. 2019).[18] This rule would "effectively bar any immigrant who lacked a green card from getting a trademark registration." Bill Donahue, Law360, *USPTO Alters Trademark Rules After Immigration Backlash* (Sept. 6, 2019).[19] Facing a swift backlash, the PTO quickly revised the examination guide to omit the reference to immigration laws and "ma[ke] clear that U.S. residence could be proven by documents not linked to immigration status, like a utility bill or a lease." *Id.*; *see* Tim Lince, World Trademark Review, *USPTO releases revised examination guide following backlash* (Sept. 6, 2019).[20]

While the PTO belatedly offered applicants two options to withhold their domicile addresses from public disclosure and took steps to address the concerns of undocumented immigrants, the PTO still requires all applicants to disclose their domicile address to the PTO pursuant to the final rule.

---

[18] *Available at* https://files.lbr.cloud/public/2019-09/Exam%20Guide%200419%20v2.pdf.

[19] *Available at* https://www.law360.com/articles/1196383/uspto-alters-trademark-rules-after-immigration-backlash; *see also* Paul Singer, GPH News, New US Trademark Rules Raise Concerns About Immigration Enforcement (Aug. 27, 2019), *available at* https://www.wgbh.org/news/national-news/2019/08/27/exclusive-new-us-trademark-rules-raise-concerns-about-immigration-enforcement.

[20] *Available at* https://www.worldtrademarkreview.com/article/uspto-releases-revised-examination-guide-following-backlash.

**C.    Chestek's Trademark Application and Administrative Appeal**

Chestek filed a trademark application to register "CHESTEK LEGAL" on May 29, 2020. Appx57. In the "domicile address" field of the application, Chestek provided a P.O. Box in Raleigh, North Carolina. *Id.* Pursuant to the final rule, the examining attorney requested that Chestek provide a domicile address. Appx75. Chestek declined, arguing that the domicile address requirement was unlawfully promulgated and unenforceable. Appx82–92. The examining attorney refused Chestek's trademark on this basis. Appx97–99.

Chestek appealed the refusal to the Trademark Trial and Appeal Board ("Board"), Appx102, again arguing that the domicile address requirement was unlawfully promulgated and unenforceable, Appx105–109. At the outset, the Board stated that Chestek's "appeal rests exclusively on its contention that the Board should reject enforcement of the applicable rules," but that "the proper recourse for such a challenge would have been a petition for rulemaking" because the Board has no authority "to review agency regulations under the APA." Appx5 (& n.12). The Board then proceeded to consider Chestek's substantive arguments challenging the domicile address requirement, holding that "the arguments set forth in…Applicant's briefs in this case are not a basis to avoid the domicile address requirement." Appx1–9. In reaching this conclusion, the Board incorporated and relied on a March 11, 2020 letter from the Commissioner of Trademarks denying a petition for rulemaking concerning the domicile address requirement filed by the Software Freedom Conservancy, Inc. *See* Appx11–19 (letter attached as appendix to the Board's decision), Appx123–137 (petition).

The Commissioner denied the petition on the grounds that, *inter alia*, the domicile address requirement was a logical outgrowth of the Proposed Rule and not arbitrary and capricious. Appx14–16.

### Summary of Argument

The PTO's denial of Chestek's trademark application was arbitrary, capricious, and contrary to law because the denial was based on an invalid and unenforceable regulation, *i.e.*, the domicile address requirement. That requirement is invalid for two independent reasons.

*First*, the PTO failed to provide notice of the domicile address requirement and an opportunity for public comment. There is no dispute that the Proposed Rule did not include a domicile address requirement; the only question is whether the requirement is a logical outgrowth of the Proposed Rule. There is no logical outgrowth here, where the Proposed Rule did not even hint at the requirement. To the contrary, the Proposed Rule *specifically disclaimed* any impact on U.S. applicants and any new reporting requirements. Moreover, had the PTO provided notice of the requirement, commenters could have alerted the agency to the fact that, among other problems, the requirement would result in the public disclosure of hundreds of thousands of home addresses per year. Having failed to provide an opportunity for input, the PTO instead had to scramble to haphazardly address the swift backlash and serious concerns raised by the requirement.

*Second*, the domicile address requirement is arbitrary and capricious because the final rule fails to offer a satisfactory explanation for the requirement.

17

The final rule states only that the PTO was adding the domicile address require-ment "[f]or consistency" with the U.S. counsel requirement. The final rule never explains why or how the domicile address requirement achieves "consistency" with the U.S. counsel requirement, and it is certainly not obvious. The final rule also fails to consider an important aspect of the domicile address requirement: its impact on trademark applicants. There is no discussion of the privacy con-cerns raised by the requirement, much less any consideration of obvious alter-natives that would at least mitigate these concerns. For example, the PTO has *never* explained why the domicile address requirement applies to applicants al-ready represented by U.S. counsel, and there is no conceivable justification for applying the requirement to such applicants.

## Argument

### I.   Standard of Review

This Court reviews the Board's legal conclusions de novo and its factual findings for substantial evidence. *See Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1173 (Fed. Cir. 2019). Agency action based on an invalid regulation is arbitrary, capricious, and contrary to law. *See Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1372–73 (Fed. Cir. 2017); *Sierra Club v. U.S. Fish & Wildlife Serv.*, 245 F.3d 434, 436 (5th Cir. 2001). Whether the PTO's domicile address requirement is invalid and unenforceable under the APA, 5 U.S.C. § 706, is a question of law reviewed de novo. *See Sirona Dental Sys. GmbH v. Institut Strau-mann AG*, 892 F.3d 1349, 1352 (Fed. Cir. 2018).

18

## II.    The PTO's Failure to Provide Notice of the Domicile Address Requirement Renders It Invalid and Unenforceable

As an initial matter, the PTO's failure to provide notice of and an opportunity to comment on the domicile address requirement renders it invalid and unenforceable. "Under the APA, whenever an agency decides to 'formulat[e], amend[], or repeal[] a rule,' it must first publish [a notice of proposed rulemaking] setting forth 'either the terms or substance of the proposed rule[,] or a description of the subjects and issues involved.'" *Mid Continent Nail Corp.*, 846 F.3d at 1373 (quoting 5 U.S.C. §§ 553(b), 551(5)). "Adequate notice is crucial to ensure that agency regulations are tested via exposure to diverse public comment, to ensure fairness to affected parties, and to give affected parties an opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial review." *Id.* (quotation and alteration marks omitted).

"The dispositive question in assessing the adequacy of notice under the APA is whether an agency's final rule is a 'logical outgrowth' of an earlier request for comment." *Id.* "[A] final rule is a logical outgrowth of a proposed rule only if interested parties should have anticipated that the change was possible, and thus reasonably should have filed their comments on the subject during the notice-and-comment period." *Id.* (quotation marks omitted); *see also Am. Water Works Ass'n v. EPA*, 40 F.3d 1266, 1274 (D.C. Cir. 1994) ("We apply [the logical outgrowth] standard functionally by asking…whether a new round of notice and comment would provide the first opportunity for interested parties to offer

comments that could persuade the agency to modify its rule."). A final rule can fail the logical outgrowth test even if it does "not amount to a complete turnaround from the [notice of proposed rulemaking]." *Ass'n of Priv. Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 462 (D.C. Cir. 2012) (quotation marks omitted).

The domicile address requirement by no means was a logical outgrowth of the Proposed Rule. As described above, the Proposed Rule did not mention a domicile address requirement. In fact, the Proposed Rule's revision to 37 C.F.R. § 2.32(a)(4) would have left *unchanged* the PTO's longstanding requirement that applications include an "address"—which could be satisfied by providing a P.O. box or a care-of address. *See* p. 4, *supra*. And the Proposed Rule did not even mention section 2.32(a)(2), which the PTO amended in the final rule to require that trademark applications include "[t]he name and domicile address of each applicant," 84 Fed. Reg. at 31511. In addition to unexpectedly revising section 2.32(a)(2), the final rule added an entirely new section—37 C.F.R. § 2.189—requiring applicants to "provide and keep current" their domicile address with the PTO, which also was not even hinted at in the Proposed Rule, 84 Fed. Reg. at 31511.

Simply put, "something is not a logical outgrowth of nothing." *Mid Continent Nail Corp.*, 846 F.3d at 1374 (quotation marks omitted). The D.C. Circuit's decision in *Kooritzky v. Reich*, 17 F.3d 1509 (D.C. Cir. 1994), is illustrative of this principle. There, the Department of Labor ("DOL") issued a final rule amending 20 C.F.R. § 656.30(c)(2) to prohibit employers from substituting a new alien's name on an Application for Employment Certification when a prior alien listed

on the application was no longer willing or able to accept the job. *Id.* at 1509. The D.C. Circuit held that the "no-substitution rule" was not a logical outgrowth of the proposed rule because the notice "contain[ed] nothing, not the merest hint, to suggest that the Department might tighten its existing practice of allowing substitution." *Id.* at 1513.[21] Additionally, the notice also "announced that the proposed rules would not 'affect' 20 C.F.R. § 656.30," such that "[a]nyone reading [the] proposal[] would have assumed that 20 C.F.R. § 656.30(c) would not be affected." *Id.* at 1513.

Like *Kooritzky*, not only did the Proposed Rule here fail to mention a domicile address requirement, but also it *explicitly disavowed* any impact on U.S. applicants and any new reporting requirements. *See* § B.1, *supra*. These assurances confirm that the domicile address requirement is not a logical outgrowth of the Proposed Rule. *See Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1260 (D.C. Cir. 2005) (no logical outgrowth where "the preamble to the proposed rule stated that it did not include a maximum velocity air cap"). At a bare minimum, the PTO's disclaimer of any impact on U.S. applicants compels the conclusion that application of the domicile address requirement to U.S. applicants is not a logical outgrowth.

---

[21] *See also Duncan*, 681 F.3d at 461 ("The Department does not point to anything in its Notice of Proposed Rulemaking that specifically addressed distance education."); *Nat'l Min. Ass'n v. Mine Safety & Health Admin.*, 116 F.3d 520, 531 (D.C. Cir. 1997) (no logical outgrowth where a "1994 proposed rule made no substantive changes regarding when preshift examinations should occur").

In reaching the opposite conclusion, the Board's opinion relies on the March 2020 letter by the Commissioner arguing that the domicile address requirement is a logical outgrowth of the Proposed Rule. Appx6–7. The Commissioner stated that, "[b]ased on the language in the [Proposed Rule], it is clear that the public could reasonably anticipate that both foreign and U.S. applicants and registrants would have to provide [a] domicile address." Appx16. The Commissioner cited two passages of the Proposed Rule to support this view, neither of which holds water.

*First*, the Commissioner noted the Proposed Rule's definition of "domicile" in 37 C.F.R. § 2.2(o), and suggested that this proposed definition makes clear that the PTO "would be collecting a physical address of the owner." Appx16. To state the obvious, the proposed *definition* of "domicile" in section 2.2, which is used for purposes other than requiring applicants to disclose their home addresses, did not even suggest that the PTO would impose a disclosure requirement by amending its separate regulations governing information required from applicants. *Compare Daimler Trucks N. Am. LLC v. EPA*, 737 F.3d 95, 100 (D.C. Cir. 2013) ("In the NPRM, EPA…did not propose, and offered no indication that it was contemplating, amendments to the 'substantial work' criterion in 40 C.F.R. § 86.1103–87." (citation omitted)).

As described above, *see* p. 7, *supra*, the Proposed Rule included a definition of "domicile" merely to provide "clarity" as to which applicants would be subject to the U.S. counsel requirement. Given this limited purpose, the proposed definition of "domicile" only covered natural persons and not juristic entities. If

the proposed definition of "domicile" was supposed to suggest that the PTO was considering collecting a domicile address for all applicants, one would expect, among other things, the proposed definition of "domicile" to actually cover all applicants. Regardless, the proposed definition in no manner suggests that the PTO was considering requiring all applicants, including U.S. applicants, to provide their domicile address. *See Mid Continent Nail Corp.*, 846 F.3d at 1378 ("[P]ermitting the mere mention of the one the one-year timeframe for drawing comparison groups to provide adequate notice would allow the agency to justify any final rule it might be able to devise by whimsically picking and choosing within the four corners of a lengthy notice." (quotation marks omitted)).

*Second*, the Commissioner noted the Proposed Rule's revision to 37 C.F.R. § 2.11(b), which stated that "[t]he Office may require an applicant, registrant, or party to a proceeding to furnish such information or declarations as may be reasonably necessary to the proper determination of whether the applicant, registrant, or party is subject to the requirement in paragraph (a) of this section," 84 Fed. Reg. at 4402; Appx16. But this provision merely proposes "case-by-case adjudication" of an applicant's domicile for purposes of section 2.11. *Mid Continent Nail Corp.*, 846 F.3d at 1378. More specifically, it contemplates that examiners might reach out to *some* applicants requesting additional information to confirm their domicile, after which applicants and examiners could discuss the information to be provided, which may or may not include a domicile address. Proposed section 2.11(b) does not foreshadow a blanket domicile address requirement for all applicants, and the Proposed Rule "gave

no indication that the agency was considering a different approach" to enforcement of the U.S. counsel requirement beyond this case-specific provision. *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1081 (D.C. Cir. 2009); *cf. Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers v. Fed. R.R. Admin.*, 988 F.3d 1170, 1181 (9th Cir. 2021) ("The FRA's very argument that it had informed the public that it planned to approve on a case-by-case basis operations with fewer than two crewmembers suggests that it was not contemplating the adoption of a nationwide one-person train crew rule.").

Moreover, the domicile address requirement cannot be a logical outgrowth here because the Proposed Rule *specifically disclaimed* an impact on U.S. applicants and any new reporting requirements. *See* p. 7, *supra*. "If the APA's notice requirements mean anything, they require that a reasonable commenter must be able to trust an agency's representations about which particular aspects of its proposal are open for consideration." *Env't Integrity Project v. EPA*, 425 F.3d 992, 998 (D.C. Cir. 2005); *see Kooritzky*, 17 F.3d at 1513 ("[T]he preamble allayed any fears that the Department's substitution rule was on the table."). Here, the PTO made clear that disclosure requirements like the one it inserted into the final rule were off the table—until, that is, it reversed course in the final rule.

The PTO's failure to provide notice of the domicile address requirement is further evidenced by the lack of comments on the requirement and its rocky rollout. If the PTO actually had provided notice of the requirement, it would have received comments on it—instead of the swift backlash it received after the final rule. *See Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1108 (D.C. Cir. 2014)

(had agency provided adequate notice, it "would doubtless have triggered an avalanche of comments"); *Kooritzky*, 17 F.3d at 1514 ("The Department received more than one hundred comments regarding the interim final rule's elimination of substitution, each highly critical of the change. The Department had received no comments on the subject in response to its notice of proposed rulemaking.").[22]

Even more importantly, commenters could have made the PTO aware of the serious privacy concerns raised by the domicile address requirement and suggested alternative ways that the PTO might achieve its goal without requiring all applicants to provide a domicile address. *See, e.g.*, Carl Oppedahl, *Helping the Commissioner for Trademarks to smoke out non-domicile mailing addresses* (Feb. 2, 2020).[23] Commenters also could have suggested ways to limit the domicile address requirement, such as by excepting applicants already represented by U.S. counsel. Additionally, commenters could have suggested ways to mitigate the privacy concerns raised by the requirement. For example, commenters could have made the PTO aware of the fact that, absent further change in agency

---

[22] As noted above, only two commenters raised any concern with fraudulent addresses, and neither suggested adding a domicile address requirement. *See* p. 9, *supra*. Regardless, "notice must come from the Notice of Proposed Rulemaking, not the comments arising out it." *Chesapeake Climate Action Network, et al. v. EPA*, 952 F.3d 310, 320 (D.C. Cir. 2020) (quotation and alteration marks omitted); *see also Shell Oil Co. v. EPA*, 950 F.2d 741, 751 (D.C. Cir. 1991) ("[W]hile a comment may evidence a recognition of a problem, it can tell us nothing of how, or even whether, the agency will choose to address it.").

[23] *Available at* https://blog.oppedahl.com/?p=5339.

policy, the requirement would result in the public disclosure of hundreds of thousands of home addresses each year, including the home addresses of victims of domestic violence and other at-risk individuals. *See* p. 13, *supra*. And commenters could have helped the PTO think through the interaction between the PTO's address-publication requirement and the domicile address requirement *in advance* of the issuance of the final rule.

Instead, the PTO sprung the requirement on the trademark community in the final rule, and then had to scramble to address the serious privacy concerns raised by the requirement in the months following the rule's effective date. *See* pp. 13–14, *supra*; *Mid Continent Nail Corp.*, 846 F.3d at 1374 (no logical outgrowth where "final rule was surprisingly distant from the agency's proposal" (quotation and alteration marks omitted)). In short, the PTO's promulgation of the domicile address requirement was exactly the sort of poorly planned and ill-considered regulatory action that the APA's notice and comment requirement exists to avoid.

## III.    The Domicile Address Requirement is Arbitrary and Capricious

The domicile address requirement is also arbitrary and capricious and invalid for that reason. Under the APA, "[t]he court will 'hold unlawful and set aside agency action' that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *McKinney v. McDonald*, 796 F.3d 1377, 1383 (Fed. Cir. 2015) (quoting 5 U.S.C. § 706(2)(A)). While "[t]his review is highly deferential to the actions of the agency," "the agency must examine the relevant data and articulate a satisfactory explanation for its action." *Id.* (quotation marks

omitted); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983) (agency action is arbitrary and capricious where agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise").

To start with, the final rule is arbitrary and capricious because it offers no justification for the domicile address requirement. "One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). In considering whether an agency has offered a "satisfactory explanation" for a rule, *McKinney*, 796 F.3d at 1383, courts "are only to evaluate the agency's stated rationales," *GHS Health Maint. Org., Inc. v. United States*, 536 F.3d 1293 (Fed. Cir. 2008); *see also Align Tech., Inc. v. Int'l Trade Comm'n*, 771 F.3d 1317, 1324 (Fed. Cir. 2014) ("When the required explanation of the agency's action is totally absent, or palpably inadequate, it is difficult to see how a subsequent explanation by the agency on remand could be characterized as anything other than a wholly *post hoc* rationalization." (quotation marks omitted)).

In the final rule, the PTO did not explain its shift in thinking from the Proposed Rule. The final rule stated only that, "[f]or consistency with this [U.S. counsel] requirement, the USPTO has clarified that the address required in §§ 2.22(a)(1) and 2.32(a)(2) is the domicile address," and that, "to authorize the USPTO to require an applicant or registrant to provide and maintain a current

domicile address, the USPTO codifies a new regulatory section at 37 CFR 2.189." 84 Fed. Reg. at 31500. To start with, this statement is incorrect because the final rule does not "clarif[y]" that the address required by sections 2.32 and 2.22 is the domicile address: these sections unambiguously did *not* require a domicile address prior to the final rule's amendments. *See* pp. 4–5, *supra*.

More fundamentally, the final rule does not explain why the domicile address requirement was needed "[f]or consistency" with the U.S. counsel requirement. These two words—"[f]or consistency"—utterly fail to provide a satisfactory explanation for the PTO's sudden departure from over 100 years of practice under the Trademark Act. *See Encino Motorcars*, 579 U.S. at 221–22 ("In explaining its changed position, an agency must also be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." (quotation marks omitted)). Whether the PTO had a good reason to adopt the domicile address requirement is a question left unanswered by the final rule. Any explanation the agency could offer at this point would be a post-hoc rationalization given the final rule's silence on that question.

This Court has held invalid agency regulations in similar circumstances. *See, e.g.*, *Dominion Resources, Inc. v. United States*, 681 F.3d 1313, 1319 (Fed. Cir. 2012) (holding IRS application of rule invalid as applied to property temporarily withdrawn from service where agency provided "no rationale" for that application); *see also Nat'l Lifeline Ass'n v. FCC*, 921 F.3d 1102, 1114 (D.C. Cir. 2019) ("By departing from its prior forbearance policy without reasoned explanation and failing to consider key aspects of the program…the Commission's adoption

of the Tribal Facilities Requirement was arbitrary and capricious."). For example, in *GHS Health*, this Court held that an Office of Personnel Management ("OPM") regulation providing that OPM would not reconcile a provider's insurance rates for the final year of their contract was arbitrary and capricious where the final rule stated only that: "OPM's experience has been that it is difficult to get adequate data from plans when they have terminated. Further, in the event a plan goes out of business, there are no rates to reconcile." 536 F.3d at 1302. The Court found this justification insufficient because "[t]here is a dearth of documentary support for the Government's assertion that OPM has had difficulty getting the data it needs in the Final Year." *Id.*

*Encino Motorcar* also illustrates an agency's failure to provide an adequate explanation for regulatory action. 579 U.S. at 222–24. In that case, the Supreme Court considered a DOL regulation defining "salesmen" for purposes of the Fair Labor Standards Act overtime exemption. *Id.* at 218. The final rule stated that DOL "would not treat service advisors as exempt because 'the statute does not include such positions and the Department recognizes that there are circumstances under which the requirements for the exemption would not be met,'" and that DOL "'believes that this interpretation is reasonable'" and "'sets forth the appropriate approach.'" *Id.* at 223 (quoting 76 Fed. Reg. 18838). The Supreme Court explained that "the unavoidable conclusion is that the…regulation was issued without the reasoned explanation" because these cursory statements "offered barely any explanation" for the rule. *Id.* at 222.

The PTO's justification here falls short even of the insufficient justifications in *GHS Health* and *Encino Motorcars.* Not only does the final rule fail to provide any evidence or documentary support for the domicile address requirement, but also it never explains—even in a cursory manner—why or how the domicile address requirement achieves "consistency" with the U.S. counsel requirement. *See Align Tech.*, 771 F.3d at 1324 ("But the Commission did not articulate below any reason, let alone 'good and sufficient reason,' to waive the regulation."). The claim is illogical. One requirement requires foreign applicants to obtain U.S. counsel; the other requires all applicants to disclose their domicile addresses in addition to the country information that they were already required to provide. There is no more need for consistency between these requirements than between the Postal Service's requirements that an envelope bear both an address and a stamp.

In addition to failing to justify the domicile address requirement as a general matter, the PTO also "failed to consider an important aspect of the problem" by not addressing the requirement's impact on trademark applicants and potential applicants who may be discouraged from filing. *Compare Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, *with Veterans Just. Grp., LLC v. Sec'y of Veterans Affs.*, 818 F.3d 1336, 1351 (Fed. Cir. 2016) ("[T]he VA has adequately considered and addressed the impact on the veteran population."). The final rule completely failed to consider the privacy and other concerns raised by the requirement, such as its impact on victims of domestic violence and other at-risk individuals or on homeless individuals. This failure is particularly egregious because, at the time

of the rule's publication, the PTO regulations required it to *publicly disclose all domicile addresses*.

While the PTO scrambled to address some of these concerns after promulgation of the final rule, *see pp.* 13–14, *supra*, its belated steps do not excuse the PTO's failure to consider them in the final rule. *See Mid Continent Nail Corp.*, 846 F.3d at 1385 n.10 ("We also do not think that Commerce's subsequent decision to formally withdraw the Limiting Regulation changes the calculus of our decision; agency attempts to cure procedural defects *ex post* are not generally accepted as validating prior missteps."); *Rural Cellular Ass'n v. FCC*, 588 F.3d 1095, 1107 (D.C. Cir. 2009) ("[W]e judge the reasonableness of an agency's decision on the basis of the record before the agency at the time it made its decision."). Indeed, the fact that the PTO had to rush to fix numerous issues with the domicile address requirement only underscores that the PTO in adopting the final rule gave insufficient consideration to the requirement's impact on trademark applicants.

The PTO's *post hoc* fixes also only address some, but not all, of the concerns raised by the domicile address requirement. For example, while the PTO now permits applicants to petition the Commissioner for a "waiver of the requirement to make a domicile address public" in "extraordinary situations" if the applicant "does not have a mailing address that is different from its domicile address," *see* Appx13; TMEP § 601.01(d),[24] requesting a waiver costs $250-350

---

[24] *Available at* https://tmep.uspto.gov/RDMS/TMEP/current#/current/ch600_d31194_1dd62_1d4.html.

and can delay the issuance of a trademark for months, *see* 37 C.F.R. § 2.6. This process effectively imposes tax on applicants who are victims of domestic violence or are at-risk for other reasons.

Even as to applicants who are able to provide a public mailing address separate from their home address, many applicants may be hesitant to share their home address with the PTO. Some applicants have expressed concern that the PTO has failed to provide assurances that their home addresses would not be publicly disclosed through other means, such as the Freedom of Information Act. *See* Ltr. to David S. Gooder, Commissioner for Trademarks, from One Hundred Eleven Trademark Applicants and Petitioners, at 2 (May 27, 2022).[25] Others may not trust the PTO to protect their home addresses from public disclosure: just a few months ago, a PTO data breach exposed over 21,000 applicant email addresses. Josh Gerben, *USPTO 'Oversight' Discloses 21,000+ Email Addresses*, Gerben;[26] Tiffany Hu, Law360, *USPTO Has 'Taken Steps' After Applicant Email Exposure* (May 31, 2022).[27] Undocumented immigrants especially may be hesitant to disclose their home address to the PTO, particularly given the PTO's discriminatory treatment of them in its initial guidance on the final rule, *see pp.* 14–15, *supra*. While the PTO revoked that guidance, undocumented

[25]    *Available at* https://blog.oppedahl.com/wp-content/uploads/2022/05/20220527-letter.pdf.

[26]    *Available at* https://www.gerbenlaw.com/blog/uspto-oversight-discloses-21000-email-addresses/ (last visited Sept. 7, 2022).

[27]    *Available at* https://www.law360.com/articles/1498179/uspto-has-taken-steps-after-applicant-email-exposure.

immigrants may still reasonably conclude that complying with the domicile address requirement could place them in legal jeopardy.

In order to provide a "satisfactory explanation" of the domicile address requirement, the PTO should have addressed these concerning impacts on trademark applications and considered whether the requirement was justified in light of its negative effects. The PTO additionally should have considered alternatives that might resolve or at least mitigate the rule's negative effects. *Ky. Mun. Energy Agency v. FERC*, No. 19-1236, __ Fed. 4th __, 2022 WL 3131169, at *21 (D.C. Cir. Aug. 5, 2022) ("An agency is required to consider responsible alternatives to its chosen policy and to give a reasoned explanation for its rejection of such alternatives." (quotation marks omitted)); *see supra* p. 25 (discussing some alternatives). Indeed, the requirement to consider alternatives "goes to the heart of reasoned decisionmaking," and "the failure of an agency to consider obvious alternatives has led uniformly to reversal." *Spirit Airlines, Inc. v. U.S. Dep't of Transp. & Fed. Aviation Admin.*, 997 F.3d 1247, 1255 (D.C. Cir. 2021) (quotation and alteration marks omitted). For example, the PTO should have considered a less burdensome process for exempting domestic violence victims from public disclosure of their home address, such as permitting the examiner to waive disclosure instead of requiring a petition to the Commissioner.

At a bare minimum, the domicile address requirement is arbitrary and capricious because it applies to all applicants *regardless of whether they already are represented by U.S. counsel*, and to all applicants who admit their foreign domicile. *Cf. Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1147 (Fed. Cir.

2021) ("[W]e agree with PVA that § 3.155's exclusion of supplemental claims from the intent-to-file framework is arbitrary and capricious."). Further, exempting from the requirement applicants who are represented by U.S. counsel or who admit their foreign domicile is an "obvious alternative[]" that the PTO should have considered. *Spirit Airlines*, 997 F.3d at 1255. The PTO has *never* offered a justification—even a *post hoc* one—for applying the requirement to such applicants. If the purpose of the requirement is to enforce the U.S. counsel rule, there is no conceivable justification for requiring these applicants to provide their domicile address. Imposing that plainly unnecessary disclosure requirement is contrary to the Privacy Act, which requires agencies to maintain in their records "only such information about an individual as is relevant and necessary to accomplish a purpose of the agency." 5 U.S.C. § 552a(e)(1). And, as the Court stated of the regulation at issue in *GHS Health*, it simply "makes no sense." 536 F.3d at 1303.

In abruptly departing from over 100 years of practice, the PTO failed to offer any explanation, much less a satisfactory one, of the domicile address requirement; failed to consider the requirement's concerning impacts on trademark applicants; and failed to consider obvious alternatives to the requirement. The PTO's promulgation of the requirement was arbitrary and capricious.

## IV.    The PTO's Denial of Chestek's Trademark Application Was Arbitrary, Capricious, and Not in Accordance With Law

Agency action based on an invalid regulation is arbitrary, capricious, and contrary to law, and the Court should vacate the Board's decision for that

reason. *See Mid Continent Nail Corp.*, 846 F.3d at 1372–73; *Sierra Club*, 245 F.3d at 436. In addition to incorrectly holding that the domicile address requirement was properly promulgated under the APA, *see* Appx6–7, the Board also obliquely argued that "the proper course for such a challenge [to the domicile address requirement] would have been a petition for rulemaking" because the Board lacked authority "to review agency regulations under the APA," Appx5 (& n.12). This argument provides no basis for affirming the Board's decision.

To start with, the Board cited no authority in support of the proposition that it lacked authority to consider Chestek's arguments that the domicile address requirement was invalid, *see id.*, and the Board's statutory and regulatory authorities appear to contain no such limitation, *see* 15 U.S.C. § 1070 ("An appeal may be taken to the Trademark Trial and Appeal Board from any final decision of the examiner in charge of the registration of marks…."); 37 C.F.R. §§ 2.63(b), 2.141(a). Notably, administrative tribunals within other agencies often consider APA arguments. *See, e.g.*, Dep't of Health and Human Servs., Provider Reimbursement Review Board, *Marion Mem'l Hosp. v. Wis. Physicians Serv.*, 2022 WL 203694, at *8 (Jan. 12. 2022) (considering argument that "CMS' revised VDA approval methodology runs afoul of the notice and comment rulemaking requirements of the Administrative Procedure Act").

Regardless of whether it was within the Board's authority to consider the validity of the domicile address requirement, this Court plainly has such authority on appeal from the Board's decision. *See Dickinson v. Zurko*, 527 U.S. 150, 152 (1999) (holding that the APA applies to appeals to the Federal Circuit from the

PTO); *see also Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1326–27 (Fed. Cir. 2019), *vacated and remanded sub nom. United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021) (holding that this Court could consider even a waived constitutional challenge to a Patent Trial and Appeal Board decision because, among other things, "the Board could not have corrected the problem").[28] Indeed, while pre-enforcement APA challenges to agency regulations are sometimes permissible, the prototypical challenge is a case brought by an individual or entity, like Chestek, against whom the regulation was enforced. *See Abbott Lab'ys v. Gardner*, 387 U.S. 136, 139 & n.1 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Consistent with these principles, this Court has considered challenges to PTO rules in appeals from Patent Trial and Appeal Board decisions. *See, e.g.*, *Aqua Prod., Inc. v. Matal*, 872 F.3d 1290, 1323 (Fed. Cir. 2017) ("The PTO cannot regulate away the statutory directive in § 316(d)(1) that patent owners be permitted to propose amendments to challenged claims at least once as of right when the amendments comply with the requirements of that provision."). The Court therefore has the authority and the duty to evaluate the validity of the domicile address requirement, find it wanting, and vacate the judgment below on that basis.

## Conclusion

The Court should vacate the judgment below.

---

[28] *See also Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017) (considering challenge to 15 U.S.C. § 1052 on appeal from a Board decision); *Pro-Football, Inc. v. Blackhorse*, 709 F. App'x 182, 183 (4th Cir. 2018) (same).

Dated: September 9, 2022                    Respectfully submitted,

                                            */s/ Andrew M. Grossman*
                                            ANDREW M. GROSSMAN
                                            KRISTIN A. SHAPIRO
                                            RENEE M. KNUDSEN
                                            BAKER & HOSTETLER LLP
                                            Washington Square, Suite 1100
                                            1050 Connecticut Ave., NW,
                                            Washington, D.C. 20036
                                            (202) 861-1697
                                            agrossman@bakerlaw.com

                                            *Counsel for Appellant Chestek PLLC*

**<u>ADDENDUM</u>**

## **Table of Contents**

TTAB Opinion ................................................................... Appx1

15 U.S.C. § 1051 ....................................................... Addendum 1

37 C.F.R. § 2.2.......................................................... Addendum 1

37 C.F.R. § 2.32......................................................... Addendum 2

37 C.F.R. § 2.189 ...................................................... Addendum 4

TMEP § 601.01(d) .................................................... Addendum 4

> This Opinion is a
> Precedent of the TTAB

Mailed: March 30, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Chestek PLLC*

————

Serial No. 88938938

————

Pamela Chestek of Chestek PLLC
    for Chestek PLLC

Charles L. Jenkins, Jr., Trademark Examining Attorney, Law Office 112,
    Renee Servance, Managing Attorney.

————

Before Thurmon, Deputy Chief Administrative Trademark Judge,
    and Kuhlke and Lynch, Administrative Trademark Judges.

Opinion by Lynch, Administrative Trademark Judge:

## I.  Background

Chestek PLLC ("Applicant"), a professional limited liability company organized

under the laws of North Carolina, seeks registration on the Principal Register of the

mark CHESTEK LEGAL in standard characters for "legal services" in International

Serial No. 88938938

Class 45.[1] The application includes a claim of acquired distinctiveness as to the mark as a whole under Trademark Act Section 2(f), 15 U.S.C. § 1052(f), and a disclaimer of LEGAL. The Examining Attorney refused registration because Applicant declined to provide a valid domicile address, which is an application requirement under Trademark Rule 2.189, 37 C.F.R. § 2.189 and Trademark Rule 2.32(a)(2), 37 C.F.R. § 2.32(a)(2).

In the application, signed by Applicant's owner, Pamela S. Chestek, Applicant provided a post office box number in Raleigh, North Carolina as its domicile address.[2] The Examining Attorney indicated that "[i]n most cases, a post office box is not acceptable. An address that is not a street address is not acceptable as a domicile address because it does not identify the location of applicant's headquarters where the entity's senior executives or officers ordinarily direct and control the entity's activities."[3] The Examining Attorney therefore required Applicant to provide its domicile street address or "demonstrate that the listed address is, in fact, the applicant's domicile."[4]

---

[1] Application Serial No. 88938938 was filed on May 29, 2020, under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), based on allegations of first use and first use in commerce on January 1, 2013.

[2] TSDR May 29, 2020 Application at 1. Citations to the examination record refer to the USPTO's online Trademark Status and Document Retrieval system (TSDR). Citations to the briefs are to the Board's online database, TTABVUE. Before the TTABVUE designation is the docket entry number; and after this designation are the page references, if applicable.

[3] TSDR December 7, 2020 Office Action at 1.

[4] *Id.*

Serial No. 88938938

Applicant declined to do either, and instead maintained during prosecution, as it does on appeal, that the applicable rules requiring the domicile address and the accompanying guidance were unlawfully promulgated and should not be enforced.[5] Although the United States Patent and Trademark Office ("USPTO") offers procedures by which applicants and registrants may seek to avoid making the domicile address public,[6] Applicant, a professional limited liability company, explicitly disavows any interest in the procedures, indicating that it does not wish to avail itself of them, and only wishes to challenge the enforcement of the rules.[7]

After the Examining Attorney made the refusal final, Applicant appealed. The appeal has been fully briefed.

Applicant asserts that "there are two errors in the Final Office Action":[8] (1) the rules requiring a street address were not validly promulgated; and (2) "unlawful nonfeasance" in connection with a third-party petition for rulemaking.

We address each in turn, and for the reasons set forth below, we affirm the refusal to register.

---

[5] Although Applicant's opening Brief cites Trademark Rule 2.63(b), 37 C.F.R. § 2.63(b), as "Not Validly Promulgated," this longstanding rule merely provides that a requirement not complied with may result in the issuance of a final Office action refusing registration. We read Applicant's complaints regarding the rulemaking process as relating not to this rule, but rather to Trademark Rules 2.189, 2.2(o) and 2.2(p), 37 C.F.R. §§ 2.189, 2.2(o) and 2.2(p), which specifically concern the domicile address. Other portions of Applicant's Brief are consistent with this reading of its position.

[6] *See* TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") § 601.01(d) (2021).

[7] 4 TTABVUE 4 (Applicant's Brief).

[8] 4 TTABVUE 3 (Applicant's Brief).

Serial No. 88938938

## II.    Analysis

### A. Applicable Rules

Section 1(a)(2) of the Trademark Act provides that "[t]he application shall include specification of the applicant's domicile …." 15 U.S.C. § 1051(a)(2). Trademark Rule 2.189 sets forth the requirement that "[a]n applicant or registrant must provide and keep current the address of its domicile, as defined in § 2.2(o)." 37 C.F.R. § 2.189. Trademark Rule 2.32(a)(2) lists an applicant's domicile address among the requirements for a complete application. 37 C.F.R. § 2.32(a)(2). According to the Trademark Rules of Practice, "[t]he term domicile as used in this part means the permanent legal place of residence of a natural person or the principal place of business of a juristic entity." 37 C.F.R. § 2.2(o). The TMEP further states that "[a]n applicant generally must provide its domicile street address…. In most cases, a post-office box, a 'care of' (c/o) address, the address of a mail forwarding service, or other similar variation cannot be a domicile address." TMEP § 803.05(a) (2021).

One reason for the domicile requirement is to distinguish between domestic and foreign filers, because an applicant "whose domicile is not located within the United States or its territories must be represented by an attorney, as defined in § 11.1 of this chapter, who is qualified to practice under § 11.14 of this chapter." 37 C.F.R. § 2.11(a); *see also* 37 C.F.R. § 2.22(a)(20). Applicants domiciled outside the United States also may designate domestic representatives. *See* 15 U.S.C. § 1051(e) ("If the applicant is not domiciled in the United States the applicant may designate … the name and address of a person resident in the United States on whom may be served

Serial No. 88938938

notices or process in proceedings affecting the mark."); 15 U.S.C. §§ 1058(f), 1059(c), & 1060(b) (comparable provisions for registration owners and assignees). The various reasons for the collection of domicile address information, the benefits to the public, and the measures in place to shield domicile address information from public view are addressed in more detail in the Office's decision on the third-party petition for rulemaking referenced above.[9] Applicant raises the petition in this case, and so both the petition and resulting decision are discussed below.

In this case, Applicant concedes that it has not complied with the requirement to provide the domicile address of its "principal place of business" as a juristic entity.[10] *See* 37 C.F.R. §§ 2.2(o) & (p). Applicant's appeal rests exclusively on its contention that the Board should reject enforcement of the applicable rules. We conclude that an appeal to this Board is not the proper forum; the proper course for such a challenge would have been a petition for rulemaking. *See* 5 USC § 553(e) ("Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."). While Applicant cites the APA,[11] Applicant offers no authority for making an APA challenge in an administrative forum that is part of the same agency that adopted the rules and policy guidance.[12]

---

[9] 6 TTABVUE 8-16 (decision on "petition for rulemaking" by the Software Freedom Conservancy, Inc., an exhibit to the Examining Attorney's Brief).

[10] 4 TTABVUE 3 (Applicant's Brief).

[11] 4 TTABVUE 10-11 (Applicant's Brief).

[12] While Applicant cites 44 U.S.C. §§ 3507(a) and 3512, the former involves requirements for an agency's information collection and the latter involves the failure to display a valid Office of Management and Budget control number for an information collection. Neither statutory provision states or suggests that an administrative agency board such as this one may decline

Serial No. 88938938

Both Applicant and the Examining Attorney addressed the "Petition for Rulemaking" by the Software Freedom Conservancy, Inc.[13] and the resulting petition decision.[14]

The Software Freedom Conservancy's petition sought a suspension of the USPTO's implementation of Trademark Rules 2.189 and 2.2(o) and (p) and "a new notice and rulemaking process to add more appropriately constrained rules,"[15] and raised many of the same arguments that Applicant makes in this appeal about the unenforceability of rules based on allegedly improper rulemaking procedures. The petition decision addressed the USPTO's compliance with the APA, the Paperwork Reduction Act, the Regulatory Flexibility Act, and Executive Order 13771 (now revoked) in connection with the challenged rules. Because the petition decision represents the USPTO's views on the arguments Applicant now makes about the Trademark Rules, we incorporate it by reference in this decision and attach it as an

---

to enforce the agency's rules. Applicant's reliance on *United States v. Arthrex*, 141 S.Ct. 1970, 2021 USPQ2d 662 (2021) is also inapposite. That case involved a challenge in an Article III court to the constitutionality of a statute, not the authority of an administrative panel to review agency regulations under the APA.

[13] 4 TTABVUE 19-34 (Applicant's Brief, Exhibit B). The petition was signed by Applicant's owner, Pamela S. Chestek, as the petitioner's attorney.

[14] 6 TTABVUE 7-16. Applicant attached to its Brief the third-party petition. The Examining Attorney attached to his Brief the USPTO's decision denying the petition. Although the record in an application should be complete prior to the filing of an ex parte appeal to the Board, Trademark Rule 2.142d), 37 C.F.R. § 2.142(d), evidence submitted after an appeal may be considered by the Board when there is no objection to the evidence and it is either discussed or otherwise affirmatively treated as being of record by the nonoffering party. TBMP § 1207.03.

[15] 4 TTABVUE 34 (Applicant's Brief, Exhibit B).

appendix.[16] For the reasons explained in the petition decision, the arguments set forth in the petition and Applicant's briefs in this case are not a basis to avoid the domicile address requirement.

We also find unpersuasive Applicant's privacy arguments. In the Commissioner for Trademarks' August 11, 2021 cover letter to the petition decision, he noted that the majority of the USPTO's TEAS forms, including the application and change of address/representation forms, feature a special field for entry of the domicile address. Use of the field ensures that the domicile address "will not be publicly viewable nor retrievable in bulk-data downloads."[17] *See also* TMEP § 803.05(a) (noting that the domicile address information on the TEAS application form is "hidden from public view"). Nonetheless, Applicant, a business entity, asserts that "[i]f a person needs to keep their street address a secret for their personal protection, the only way to make sure it remains a secret is never to disclose it…. It is unacceptable to have to rely on a government agency for one's personal safety …."[18] However, Applicant did not assert any such need for secrecy and, as noted above, explicitly disavows any interest in availing itself of the USPTO's established procedure for requesting a waiver of the rule.[19] *See* 37 C.F.R. §§ 2.146(a)(5) & 2.148; TMEP § 1708.

---

[16] 6 TTABVUE 8-16.

[17] 6 TTABVUE 7.

[18] 7 TTABVUE 9 (Applicant's Reply Brief).

[19] 4 TTABVUE 4 (Applicant's Brief).

Serial No. 88938938

### B. Unlawful Nonfeasance

Applicant asserts that the final refusal to register at issue in this appeal should be reversed because of so-called "nonfeasance" in connection with the third-party petition for rulemaking, based on "failing to decide" that petition.[20] Applicant does not claim to be in privity with the Software Freedom Conservancy, Inc. The third-party petition is dated September 18, 2019. The denial decision is dated March 11, 2020, prior to Applicant's Brief. However, a cover letter from the USPTO's Commissioner for Trademarks to Ms. Chestek dated August 11, 2021, after Applicant's Brief, indicates that while the denial decision was signed on the earlier date, "the physical mailing of the response [to Ms. Chestek as counsel for the petitioner] slipped through the cracks as [the USPTO] quickly transitioned to an all virtual work environment [at the onset of the pandemic]."[21]

We reject Applicant's contention that the timing and content of the USPTO's decision on a third-party petition entitle Applicant to a reversal of the refusal to register in this case. We do not agree that the USPTO's handling of the petition, either in procedure or substance, constitutes what Applicant has called "unlawful nonfeasance."[22] Nor does the USPTO's handling of the petition form any other basis for reversal of the requirement in this case. Regardless, a proper challenge to the

---

[20] 4 TTABVUE 5 (Applicant's Brief).

[21] 6 TTABVUE 7 (August 11, 2021 letter from David S. Gooder to Pamela S. Chestek). Because the petition for rulemaking was not associated with a particular application or registration, the decision did not process and issue electronically.

[22] 4 TTABVUE 5 (Applicant's Brief).

Serial No. 88938938

USPTO's handling of the petition must be brought by the party who could potentially claim the injury, i.e., the petitioner. Applicant fails to convince us that it would be proper to address its assertion of so-called "unlawful nonfeasance" by the Office in an unrelated petition matter involving a third-party not in privity with Applicant.[23]

**Decision**: We affirm the refusal to register Applicant's mark on the ground that Applicant failed to provide the domicile address required by the Trademark Rules of Practice.

---

[23] Even when a petition is filed by an applicant, rather than a third party, the petition does not stay the period for replying to an Office action and does not act as a stay in any appeal. 37 C.F.R. § 2.146(g).

 **United States Patent and Trademark Office**

*Office of the Commissioner for Trademarks*

August 11, 2021

Pamela S. Chestek, Esq.
Chestek Legal
P.O. Box 2492
Raleigh, NC 27602

Dear Ms. Chestek,

Thank you for your recent correspondence to the USPTO regarding your petition filed on September 19, 2019. Please accept my sincere apologies on behalf of the agency for our significantly delayed response. The Office did in fact prepare the attached response, which was signed by me on March 11, 2020.

When we received your recent communication, we searched our files and saw that our response was prepared around the time that our workforce moved to mandatory telework as a result of the pandemic. Because that change had a significant impact on our mailing operations, it appears likely that the physical mailing of the response slipped through the cracks as we quickly transitioned to an all virtual work environment.

With regard to the substance of your inquiry, I hope that the attached addresses your questions and concerns regarding the final rule entitled *Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants*, 84 FR 31498 (July 2, 2019). I'd also like to take this opportunity to provide an update on the steps we've taken to further shield applicant's domicile address since the drafting of the attached letter.

Specifically, in Section I.C. of our response, we noted revisions to our new application and change of address/representation forms deployed on February 15, 2020 with the implementation of mandatory electronic filing. I'm pleased to share that we have now revised the majority of our TEAS forms to include a second address field for entering the owner's domicile address, which will not be publicly viewable nor retrievable in bulk-data downloads. This includes post-registration forms, response to Office action forms, and certain petition forms. More information is on the TEAS release highlights webpage. Lastly, we note that the Executive Order 13771, cited in your petition and addressed in our response, has since been revoked.[1]

I trust that the above answers your question and do again apologize for the delay in sending you our March 11, 2020 response to your petition.

Best regards,

David S. Gooder
Commissioner for Trademarks

---

[1] Executive Order 13992, Revocation of Certain Executive Orders Concerning Federal Regulation, 86 FR 7049 (Jan. 25, 2021).



# United States Patent and Trademark Office

*Office of the Commissioner for Trademarks*

March 11, 2020

Pamela S. Chestek
Chestek Legal
P.O. Box 492
Raleigh, NC 27602

Dear Ms. Chestek:

Thank you for the September 18, 2019 petition for rulemaking submitted by Software Freedom Conservancy, Inc., addressed to Andrei Iancu, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office (USPTO or the Office). The petition under 5 U.S.C. § 553(e) was forwarded to the undersigned for consideration.

The petition asserted (1) policy concerns related to the USPTO's rulemaking entitled Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants (U.S. Counsel rule), and (2) that the U.S. Counsel rule failed to observe various procedural requirements of the rulemaking process. The Office's responses to these assertions pursuant to 5 U.S.C. § 555(e) are set forth below.

## I.    Policy Issues

The petition asserts that the USPTO's implementation of the U.S. Counsel rule requirement that applicants and registrants provide their domicile addresses results in risks of harm that outweigh any of the rule's benefits to the U.S. trademark system. According to the petition, the risk of harm takes many forms, including the potential for personal harm based on public disclosure of domicile address information,[1] the impact on business efficiency and expenses, as well as general privacy concerns. As a result, the petition requests that the rule be suspended and that new rulemaking addressing these privacy concerns be undertaken.

As discussed below, the USPTO must strike an appropriate balance between the concerns raised in the petition, its statutory obligation to collect owner domicile information, and its regulatory and treaty obligations to make owner address information publicly available. The USPTO has implemented procedures to address the privacy concerns raised while maintaining that balance.

Also discussed below, it has always been the case, for example, that if an applicant has only one address and that address is their domicile address, the USPTO is required under the Lanham Act and its implementing regulations, as well as relevant treaty obligations, to collect that address and to publish it. However, the USPTO is sensitive to heightened privacy concerns stakeholders have regarding publication of an address designated as their domicile address.

---

[1] The USPTO understands the petition's use of "address," "physical address," and "residential address" to refer to domicile address.

The USPTO is actively pursuing measures beyond the existing rulemaking petition process in order to address those concerns, including IT system and form changes that have been implemented to allow owners to provide a mailing address that will be published in the USPTO's records and to separately provide their domicile address, if different from their mailing address, in a field that will not be published.

      **A.**     **Domicile Information and Address Information Must be Provided to Comply with Various Laws, Regulations, and Treaties**

The Lanham Act has always required specification of an applicant's domicile. Under section 1, 15 U.S.C. § 1051, an application for registration of a trademark "shall include specification of the applicant's domicile. . . ." 15 U.S.C. § 1051(a)(2). The Act further provides that foreign domiciliaries may designate a domestic representative on whom may be served notices or process in proceedings affecting the mark. 15 U.S.C. §§1051(e), 1058(f), 1059(c). In addition, domicile or residency is a criterion that foreign trademark offices with local counsel requirements use to determine whether applicants must be represented before them.

Because the Lanham Act requires provision of domicile information, the USPTO reasonably chose domicile as the trigger for requiring representation by a U.S.-licensed attorney in trademark matters before the USPTO.

The USPTO is required to publish or otherwise make available address information for applicants under the Lanham Act's implementing regulations and U.S. treaty obligations. Since 1955, Trademark Rule 2.27 has provided that:

> (a) An index of pending applications including the name and address of the applicant . . . will be available for public inspection as soon as practicable after filing.
>
> * * *
>
> (d) (formerly appeared in subsection (b)) Except as provided in paragraph (e) of this section, the official records of applications and all proceedings relating thereto are available for public inspection . . . .

37 CFR 2.27(a), (d).

Similarly, treaties contemplate that owner contact addresses be made publicly available. For example, the Madrid Protocol requires an international applicant to provide its name and postal address, with an option for an additional correspondence address. *See* Rule 9(4)(a) of the *Common Regulations under the Madrid Agreement Concerning the International Registration of Marks and the Protocol Relating to that Agreement* ("The international application shall contain or indicate . . . (ii) the address of the applicant, given in accordance with the Administrative Instructions"); Section 12(d) of the *Administrative Instructions for the Application of the Madrid Agreement Concerning the International Registration of Marks and the Protocol Relating Thereto* ("An address shall be given in such a way as to satisfy the customary requirements for prompt postal delivery and shall consist, at least, of all the relevant administrative units up to, and including, the house number, if any; in addition, telephone and telefacsimile numbers, an e-mail address as well as a different address for correspondence may be indicated."). This information is published in the International Register.

2

### B.    Benefits of Collecting Domicile and Address Information

Collecting and making address information publicly available benefits the intellectual property community and the public.  An address serves as a means to identify and contact the owner for various legitimate business and legal purposes.  For example, the public may use the address information available on the USPTO's public databases to contact application and registration owners about licenses, consent agreements, assignments, and other business interests.  The public also relies on the public availability of address information in the USPTO's records to enforce trademark rights via cease-and-desist letters or to effect proper service of process in civil litigation.[2]

As explained in the NPRM and the final rule, the requirement of *domicile* address information benefits the U.S. trademark system by distinguishing between domestic and foreign filers.  Without the U.S. Counsel Rule, which requires domicile address information, many foreign filers were evading statutory and regulatory requirements in trademark registration matters.  Additionally, foreign parties were engaged in the unauthorized practice of law (UPL), improperly representing applicants, registrants, or parties before the Office.  By requiring foreign-domiciled applicants, registrants, and parties to Trademark Trial and Appeal Board proceedings to be represented by U.S.-licensed attorneys, who are subject to the USPTO's disciplinary jurisdiction, the USPTO helps ensure that those attorneys, and by extension those they represent, fulfill their obligations to comply with U.S. legal requirements, thereby protecting the integrity of the U.S. trademark register.

### C.    Measures in Place to Shield Domicile Address Information

The concerns raised in the petition appear to be predicated on the final rule requiring provision of the owner's domicile address and not allowing a post-office box or "care-of" address to satisfy the domicile address requirement.  While requiring domicile address information is warranted based on the compliance problems noted above, the privacy concerns raised in the petition are addressed by several means. First, a party can petition the Director to request waiver of the requirement to make a domicile address public.  Second, the USPTO has revised the new application and change of address or representation forms to include two address fields—one field for entering the address where the owner receives mail, which can be a post-office box or "care-of" address that will be displayed in the USPTO's public records, and a second field for entering the "domicile address(es)" for the owner(s), the contents of which will not be displayed in the USPTO's public records.  If these forms are used to provide a separate domicile address, it will not be publicly viewable and also will not be retrievable in bulk-data downloads.  The changes were deployed with the implementation of mandatory electronic filing on February 15, 2020.

Given the benefit of requiring domicile address information and the ability to shield that information, suspending the U.S. Counsel rule and engaging in a new rulemaking to address these privacy concerns is not warranted.

---

[2] The petition highlights the European Union's efforts to protect personal information via the General Data Protection Regulation (GDPR).  However, even the European Union Intellectual Property Office, which is subject to the GDPR, makes owner address information publicly available.

3

**Appx13**

## II.    Administrative Law Issues

The petition asserts that the U.S. Counsel rule is unenforceable because the rulemaking process did not meet the requirements of the Administrative Procedure Act (APA), the Paperwork Reduction Act (PRA), the Regulatory Flexibility Act (RFA), and Executive Order 13771.  For the reasons set forth below, we do not agree with these assertions.

### A.    Administrative Procedure Act

#### 1.    The Rulemaking Was not Arbitrary and Capricious

The petition alleges that the U.S. Counsel rule was arbitrary and capricious for requiring every applicant to provide a domicile address, because prior to this rulemaking a mailing address, which could be a residential address or a post office box, was all that was needed for a complete application. Further, the petition argues that any address, whether street address[3] or post office box, has no relationship to whether an applicant or registrant has retained a lawyer.

We disagree with the assertion that the U.S. Counsel rule violated the APA by requiring that every applicant provide a domicile address.  The USPTO has always required an address for the owners and has not changed this requirement, but rather the U.S. Counsel rule amended the regulations to require that applicants specifically identify their domicile address.

The proposed rule provided a reasoned explanation for requiring domicile address that satisfies the requirements of the APA.  The USPTO explained that domicile address was required to identify those applicants and registrants who were not located in the U.S. and thus required to retain a qualified attorney.  The primary purpose for requiring foreign-domiciled applicants to retain a U.S. attorney was to combat the growing problem of foreign individuals, entities, and applicants failing to comply with U.S. law. Moreover, this requirement is consistent with the practice of countries with a similar requirement who also condition the requirement on domicile.

---

[3] The final rule defines domicile as the permanent legal place of residence of a natural person or the principal place of business of a juristic entity.  The USPTO's Examination Guide 4-19 specifies that a person's "permanent legal place of residence" is the place the person resides and intends to be the person's principal home.  The initial determination of whether an applicant's, registrant's, or party's domicile is within or outside the U.S. is based on its street address.  In most cases, a post-office box, a "care of" (c/o) address, or other similar variation cannot be a domicile address because it generally does not identify the location of the place the person resides and intends to be the person's principal home (for a natural person). *Examination Guide 4-19 Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants* (Sept. 2019), *available at* https://www.uspto.gov/sites/default/files/documents/Exam%20Guide%2004-19.pdf

The USPTO understands that Petitioner uses the term "street address" to refer to the final rule's "permanent legal place of residence" requirement.

4

The petition also alleges that the USPTO's rulemaking was insufficient because it provided no empirical data on whether or how the absence of street addresses is related to the problem to be solved by the rulemaking. The petition also claims there is no explanation of how requiring a street address, rather than a post office box, "'care of' address or other similar variation" will reduce the number of fraudulent or inaccurate claims in a trademark application, whether the applicant is U.S. or foreign. The arguments appear premised on a misunderstanding of the purpose of the collection of domicile addresses. The purpose of the domicile address was to determine those applicants and registrants who were not domiciled in the U.S., and thus subject to the requirement to retain a qualified attorney, which was fully discussed in the NPRM and final rule and supported by empirical data.

Finally, the petition alleges that the USPTO failed to invite comment on, consider, or weigh any countervailing reasons why it would be inadvisable to require a street address, and therefore the rulemaking was not properly promulgated. The USPTO complied with the requirement of the APA in undertaking this rulemaking, and sought comment on the proposed regulations concerning collection of addresses consistent with normal rulemaking procedures. The APA does not require an agency to explicitly invite countervailing arguments against a rule proposal. A proposed rule that provides either the terms or substance of the proposed rule or a description of the subjects and issues involved satisfies the procedural requirements of the APA. *See* 5 U.S.C. § 553(b)(3). The APA contains no requirement that a proposed rule specifically invite comment on countervailing reasons why it would be inadvisable to require a street address in order for the rulemaking to be properly promulgated. We also allowed for comment on the proposed regulation, which stated that the Office may require an applicant to furnish information reasonably necessary to determine whether they are subject to the domicile requirements. In the proposed rule, the USPTO specifically stated the proposed definition of domicile was the permanent legal place of residence. This was consistent with the APA and provided the public with adequate notice that the USPTO was open to comments of all sorts on the rule proposal, including countervailing arguments against the proposal. Given this, we do not agree with the arguments made in the petition that the rulemaking was arbitrary and capricious.

**2.    The Final Rule Was a Logical Outgrowth of the NPRM**

The petition asserts that the U.S. Counsel final rule was not a logical outgrowth of the NPRM because it was unforeseeable that U.S. applicants would be required to provide domicile address based on the content of the NPRM. Specifically, it is asserted that the addition of 37 CFR 2.189 in the final rule, which requires applicants and registrants to provide and keep current the domicile address, was not included in the NPRM.

Logical outgrowth issues arise only where a final rule differs to such a great extent from the proposed rule that it can be said that the public was not apprised of the issues in the proceeding. But, this does not forbid the agency from altering the proposed rule in its final rule. *See Alto Diary v. Veneman*, 336 F3d 560, 569-70 (7th Cir. 2003) ("The purpose of a rulemaking proceeding is not merely to vote up or down the specific proposals advanced before the proceeding begins, but to refine, modify, and supplement the proposals in the light of evidence and arguments presented in the course of the proceeding. If every modification is to require a further hearing at which that modification is set forth in the notice, agencies will be loath to modify initial proposals, and the rulemaking process will be degraded.")

5

**Appx15**

The legal standard for a violation of the APA for when a final rule fails to be a logical outgrowth of the NPRM is whether the notice adequately alerted the interested parties of the possibility of the changes that were eventually adopted.  *See National Mining Ass'n v. Mine Safety and Health Administration*, 512 F.3d 696, 699 (D.C. Cir. 2008).

> A final rule qualifies as a logical outgrowth "if interested parties 'should have anticipated' that the change was possible, and thus reasonably should have filed their comments on the subject during the notice-and-comment period." *Ne. Md. Waste Disposal Auth. v. EPA*, 358 F.3d 936, 952 (D.C. Cir. 2004) (citations omitted). By contrast, a final rule fails the logical outgrowth test and thus violates the APA's notice requirement where "interested parties would have had to 'divine [the agency's] unspoken thoughts,' because the final rule was surprisingly distant from the proposed rule." *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259-60 (D.C. Cir. 2005) (internal citations omitted).

*CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1079-80 (D.C. Cir. 2009).

The requirements of logical outgrowth are satisfied if there is reasonable anticipation of the new provision in the final rule.  In addition, whether and in what circumstances a court will find agency notice to be adequate is a fact-driven inquiry.  Here, the USPTO provided adequate notice of the domicile address requirement in the preamble to the NPRM.  The proposed definition of domicile was "the permanent legal place of residence of a natural person."  In the final rule, the USPTO only slightly expanded the definition to alternatively include "a principle place of business of a juristic entity" as a domicile.  The proposed definition of "domicile" was largely unchanged and clear that the USPTO would be collecting a physical address of an owner.  In addition, the NPRM also stated that the Office may require an applicant or registrant to furnish such information or declarations as may be reasonably necessary to the proper determination of whether an applicant or registrant whose domicile or principal place of business is not located within the United States or its territories must be represented by an attorney.  *See* 37 CFR 2.11(b).  Based on the language in the NPRM, it is clear that the public could reasonably anticipate that both foreign and U.S. applicants and registrants would have to provide domicile address.  Consequently, the USPTO does not agree that any logical outgrowth concerns are present in this rule.

    **B.**    **USPTO Complied with the Paperwork Reduction Act**

The petition asserts that the USPTO violated the requirements of the Paperwork Reduction Act (PRA) by failing to receive approval from the Office of Management and Budget for the collection of attorney bar information and associated documentation, the collection of domicile address and associated documentation, and the submission of petitions requesting waiver of the requirement to make a domicile address public.

The USPTO has complied with all requirements of the PRA, including coordination with and review by OMB of any adjustments to existing OMB control numbers impacted by the final rule.  OMB determined that no new OMB control numbers were required, and that existing forms impacted by the final rule were not substantially changed.  The adjustments made by UPSTO to existing OMB control numbers update the respondent estimates and burden hours for affected forms.  The requirement for the domicile address in particular is not a change to the collection of this information.  The USPTO has always collected address information from an applicant or registrant.

6

The burdens associated with the collection of address information is accounted for in the respondent estimates and burden hours reported to and approved by OMB (Control No. 0651-0009). No changes are required for this collection. Regarding the burdens associated with the submission of petitions requesting that the domicile address be withheld from public view, such petitions are made under the general petition provision at 37 CFR 2.146(a)(5), which is approved by OMB (Control No. 0651-0054, 0651-0050). However, a change worksheet was submitted to OMB to adjust the respondent estimates and burden hours in light of the possibility of an increase in the number of petitions requesting such action by the USPTO. Regarding the respondent burdens associated with the collection of attorney bar information, a change worksheet was submitted to OMB (Control No. 0651-0009) to adjust the respondent estimates and burden hours for this information collection.

With respect to complaints raised about post-application follow-up, any follow-up questions and documentation that may be collected to clarify attorney bar information or domicile address is considered to be exempt from the Paperwork Reduction Act under 5 CFR 1320(h)(9), which expressly excludes from the definition of "information" any facts or opinions obtained or solicited through nonstandardized follow-up questions designed to clarify responses to approved collections of information. Because any follow-up or clarification questions regarding attorney bar information or domicile address would be obtained or solicited through nonstandardized follow-up questions, it is not considered to be "information" under the PRA and thus is exempt from its requirements. The USPTO's handling such potential follow-up questions and documentations is consistent with the PRA.

### C.    USPTO Complied with the Regulatory Flexibility Act

The petition alleges that the USPTO's analysis violated the Regulatory Flexibility Act (RFA), for failing to consider the costs that would be borne by U.S. domiciled applicants and registrants who would now have to provide their domicile address and for providing attorney bar information.

The USPTO considered the impact on U.S. domiciled applicants and determined that no additional cost burdens would be incurred for providing a domicile address. The USPTO has always collected address information from an applicant or registrant, and the change for applicants to specifically identify their domicile address imposes no new costs. The costs for providing attorney bar information is de minimis, and would have no impact on the certification that this rule would not have a significant economic impact on a substantial number of small entities.

Regarding the argument that there will be a burden on small firm lawyers based on costs that may not be recoverable (for example, under fixed fee arrangements), the petition does not provide an estimate of the impact other than to argue that the rule may create substantial new malpractice liability that should be considered in the analysis but that were omitted. This rule does not directly regulate the conduct of small firm lawyers. Further, the USPTO does not have data that supports the conclusion that small firm lawyers will be subject to additional liability through potential business they may take on as a result of more clients seeking legal services following implementation of this rule. The USPTO conducts its rulemaking in compliance with the relevant laws and guidance that require it to estimate burdens on small entities, where applicable. While the USPTO is sensitive to any burdens that might arise directly from its rules, particularly for small entities, the USPTO did not receive public comment during the rulemaking process providing any information that suggested the rule would produce the argued impact on such practitioners. Any expense potentially incurred for malpractice liability arising from increased business would be costs that are outside the scope of this rulemaking.

7

### D.    USPTO Complied with Executive Order 13771

Finally, the petition also alleges that the USPTO's rulemaking for the U.S. Counsel rule failed to comply with Executive Order (E.O.) 13771 for several reasons: (1) adding a new regulation without repealing two others; (2) failing to inform OMB or the Department of Commerce that it was "not in compliance with the President's regulatory budget concept"; and (3) omitting or failing to consider significant costs.

The USPTO, as part of the Department of Commerce, complied with all requirements of E.O. 13771 in the development of the U.S. Counsel rule, and all of the allegations in the petition concerning the Executive Order are without merit. This rulemaking was determined to be a significant regulatory action under E.O. 12866 by OMB's Office of Information and Regulatory Affairs (OIRA). Pursuant to that designation, the USPTO submitted both the NPRM and final rule to OIRA for review, and it was determined that the rule was not subject to the requirements of E.O. 13771. OIRA maintains the discretion to exempt any category of rulemakings from the requirements of E.O. 13771. *See* Section 4, E.O. 13771. *See also* Memorandum M-17-21 from Dominic J. Mancini, Acting Administrator of the Office of Information and Regulatory Affairs to Regulatory Policy Officers at Executive Departments and Agencies and Managing and Executive Directors of Certain Agencies and Commissions, "Guidance Implementing E.O. 13771, Titled 'Reducing Regulation and Controlling Regulatory Costs,'" April 5, 2017. Such determination was properly disclosed in the "Rulemaking Requirements" section of the NPRM and final rule. Furthermore, because compliance with E.O. 13771 is assessed on an agency-wide basis,[4] rather than on a rule-by-rule basis, it is misleading to speak of an individual rule "complying" with E.O. 13771.

Notwithstanding the above, E.O. 13771 contains no private right of action to enforce the order as law. Specifically, section 5(c) of E.O. 13771 clearly states "[t]his order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." Thus, an agency's failure to comply with any of the requirements of the E.O. is not judicially reviewable. The unreviewability of an executive order is supported in case law. *See Independent Meat Packers Ass'n v. Butz*, 526 F.2d 228 (8th Cir. 1975) (no judicial enforcement of executive order requiring consideration of inflationary impact of regulations, in part because such order had not been issued pursuant to delegation from Congress). Thus, the determination of compliance with E.O. 13771 is solely within the discretion of OIRA.

### III.    Conclusion

The September 19, 2019 petition for rulemaking of Software Freedom Conservancy has been considered and denied. As discussed above, the Office does not agree that the rulemaking process for this rule violated the APA or any other relevant requirements of statute, regulation or guidance, and the Office will not be vacating or suspending implementation of the U.S. Counsel rule. In light of concerns raised in the petition and by other members of the public since publication of the U.S. Counsel rule, the Office has determined that certain revisions to the USPTO's procedures concerning the collection and publication of domicile addresses are warranted.

---

[4] Here, the Department of Commerce, not the USPTO, is the relevant "agency."

The Office has made available the petition procedures, as warranted, to address the Petitioner's privacy concerns, and also undertook additional changes, as described above, when the USPTO's Mandatory Electronic Filing final rule became effective on February 15, 2020.  As always, the USPTO continues to assess its electronic systems and procedures to determine where improvements are needed to address concerns raised by the public and our stakeholders.

If you have any further questions related to this matter, please contact the Deputy Commissioner for Trademark Examination Policy, Sharon R. Marsh.

I hope this information is helpful in addressing your concerns.

Sincerely,

David S. Gooder
Commissioner for Trademarks

9

**Appx19**

## 15 U.S.C. § 1051(a)(2) - Application for registration; verification

**(a)(2)** The application shall include specification of the applicant's domicile and citizenship, the date of the applicant's first use of the mark, the date of the applicant's first use of the mark in commerce, the goods in connection with which the mark is used, and a drawing of the mark.

…

## 37 C.F.R. § 2.2(o) - Definitions

**(o)** The term domicile as used in this part means the permanent legal place of residence of a natural person or the principal place of business of a juristic entity.

### 37 C.F.R. § 2.32 - Requirements for a complete trademark or service mark application.

**(a)** The application must be in English and include the following:

**(1)** A request for registration;

**(2)** The name, domicile address, and email address of each applicant. If the applicant is a national of a country that has acceded to the Trademark Law Treaty, but not to the Singapore Treaty on the Law of Trademarks, the requirement to provide an email address does not apply;

**(3)**

**(i)** The legal entity type and citizenship of the applicant(s); and

**(ii)** If the applicant is a corporation, association, partnership or other juristic person, the jurisdiction (usually state or nation) under the laws of which the applicant is organized;

**(iii)** If the applicant is a domestic partnership, the names and citizenship of the general partners;

**(iv)** If the applicant is a domestic joint venture, the names and citizenship of the active members of the joint venture; or

**(v)** If the applicant is a sole proprietorship, the state of organization of the sole proprietorship and the name and citizenship of the sole proprietor.

**(4)** When the applicant is, or must be, represented by an attorney, as defined in § 11.1 of this chapter, who is qualified to practice under § 11.14 of this chapter, the attorney's name, postal address, email address, and bar information;

**(5)** One or more bases, as required by § 2.34(a);

**(6)** A list of the particular goods or services on or in connection with which the applicant uses or intends to use the mark. In a U.S. application filed under section 44 of the Act, the scope of the goods or services covered by the section 44 basis may not exceed the scope of the goods or services in the foreign application or registration;

**(7)** The international class of goods or services, if known. See § 6.1 of this chapter for a list of the international classes of goods and services.

**(8)** If the mark is not in standard characters, a description of the mark;

**(9)** If the mark includes non-English wording, an English translation of that wording; and

**(10)** If the mark includes non-Latin characters, a transliteration of those characters, and either a translation of the transliterated term in English, or a statement that the transliterated term has no meaning in English.

**(b)** The application must include a verified statement that meets the requirements of § 2.33.

**(c)** The application must include a drawing that meets the requirements of § 2.51 and § 2.52.

**(d)** The application must include the fee required by § 2.6 for each class of goods or services.

**(e)** For the requirements of a multiple-class application, see § 2.86.

**(f)** For the requirements of all collective mark applications, see § 2.44.

**(g)** For the requirements of a certification mark application, see § 2.45.

**37 C.F.R. § 2.189 - Requirement to provide domicile address**

An applicant or registrant must provide and keep current the address of its domicile, as defined in § 2.2(o).

**TMEP § 601.01(d) - Hiding the Domicile Address**

Most TEAS forms allow an applicant or registrant to specify the owner's mailing address, which is publicly viewable, and a separate domicile address, which is masked or hidden from public view. If the applicant or registrant provides the same address as its mailing address and domicile address in those forms, the address will be viewable by the public. To hide the applicant's or registrant's domicile address from public view, the applicant or registrant must provide a mailing address that differs from its domicile address and enter the domicile address into the dedicated "Domicile Address" fields on the Owner Information page within most TEAS forms.

In an extraordinary situation, an individual applicant or registrant who does not have a mailing address that is different from its domicile address may also request a waiver of the requirement to make their address public by filing a Petition to the Director. *See* 37 C.F.R §2.146(a)(5); TMEP §1708. In such cases, when filing the application, the applicant may enter "Petition" in the street address field of the TEAS form and separately file a petition to waive the requirement to make public their street address. If the petition is granted, the applicant must also provide an address where mail can be received. Filing a petition does not extend the time for responding to an outstanding Office action or other statutory deadline.

If an Office action is being issued that questions the validity of a domicile address that was hidden from public view, an examining attorney should not list the exact address in the Office action. However, if evidence is being attached to the Office action to support the inquiry, an examining attorney may attach evidence that identifies the address if necessary. Applicant may then later petition the USPTO to have that information redacted.

## **Certificate of Compliance**

I certify that this brief complies with the type-volume limitation set by Fed. Cir. R. 32(b)(1) because it contains 9,163 words, excluding the parts of the brief exempted by Fed. Cir. R. 32(b)(2) and Fed. R. App. P. 32(f).

Dated: September 9, 2022              */s/ Andrew M. Grossman*
                                                    Andrew M. Grossman

### Certificate of Service

I certify that on September 9, 2022, I caused the foregoing brief to be filed with the Court electronically using the CM/ECF system, which will send a notification to all counsel of record.

Dated: September 9, 2022          */s/ Andrew M. Grossman*
                                  Andrew M. Grossman