Nos. 22-1843

IN THE

# United States Court of Appeals for the Federal Circuit

*In re Chestek PLLC*

*Appellant*,

*On Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board, Serial No. 88/938,938*

**Brief of *Amicus Curiae* David E. Boundy, in Support of Appellant and Supporting Reversal**

September 16, 2022

DAVID E. BOUNDY

POTOMAC LAW GROUP PLLC
P.O. BOX 590638
NEWTON, MA 02459
(646) 472 9737
DavidBoundyEsq@gmail.com

*Amicus Curiae*

## CERTIFICATE OF INTEREST

Counsel for *amicus curiae* certifies the following:

1. The full name of every party or *amicus* represented by me is David E. Boundy.

2. The names of the real parties in interest represented by me as *amici* are as named in 1.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the *amici* represented by me are: None

4. The names of all law firms, partners, and associates that have appeared for the party or *amici* now represented by me in the trial court or agency or are expected to appear in this court are: David E. Boundy, Potomac Law Group PLLC.

5. Related Cases, Fed. Cir. R. 47.4(a)(5) and 47.5(b): None.

6. This is neither a criminal case with organizational victims, nor a bankruptcy.

Date: September 16, 2022 /s/ David E. Boundy

David E. Boundy
*Amicus Curiae*

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................ i

TABLE OF CONTENTS ........................................................ ii

TABLE OF AUTHORITIES ........................................................ iv

IDENTITY AND INTEREST OF AMICUS CURIAE ........................ viii

STATEMENT UNDER FRAP 29(a)(4)(E) ........................................ viii

INTRODUCTON ........................................................ 1

ARGUMENT ........................................................ 5

I. The "domicile address" rule violates multiple rulemaking laws, in addition to APA notice-and-comment ........................................ 5

A. The PTO skipped requirements under the Paperwork Reduction Act ........................................................ 5

1. The PTO's omissions and false claims of exemption during rulemaking ........................................................ 6

2. The PTO made no showing of "practical utility" .................. 9

3. Omissions and false statements in the PTO's decision on Chestek's petition for rulemaking ................................ 10

B. The PTO skipped requirements under the Regulatory Flexibility Act ........................................................ 13

II. The PTO's other recent rulemakings exhibit a repeat pattern of evading rulemaking and administrative law ............................ 16

A. The PTO's CLE rule ........................................................ 17

1. The PTO evaded notice and comment for the CLE rule ..... 17

2. The PTO evaded the Paperwork Reduction Act for the CLE rule ........................................................ 20

B. The PTO's DOCX rule ........................................................ 21

1. The PTO evaded proper notice-and-comment for the DOCX rule ........ 22
2. The PTO evaded the Paperwork Reduction Act ........ 26
3. The PTO evaded the Regulatory Flexibility Act ........ 30

C. The PTAB's "ordinary meaning" rule violated multiple provisions of rulemaking law ........ 30

D. PTAB precedential opinions ........ 31

E. Senior career staff refuse to implement the President's *Bulletin on Agency Good Guidance Practices* ........ 33

CONCLUSION ........ 37

CERTIFICATE OF COMPLIANCE ........ xxxviii

# TABLE OF AUTHORITIES

***Page(s)***

## Cases

*Aqua Products, Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017) .............. 31

*Ex parte Stenneth*, Appeal 2019-006578, 2020 WL 2848033 (PTAB May 7, 2020) .............. 32

*Facebook, Inc. v. Windy City Innovations, LLC*, 953 F.3d 1313 (Fed. Cir. 2020) .............. 31, 32

*Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321 (Fed. Cir. 2020) .............. 31

*Harlan Land Co. v. U.S. Dept. of Agr.*, 186 F.Supp.2d 1076 (E.D. Cal. 2001) .............. 14

*Solite Corp. v. EPA*, 952 F.2d 473 (D.C. Cir. 1991) .............. 24

## Statutes

35 U.S.C. § 121 .............. 34

44 U.S.C. § 3506 .............. 5, 9, 12, 29

44 U.S.C. § 3507 .............. passim

44 U.S.C. § 3512 .............. 8, 9

5 U.S.C. § 552 .............. 24

5 U.S.C. § 601 .............. 14

5 U.S.C. § 603 .............. 14, 30

5 U.S.C. § 604 .............. 14, 30

5 U.S.C. § 605 .......... 14

5 U.S.C. § 704 .......... 10

5 U.S.C. § 706 .......... 37

E-Government Act of 2002, Pub.L. 107-347 § 206(d)(1), 116 Stat. 2916, codified in notes to 44 U.S.C. § 3501 .......... 24

Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq.* .......... 1, 13

The Paperwork Reduction Act, 44 U.S.C. §§ 3501-3520 .......... 1

**Regulations**

5 C.F.R. § 1320.11 .......... 1

5 C.F.R. § 1320.3 .......... 9, 21

5 C.F.R. § 1320.5 .......... 1

5 C.F.R. § 1320.6 .......... 9

5 C.F.R. § 1320.8 .......... 1

5 C.F.R. § 1320.9 .......... 1, 5

**Other Authorities**

David Boundy, *Agency Bad Guidance Practices at the Patent and Trademark Office: a Billion Dollar Problem*, 2018 Patently-O Patent Law Journal 20 (Dec. 6, 2018), *available at* https://ssrn.com/abstract=3258040 or at Westlaw, 2018 PATOPLJ 20 .......... 4

David Boundy, *An Administrative Law View of the PTAB's 'Ordinary Meaning' Rule*, Westlaw J. Intellectual Property 25:21 13-16 (Jan 30 2019), available at https://ssrn.com/abstract=3326827 ................. 31

David Boundy, *The PTAB is Not an Article III Court, Part 1: A Primer on Federal Agency Rule Making*, 10 LANDSLIDE (American Bar Ass'n) 9-13, 51-57 (Nov/Dec 2017), *available at* https://ssrn.com/abstract=3258044 ................................................... 1

David Boundy, *The PTAB Is Not an Article III Court, Part 3: Precedential and Informative Opinions*. 47 AIPLA Q.J. 1-99 (June 2019), available at https://ssrn.com/abstract=3258694 ..................... 18

Executive Order 12866 ......................................................................... 1

Office of Information and Regulatory Affairs, *OMB Control Number History* 0651-0009, Applications for Trademark Registration ......... 6, 8

Office of Management and Budget, Executive Office of the President, *Bulletin for Agency Good Guidance Practices*, 72 Fed. Reg. 3432 (Jan 25, 2007) ........................................................................... 33, 34

Patent and Trademark Office, *Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the Patent Trial and Appeal Board*, Final rule, 83 Fed. Reg. 51340 (May 9, 2018) ............................................................................... 30

Patent and Trademark Office, *Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the Patent Trial and Appeal Board*, Notice of Proposed Rulemaking, 83 Fed. Reg. 21221 (May 9, 2018) ..................................................... 30

Patent and Trademark Office, *New Implementation Date for Patent Practitioner Registration Statement and Continuing Legal Education Certification*, 86 Fed. Reg. 30920 (Jun. 10, 2021) ............. 19

Patent and Trademark Office, *New Implementation Date for Voluntary Continuing Legal Education Certification*, 86 Fed. Reg. 71453 (Dec. 16, 2021) ................................................................ 20, 21

Patent and Trademark Office, *Precedential Opinions* web page ........... 32

Patent and Trademark Office, *Proposed Continuing Legal Education Guidelines*, *Request for Comments*, 85 Fed. Reg. 64,128 (Oct. 9, 2020) .......... 18, 19

Patent and Trademark Office, *Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants*, Final rule, 84 Fed. Reg. 31,498 (Jul. 2, 2019) .......... 6

Patent and Trademark Office, *Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants*, Notice of Proposed Rulemaking, 84 Fed. Reg. 4393 (Feb. 15, 2019) .......... 14, 15

Small Business Administration, *A Guide for Government Agencies: How to Comply with the Regulatory Flexibility Act* (August 2017 ed.) .......... 14

U.S. Patent and Trademark Office, *Setting and Adjusting Patent Fees During Fiscal Year 2020*, Final rule, 85 Fed. Reg. 46,932 (Aug. 3, 2020) .......... passim

U.S. Patent and Trademark Office, *Setting and Adjusting Patent Fees During Fiscal Year 2020*, NPRM, 84 Fed. Reg. 37,398 (Jul. 31, 2019) .......... 17, 21, 25, 30

## IDENTITY AND INTEREST OF AMICUS CURIAE

**David E. Boundy** is an individual patent attorney in Newton, Massachusetts, with an interest in the intersection of administrative law and intellectual property law. Mr. Boundy has no relationship to any of the parties, and no current client with a direct interest in the outcome of this appeal. Mr. Boundy's interest is that of a concerned individual, in the just and consistent application of the law.

Appellant Chestek PLLC and Appellee U.S. Patent and Trademark Office (PTO) consented by email.

## STATEMENT UNDER FRAP 29(a)(4)(E)

No party or party's counsel authored this brief in whole or in part.

No party or party's counsel contributed money that was intended to fund preparing or submitting this brief.

No person, other than *amici*, their members, and counsel, contributed money intended to fund preparing or submitting this brief.

## INTRODUCTON

Agency rulemaking is governed by multiple statutes and executive orders.[1] The Paperwork Reduction Act, 44 U.S.C. §§ 3501-3520, and its implementing regulations[2] require agencies to consider cost-benefit analysis of any revisions to any information that the agency proposes to collect. The Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq.*, requires agencies to consider impacts of their rules on small entities. Executive Order 12866 requires agencies to tailor regulations to specific identifiable problems, to analyze cost-benefit, and to consider and choose from among alternative regulatory approaches in order to maximize net social benefit.

Each of these laws is somewhat analogous to the securities laws. They do not directly regulate conduct; instead they require disclosure and analysis for vetting by the public. These laws can only serve the purposes Congress and the President intend if that disclosure and

---

[1] At the 2018 Federal Circuit Judicial Conference, Judge Plager suggested a good introduction to these laws, *The PTAB is Not an Article III Court, Part 1: A Primer on Federal Agency Rule Making*, 10 LANDSLIDE (American Bar Ass'n) 9-13, 51-57 (Nov/Dec 2017), *available at* https://ssrn.com/abstract=3258044

[2] 5 C.F.R. Part 1320, especially §§ 1320.5, 1320.8, 1320.9, and 1320.11.

analysis is fair and truthful, and occurs at the times rules are being made, as the law specifies.

As discussed in Chestek's blue brief, the PTO failed to comply with the APA. This brief will explain that the PTO also failed to comply with several other laws in promulgating the domicile address rule.

**Regulatory oversight.** All agency rules are subject to oversight and review by the Office of Information and Regulatory Affairs (OIRA) within the Office of Management and Budget (OMB) and by the Small Business Administration (SBA). By and large, OMB/OIRA and SBA act *ex parte*—some kinds of review permit one round of public comment at the beginning of review, others permit none. Once the review is underway, OMB/OIRA and SBA engage in substantial *ex parte* negotiation conversations with the agency from which the public is excluded.

Each of the laws that govern agency rulemaking has exemptions. For example, some laws have simplified bypass routes for *de minimis* rules. Substantive rules require higher procedure than procedural rules. Rules governing "transfer payments" (cash transfers or subsidies to private sector recipients) are exempt from certain laws.

Neither OMB/OIRA nor SBA have investigative staff. So when an agency claims to be exempt from a requirement, the claim is evaluated *ex parte*. The record becomes public (and OIRA updates its web page) only after review concludes. *E.g.* 44 U.S.C. § 3507(e)(1); Executive Order 12866 § 6(b)(4)(D). OMB/OIRA and SBA accept the agency's word for the exemption, with no public vetting. Everything rests on truthfulness by the agency.

In promulgating the domicile address rule, the PTO claimed multiple exemptions from multiple laws that govern rulemaking. Many of the PTO's claims of exemption were false. Several of these claims were presented as representations to an *ex parte* tribunal.

**Broader implications.** This case has important implications for all PTO rulemaking. In multiple recent rulemakings, the PTO has silently skipped steps, claimed exemptions from these laws for reasons that are transparently false, or claimed to be exempt for reasons having no basis in the written law. This brief will show that the shortcutting in the domicile address rule is part of a pattern. The pattern includes errors of omission, errors of objectively false statements, and one rule where the PTO was blocked from going forward by regulation—so the PTO flew the same rule under the regulatory review radar as

subregulatory "guidelines." These statements are made to *ex parte* tribunals, and each has the effect of evading analysis and work that Congress required agencies to do in order to assure that the agency's rules are in the public interest. Because the PTO's actions in this case are part of a consistent overall pattern, the Court may fairly infer that the PTO intended to evade the law in this case.

A 2018 survey asked patent attorneys for the amount of time they waste because of the PTO's lax observance of administrative law, specifically the law that governs rulemaking, and failure to enforce rules against agency personnel when those rules benefit applicants. The estimate came out at about ***$ 1.5 billion annually***.[3] Chestek's trademark domicile address rule is the tip of a very ***large*** iceberg.

---

[3] *Agency Bad Guidance Practices at the Patent and Trademark Office: a Billion Dollar Problem*, 2018 Patently-O Patent Law Journal 20 (Dec. 6, 2018), *available at* https://ssrn.com/abstract=3258040 or at Westlaw, 2018 PATOPLJ 20

## ARGUMENT

### I. The "domicile address" rule violates multiple rulemaking laws, in addition to APA notice-and-comment

#### A. The PTO skipped requirements under the Paperwork Reduction Act

The Paperwork Reduction Act and its implementing regulations require an agency to (a) conduct several cost-benefit analyses and cross-checks to ensure that the agency minimizes paperwork burden on the public, (b) request notice and comment on several specific topics (§ 3506(c)(2)(A)), (c) make several filings with the OMB/OIRA forwarding those comments and the agency's response, and (d) certify that the agency has taken several specific steps to reduce paperwork burden. 44 U.S.C. § 3507; 5 C.F.R. § 1320.9. Before a new rule may go into effect, an agency must request and obtain an approval from OMB/OIRA. § 3507(a). That approval is called a "control number."

These steps are designed to force federal agencies to consider the consequences of any new rules. Public notice and comment also is intended to help to vet the agency's analysis.

### 1. The PTO's omissions and false claims of exemption during rulemaking

For the domicile address rule, the PTO skipped many steps required by the Paperwork Reduction Act.

The control number for trademark applications is 0651-0009. In this case, the "domicile address rule" and domestic attorney rules went into effect on August 3, 2019. 84 Fed. Reg. 31,498 col. 1. If any approval had been sought, OMB/OIRA's web page for 0651-0009 would show a filing "received by OIRA" around June 2019, and approved on or before August 3, 2019. OMB/OIRA's web site[4] shows no filing relevant to either the Notice of Proposed Rulemaking (NPRM) of February 15, 2019, or the final rule of July 2, 2019:

**OMB Control Number History**

OMB Control Number: **0651-0009**

| ICR Ref. No. | Request Type | Date Received By OIRA | Conclusion Date | Conclusion Action |
|---|---|---|---|---|
| 202002-0651-002 | Revision of a currently approved collection | 02/26/2021 | 10/01/2021 | Approved with change |
| 201912-0651-001 | No material or nonsubstantive change to a currently approved collection | 01/30/2020 | 02/05/2020 | Approved without change |
| 201712-0651-021 | Revision of a currently approved collection | 12/29/2017 | 02/08/2018 | Approved without change |
| 201607-0651-008 | No material or nonsubstantive change to a currently approved collection | 07/28/2016 | 09/07/2016 | Approved without change |

[4] The single most relevant page is Office of Information and Regulatory Affairs, *OMB Control Number History*, Applications for Trademark Registration, https://www.reginfo.gov/public/do/PRAOMBHistory?ombControlNumber=0651-0009 For exhaustive purposes, I also reviewed all the other places the PTO suggests, -0050, -0051, -0054, -0055, -0056, and -0061 . None reflect any filing during the relevant time periods for relevant information collections, let alone approval, of 37 C.F.R. § 2.189.

No relevant filing exists in any other place suggested by the PTO.[5]

The Final Rule notice[6] states, 84 Fed. Reg. at 31,509 col. 3:

> *P. Paperwork Reduction Act:* This rulemaking involves information collection requirements that are subject to review by the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*). The collection of information involved in this rule has been reviewed and previously approved by OMB under control numbers 0651–0009, 0651–0050, 0651–0051, 0651–0054, 0651–0055, 0651–0056, and 0651–0061. We estimate that 41,000 applications will have an additional burden of 5 minutes due to this rulemaking, adding in 3,000 burden hours across all trademark collections.

The USPTO's statement that, "[t]he collection of information involved in this rule has been reviewed and previously approved by OMB" is false. The relevant pages at OMB/OIRA's web site show that the USPTO did not request "review" or "approval" of *anything* relating to this

[5] The relevant places are noted in the PTO's rule notices, e.g., 84 Fed. Reg. 31509 col. 3, and the corresponding web pages are in note 4.

[6] U.S. Patent and Trademark Office, *Requirements of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants*, Final Rule, 84 Fed. Reg. 31,498, 31,511 (July 2, 2019).

rulemaking—for the domicile address rule, the new requirement for identifying domestic counsel, or anything else.[7] Without a filing, there cannot have been "review" let alone "approval" as the PTO claims. § 3507(a). Since the PTO never even requested a control number, the PTO lacks authority to require domicile address information (or to require foreign applicants to disclose their domestic attorney's address, for that matter). 44 U.S.C. §§ 3507(a) and 3512.

The Final Rule notice states that "41,000 applications will have an additional burden of 5 minutes due to this rulemaking, adding in 3,000 burden hours across all trademark collections."[8] However, the USPTO failed to make a single filing with OMB/OIRA to update paperwork burden to reflect that added burden, at least not at the statutorily-required time.[9]

The only apparent benefits to the PTO of claiming to be exempt from the Paperwork Reduction Act are (a) to avoid the work of doing the

---

7 See footnote 4. The more detailed documents in connection with each filing, for example, at https://www.reginfo.gov/public/do/PRAViewDocument?ref_nbr=201912-0651-001 show that none of the papers that the PTO *did* file with OIRA sought "review and approval" of the domicile address rule.

8 84 Fed. Reg. at 31,500.

9 *See* web pages noted in note 4.

cost-benefit analysis, (b) by not asking for notice-and-comment, the PTO never receives criticism or vetting of its proposal, and therefore never has to reexamine its assumptions, and (c) if the PTO never requests Paperwork Reduction review from OMB/OIRA, OMB/OIRA can't say "no," leaving the PTO free to do what it wants.

Because the USPTO never requested the comments required by § 3506(c)(2)(A), and never requested a control number from OMB/OIRA, § 3507(a), OMB/OIRA never issued a valid control number. Without a valid OMB control number, the PTO has no authority to enforce the domicile address rule. 44 U.S.C. §§ 3507(a), 3512; 5 C.F.R. § 1320.6.

**2. The PTO made no showing of "practical utility"**

The Paperwork Reduction Act only permits an agency to collect information that will have "practical utility," 44 U.S.C. § 3506(c)(3)(A), that is, information that is *actually* useful, not information that is "merely … theoretical[ly] or potential[ly]" useful. 5 C.F.R. § 1320.3(l). The burden of proof is on the agency to certify "practical utility," and to supply a supporting record. § 3506(c)(3)(A). Nowhere in the rulemaking record is there a single word from the PTO to explain "practical utility" for collecting domicile address information. The PTO

skipped out on the work, and therefore lacks authority to collect domicile address information.

### 3. Omissions and false statements in the PTO's decision on Chestek's petition for rulemaking

Ms. Chestek filed a Petition for Rulemaking (Appx214-228) on behalf of another client in September 2019. It took Commissioner Gooder ***eighteen months*** to decide this petition (Appx11-19). The TTAB's decision relies on and incorporates the decision on this petition by reference (Appx6-7); therefore Commissioner Gooder's Decision on Petition is within this Court's review of the TTAB decision. *Cf.* 5 U.S.C. § 704 ("A preliminary … or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.").

The PTO's decision on Petition reads as follows (Appx16-17):

> The USPTO has complied with all requirements of the PRA, including coordination with and review by OMB of any adjustments to existing OMB control numbers impacted by the final rule. OMB determined that no new OMB control numbers were required, and that existing forms impacted by the final rule were not substantially changed. The adjustments made by UPSTO to existing OMB control numbers update the respondent estimates and burden hours for affected forms. The requirement for the domicile address in particular is not a change to the collection of this information. The USPTO has always collected address information from an applicant or registrant.
>
> The burdens associated with the collection of address information is accounted for in the respondent estimates and burden hours reported to and approved by OMB (Control No. 0651-0009). No changes are required for this collection. Regarding the burdens associated with the submission of petitions

Each statement in the Commissioner's decision is either false, evasive of the issue presented, or arbitrary and capricious.

- Commissioner Gooder's decision evades the relevant issue by claiming that *domicile* address information is the same thing as "address information" (Appx16-17). First, if that analysis were valid, *at the very least* the PTO would have had to make a Paperwork filing to increase the number of addresses collected. The PTO filed nothing.[10] Second, if "address information" *of a correspondent* were interchangeable with "domicile address information" *of the applicant*, the PTO would have been satisfied when Chestek PLLC provided the same P.O. Box address *as correspondent* that Chestek had used for decades. This appeal would not exist. They're different things. The PTO can't have it both ways.

- The PTO claims that "OMB determined that no new OMB control numbers were required" (Appx16). However, the PTO did not present the issue to OMB/OIRA for decision and allow OMB/OIRA to rule on it. Commissioner Gooder cites nothing to suggest that any such issue presentation or "determination" ever existed. OMB/OIRA's web site shows no such communication between PTO

---

[10] See OMB's web page in the text accompanying note 4, *supra*.

and OMB/OIRA occurred, at least not at the relevant time.[10] Commissioner Gooder's claim of a "determination" is suspect at best.

- The USPTO did ***not*** "coordinat[e] with and review by OMB." Commissioner Gooder's decision does not identify any such filing or review (Appx16-17). The relevant web page at OMB/OIRA shows that no such "coordination and review" ever occurred.[10]
- Perhaps "no new OMB control numbers were required" (Appx16)—but an expansion of ***existing*** control numbers to cover collection of new information (both the domicile address information and foreign applicants' designation of domestic attorney) unquestionably was. 44 U.S.C. § 3506(a) (any "revision" of the information to be collected requires a control number). OMB/OIRA's web site shows that no such filing ever occurred.[10]
- The Paperwork Reduction Act is not calibrated to "forms." (Before 1995, that would have been a plausible explanation, but a statutory amendment of 1995 was specifically directed at closing that interpretation.) The relevant question is whether the rule collects different "information," 44 U.S.C. § 3506(a). Undeniably the July 2019 final rule does. Commissioner Gooder's decision avoids addressing any issue that is legally or factually relevant.

- The "burdens associated" with *domicile* address information have ***never*** been "accounted for," "reported to," or "approved by" OMB. Not under Control No. 0651-0009 or any other.[10] Commissioner Gooder's contrary statement is unsupported in the record.
- The Paperwork Reduction Act section of Ms. Chestek's petition footnoted to the relevant law and facts. Appx207-209. Commissioner Gooder's decision is cite-free (Appx16-17). It is no more than *ipse dixit* "because I said so." Commissioner Gooder's failure to cite recognizable law or substantial evidence is "arbitrary and capricious."

The TTAB's decision directly on review in this appeal incorporates by reference Commissioner Gooder's arbitrary and capricious decision making, and is therefore arbitrary and capricious.

### B. The PTO skipped requirements under the Regulatory Flexibility Act

The Regulatory Flexibility Act (RFA), 5 U.S.C. §§ 601-612, protects small entities from excessively burdensome regulation. The RFA requires agencies to consider the impact of their regulatory proposals on small entities, analyze effective alternatives that minimize small entity impacts, and publish their analyses for public comment in

the Federal Register. 5 U.S.C. §§ 603(a), 604(b); Small Business Administration, *A Guide for Government Agencies: How to Comply with the Regulatory Flexibility Act* (August 2017 ed.)[11]. For *de minimis* rules, the agency may opt out of the analysis if the agency certifies that the rule will not "have a significant economic impact on a substantial number of small entities." § 605(b). When an agency fails to offer either the statutorily required rational consideration of the effect of a rule on affected small entities, or the certification, the agency can't enforce the rule. *Harlan Land Co. v. U.S. Dept. of Agr.*, 186 F.Supp.2d 1076, 1097 (E.D. Cal. 2001).

Both small entity trademark applicants and small entity trademark law firms are within the scope of coverage for the RFA. 5 U.S.C. § 601(3), (4), and (6).

The PTO developed regulatory flexibility analyses and presented them in its NPRM and final rule notices. 84 Fed. Reg. 4399-4401; 84 Fed. Reg. 31,507-09. But both analyses ignored *this* rule. Neither has *a single word* about "address" of any domestic applicant, let alone "domicile address." and neither has *a single word* relevant to impact on

---

11 https://cdn.advocacy.sba.gov/wp-content/uploads/2019/06/21110349/How-to-Comply-with-the-RFA.pdf

law firms such as Chestek PLLC. In *Harlan Land*, the agency offered *some* regulatory flexibility analysis, though based on "flawed assumptions," and that flaw was basis to set the rule aside. 186 F.Supp.2d at 1097. In contrast, for the domicile address rule, the PTO didn't even bother with flawed assumptions. The PTO said *nothing*.

Commissioner Gooder's decision on petition (incorporated by reference into the TTAB's decision, and therefore up for review in this appeal) responds to the RFA issue as follows (Appx17):

> The USPTO considered the impact on U.S. domiciled applicants and determined that no additional cost burdens would be incurred for providing a domicile address. The USPTO has always collected address information from an applicant or registrant, and the change for applicants to specifically identify their domicile address imposes no new costs. The costs for providing attorney bar information is de minimis, and would have no impact on the certification that this rule would not have a significant economic impact on a substantial number of small entities.

There is ***not a word*** of "consideration of impact" relating to *any* address of domestic applicants in the PTO's regulatory flexibility analyses. 84 Fed. Reg. 4399-4401; 84 Fed. Reg. 31,507-09. Statute permits an agency to certify that a rule is *de minimis*, but it must be *certified* in the Federal Register, § 605(b), where it can be publicly vetted as part of the rulemaking process. An *ex post*, uncertified, citation-free, 2-years-too-late rewriting of history, in a paper that is not published for public comment, is not a lawful substitute.

## II. The PTO's other recent rulemakings exhibit a repeat pattern of evading rulemaking and administrative law

In 2011, the PTO sought comment on its regulations and its regulatory processes. Dr. Richard Belzer, who had spent ten years in OMB/OIRA reviewing agency submissions under the Paperwork Reduction Act and Executive Orders, wrote as follows:[12]

> My general message is unambiguous and uncomplicated. The USPTO is a longstanding, serial violator of established regulatory principles. This is the product of a bureaucratic culture that treats presidential direction as interference, is adamantly opposed to basing regulatory decision-making on informed analysis, and has serious difficulty adhering to the rule of law.

Dr. Belzer gave an 18-page tutorial in the PTO's process flaws and how they might be improved. Another comment letter[13] condensed the entire rulemaking process into an easy-to-follow step-by-step process, and noted some patterns of PTO violation of law. The PTO has taken no observable action on the comments it requested and received.

---

[12] Dr. Richard Belzer, Comments on "Improving Regulation and Regulatory Review," https://www.uspto.gov/sites/default/files/patents/law/comments/belzer14apr2011.pdf

[13] David Boundy, comments on *Improving Regulation and Regulatory Review* (May 23, 2011), https://www.uspto.gov/sites/default/files/documents/boundy23may2011.pdf at 6-13.

This § II will give a few examples to demonstrate that the PTO's rulemaking failures with respect to the domicile address rule are not isolated outliers.[14]

### A. The PTO's CLE rule

#### 1. The PTO evaded notice and comment for the CLE rule

In July 2019, the PTO proposed a CLE requirement—the PTO would create a new "annual active practitioner fee" and reduce that fee by $100 reduction if attorneys/agents completed six hours of CLE. The PTO itself would be sole provider for most of these courses (ethics credits excepted). The PTO would post lists of those attorneys/agents that did and did not complete those hours. *Setting and Adjusting Patent Fees During Fiscal Year 2020*, NPRM, 84 Fed. Reg. 37,398, 37,414-15 (Jul. 31, 2019). The public sent many dozens of adverse

[14] Additional examples are discussed on my SSRN page, http://ssrn.com/author=2936470 Another example is described in a two-part article at IPWatchdog, *A Study in Scarlet'—Powers of Attorney and USPTO Rulemaking*, https://www.ipwatchdog.com/2022/07/13/study-scarlet-powers-attorney-uspto-rulemaking-part-hidden-guidance-document/id=150182 and https://www.ipwatchdog.com/2022/07/19/study-scarlet-powers-attorney-uspto-rulemaking-part-ii/id=150256

comments on the CLE proposal. One letter signed by 73 attorneys/agents explained many procedural defects in that proposal.[15]

In the final rule notice, the PTO stated ***over eighty*** times that it was not responding to comments because "the USPTO has elected not to implement the proposed annual active patent practitioner fee at this time." 85 Fed. Reg. at 46960-69 (Aug. 3, 2020).

However, just sixty-seven days later, in November 2020, the PTO reimposed its CLE rule. The PTO purported to sidestep the statutory requirements, by calling its rule subregulatory guidance instead of regulation.[16] *Proposed Continuing Legal Education Guidelines*, *Request for Comments*, 85 Fed. Reg. 64,128 (Oct. 9, 2020). Unlike the PTO's *regulatory* Federal Register notices, the PTO's *guidance* notice offers none of the discussion required by the Administrative Procedure Act, Paperwork Reduction Act, Regulatory Flexibility Act, or any of the

---

15 73 Patent Practitioners, https://www.uspto.gov/sites/default/files/documents/Comment_Seventy_Three_Patent_Practitioners_092719.pdf at 23-27 (Sep. 27, 2019).

16 After preparing my presentation for the 2018 Federal Circuit Judicial Conference, I consolidated the law of subregulatory guidance in an article, *The PTAB Is Not an Article III Court, Part 3: Precedential and Informative Opinions*. 47 AIPLA Q.J. 1-99 (June 2019). The SSRN edition has updates reflecting Supreme Court and Federal Circuit cases to September 25, 2019, at https://ssrn.com/abstract=3258694

applicable executive orders. The PTO's proposed guidance notice does not respond to the many adverse comments that were submitted in connection with the August 2020 final rule. *Id.*

In comments on the PTO's guidance proposal (received in January 2021), the public pointed out multiple illegalities and evasions of law in the PTO's conversion of the CLE rule from regulation to guidance. AIPLA's letter and one of the public comment letters have lists of specific omissions.[17] The public comment letters point out omissions and affirmative statements that range from lack of candor to outright false statements that the PTO made to OMB/OIRA (under Executive Order 12866), to OMB/OIRA (under the Paperwork Reduction Act), and to the Small Business Administration (under the Regulatory Flexibility Act).

In June 2021, the PTO announced that the CLE rule would go effective in spring 2022. 86 Fed. Reg. 30920 (Jun. 10, 2021). The PTO failed to respond to ***any*** adverse comments, either those received in

---

[17] AIPLA https://www.uspto.gov/sites/default/files/documents/AIPLA_Letter_to_USPTO_on_CLE_Guidance_010721_FINAL.pdf at 3-5, 10-11 (Jan. 7, 2021); David Boundy, https://www.uspto.gov/sites/default/files/documents/2021-01-11_revised_letter_re_PTO_CLE_engrossed_DEB_to_PTO.pdf at 5-12 (Jan. 11, 2021).

response to the July 2019 NPRM or those responding to the October 2020 "Request for comments." As of today, the PTO's last word is that the CLE rule is still on (though "indefinitely delayed," 86 Fed. Reg. 71,453 (Dec. 16, 2021)), and ***still*** the PTO has issued no response to comments. The PTO's neglect of notice-and-comment for the domicile address rule is not isolated; it's pattern.

#### 2. The PTO evaded the Paperwork Reduction Act for the CLE rule

The Paperwork Reduction Act requires agencies to renew their control numbers every three years. 44 U.S.C. § 3507(g). The PTO's attorney registration rules came up for triennial renewal in early 2021, with the CLE rule as part of the package.[18] Public comment letters[19] to OMB/OIRA noted that the PTO failed to request a control number during rulemaking (as required by law), and failed to establish the prerequisites that would allow retroactive cure. The CLE rule inflicts between $120-$150 million per year in costs on the public—almost all cognizable under the Paperwork Reduction Act—without abiding by the

---

[18] https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=202102-0651-003

[19] https://www.reginfo.gov/public/do/PRAViewDocument?ref_nbr=202102-0651-003

required procedural safeguards. In responding,[20] the PTO conceded it had not sought or obtained the required control number. Instead, the PTO claimed that a control number was unnecessary, because the CLE reporting would be voluntary.[20] This assertion lacks any legal support: the Paperwork Reduction Act requires a control number even for "voluntary" paperwork. 5 C.F.R. § 1320.3(c). OMB/OIRA review ended without a control number for the PTO's CLE rule. Therefore, the PTO cannot legally collect CLE statements. And yet, as of today, the PTO's last announcement is that the CLE rule is still on, though "indefinitely delayed." 86 Fed. Reg. 71453.

The PTO's failure to comply with the Paperwork Reduction Act for the domicile address rule is not isolated accident; it's pattern.

### B. The PTO's DOCX rule

In 2019, the PTO proposed to require a shift in the way patent applications are filed, from PDF (as they have been for 15 years) to filing Microsoft Word DOCX. 84 Fed. Reg. at 37,413-14. Public comments explained DOCX documents change formatting, and

---

20
https://www.reginfo.gov/public/do/DownloadDocument?objectID=109594902 at 9.

sometimes content, depending on which word processor, what version, what fonts, what support software, etc., is installed on any given computer. Mathematical formulas, chemical formulas, Greek letters, and similar material that are core to patent applications are particularly vulnerable to such alteration.[21]

### 1. The PTO evaded proper notice-and-comment for the DOCX rule

Several parties submitted actual examples in which the PTO's computers had made changes that could render patent applications valueless. For example, one comment letter[22] showed that the following equation appeared on the applicant's computer as:

$$f(u)=\cos(u)^3\exp(0.2u)$$

The PTO's DOCX filing system changed it to:

$$f(u) = cos(u)^3 exp(10.2u)$$

[21] See public comment letters at https://www.uspto.gov/about-us/performance-and-planning/public-comments-setting-and-adjusting-patent-fees-0 . One particularly trenchant letter is signed by Seventy-Three Patent Practitioners, note 15 *supra*, at 17-18, 48-80.

[22] *E.g.*, Carl Oppedahl, comment letter, https://www.uspto.gov/sites/default/files/documents/Comment_Carl_Oppedahl_080519.pdf at 2-3.

In a patent application, the change from "0.2" to "10.2" is catastrophic. In some cases, the change from non-italic to italic could be just as significant. This error was introduced by the PTO's DOCX filing system.

One public comment letter included two PDFs of the same letter—the results were remarkably different, simply because the letter was moved among computers.[23]

In the final rule notice, the PTO stated, "[t]o date, the Office has not received notifications of any issues resulting from the filing of applications in DOCX format." 85 Fed. Reg. 46,956. The Final rule notice offers not a word to even acknowledge either of these two examples (one of which "result[s] from the filing of applications in DOCX format"), let alone respond.

The PTO claimed to have conducted a "yearlong study" of PDF vs. DOCX filing. 85 Fed. Reg. at 46,959. The Administrative Procedure Act requires that notice-and-comment can only be informed and meaningful if an agency discloses all underlying assumptions, data,

[23] *E.g.*, *Seventy-Three Practitioners*, note 15 *supra*, compare pages 1-34 to pages 48-81.

analyses, computer models, etc. for public comment.[24] The E-Government Act of 2002 requires agencies to post rulemaking support information on the agency's web site.[25] The PTO never mentioned this "yearlong study" in the NPRM and offered nothing for public vetting. The first mention of the "yearlong study" appeared in the final rule notice, 85 Fed. Reg. 46,957-98—but the PTO offered none of the required supporting documentation. To this day, the PTO has offered no evidence that this "yearlong study" ever existed.[26]

FOIA request F-22-00092 sought the "yearlong study" by Freedom of Information Act on July 2, 2021. FOIA gives the agency 20 days to reply, 5 U.S.C. § 552(a)(6)(A)(i). Over a year later, the PTO has produced *nothing*, suggesting either no such study has ever existed or

---

[24] *Solite Corp. v. EPA*, 952 F.2d 473, 484 (D.C. Cir. 1991) ("Integral to the notice requirement is the agency's duty 'to identify and make available technical studies and data that it has employed in reaching the decisions to propose particular rules… An agency commits serious procedural error when it fails to reveal portions of the technical basis for a proposed rule in time to allow for meaningful commentary.'")

[25] E-Government Act of 2002, Pub.L. 107-347 § 206(d)(1), 116 Stat. 2916, codified in notes to 44 U.S.C. § 3501.

[26] If it ever had, it would be with the rest of the PTO's supporting materials at https://www.uspto.gov/about-us/performance-and-planning/fee-setting-and-adjusting .

the "yearlong study" does not show what the PTO claimed in the Federal Register.

The PTO's NPRM conceded that only about 80% of patent filers use Word or other word processors that use DOCX. 84 Fed. Reg. 37,413. Comment letters noted that the PTO had made no provision for the other 20%.[27] In the final rule, explains *advantages to the PTO itself*, and offers no response to address the plight of the other 20%. Response 63, 85 Fed. Reg. 46,959 col. 1.

The PTO refers to a "survey," *id.*, but offers no disclosure of the survey questions, the collection methods, or the analysis. The PTO's reliance on a black box "survey" is a violation of the law of notice and comment.[28]

This July 2019 NPRM had several fee provisions. Comment letters pointed out that some of the fees the PTO proposed exceeded the PTO's statutory authority.[29] In the final rule, 85 Fed. Reg. at 46949-72, the PTO responds to none of these comments—many are ignored

---

[27] *E.g.*, *Seventy Three Practitioners*, note 15 *supra*, at 20.

[28] See note 24, *supra*.

[29] *E.g.*, *Seventy Three Practitioners*, note 15 *supra*, at 3-9, 24-25, 29-32.

entirely, and for the rest, the PTO recharacterizes the comments and thereby avoids any genuine response.

Evasion of fair notice and comment is a pattern. It is not confined to Chestek's domicile address rule.[30]

### 2. The PTO evaded the Paperwork Reduction Act

In the NPRM, the PTO claimed that the DOCX rule "has been reviewed and previously approved by OMB" under the Paperwork reduction Act. 84 Fed Reg. 37431. The public pointed out that there were no relevant filings at the relevant times, so no such approval could exist.[31] Even after the error was pointed out, the PTO repeated the falsehood in the final rule. 85 Fed. Reg. at 46,985 col. 2.

---

[30] The PTO's practice of recharacterizing comments (and thereby failing to fairly answer them) has been brought to the PTO's attention in the past. *Improving Regulation and Regulatory Review*, note 13, *supra*, at 5.

[31] https://www.reginfo.gov/public/do/PRAOMBHistory?ombControlNumber=0651-0032

The DOCX rule came up for triennial review under the Paperwork Reduction Act in November–December 2020. The public filed nearly 60 comment letters[32] explaining:

- Technologically, DOCX filing cannot work. DOCX is *designed* to change documents to suit specific computers—changes such as the changed equation shown above are a designed-in feature. The PDF standard guarantees portability; the DOCX standard does not.
- Two different estimates of knowledgeable persons pegged the cost of the DOCX rule at about $200 million in costs for the public, because of the extra review for errors that will be required.[33] However, the PTO (by silence) estimated costs at zero.
- In many cases, the PTO's response to comments misrepresented the underlying comment in order to evade fair response.

---

32 https://www.reginfo.gov/public/do/PRAViewDocument?ref_nbr=202011-0651-006

33 Comment letter, https://downloads.regulations.gov/PTO-P-2020-0050-0004/attachment_1.pdf at 3-5 and 32-39.

- In its response to comments, the PTO stated it addressed one comment letter. The relevant web site showed that the PTO had received two.[34] The other was entirely ignored.
- The PTO had skipped multiple steps required by law.[35]

In the last paper exchanged between the PTO and OMB/OIRA, on May 25, 2021 (which is the only part of the conversation that OMB/OIRA makes visible to the public, and that only after conclusion of an otherwise-*ex parte* negotiation), the PTO concedes that does not have the required control number, and it is not requesting one:[36]

> In response to the statement that "[t]he DOCX rule should be removed from the ICR request", the USPTO respectfully notes that neither 0031 nor 0032 currently include "[t]he DOCX rule", …. As stated in the Final Rule – Setting and Adjusting Patent Fees during Fiscal Year 2020 (85 FR 46932), the non-DOCX surcharge of 37 CFR 1.16(u) is not scheduled to take effect

---

34 https://www.reginfo.gov/public/do/DownloadDocument?objectID=107472602 at 6.

35 … objectID=107472602, note 34 *supra*, at 9-10.

36 https://www.reginfo.gov/public/do/DownloadDocument?objectID=106619502 at 13-14.

> until January 2022, until which time the Office will continue outreach efforts to address public concerns and allow applicants an opportunity to transition to the new requirements.

In other words, the PTO admitted in its May 2021 letter to OMB/OIRA that its claims in the NPRM and final rule, to have a "reviewed and approved" control number, were false. And the PTO concedes it is not entitled to one as the record stood in May 2021. Nonetheless, the DOCX rule is scheduled to go into effect on Jan. 1, 2023, 87 Fed. Reg. 25226. 107 days from now. The PTO has run no Federal Register notice and filed nothing at OMB/OIRA to cure the lack of a control number for the DOCX rule. The *fastest possible* that the PTO can obtain a new control number is 120 days. 44 U.S.C. §§ 3506(c)(2)(A), 3507(h)(1)(B). Apparently, the PTO intends to proceed without one.

The PTO's discussion continues for several more paragraphs, but only as diversion from the issues presented. The PTO does not directly respond to the comments summarized above.

Evasion of the law is not isolated to Chestek's domicile address rule.

### 3. The PTO evaded the Regulatory Flexibility Act

The PTO included regulatory flexibility analyses in both the NPRM and final rule. 84 Fed. Reg. at 37,425-30; 85 Fed. Reg. 46,979-84. Neither mentions the costs explained in the public comment letters (later estimated at about $200 million annually[37]), even though most of that cost falls on patent prosecution attorneys, a great many of whom work for small entity firms. Neither analysis even acknowledges the existence of such costs. Neither discusses statutorily-required issues, such as ways to reduce impact on, or an exemption for, small entities, 5 U.S.C. § 603(c), or steps taken to minimize impact. § 604(a)(6).

## C. The PTAB's "ordinary meaning" rule violated multiple provisions of rulemaking law

In 2018, the PTO switched the claim construction rule for IPRs and PGRs from "broadest reasonable interpretation" to "ordinary meaning."[38] The PTAB's "ordinary meaning" rule is one of the highest-value rules the PTO has undertaken since the passage of the AIA in

---

[37] See note 33, *supra*.

[38] Patent and Trademark Office, *Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the Patent Trial and Appeal Board*, Notice of Proposed Rulemaking, 83 Fed. Reg. 21221 (May 9, 2018), and Final Rule, 83 Fed. Reg. 51340, 51357 col. 2 (Oct. 11, 2018).

2011. Yet the PTO evaded law after law after law, often by false exemption claims directed to *ex parte* tribunals. The errors are not closely analogous to those in this case, so this brief will not discuss them in detail. But they are highly consequential. The Court may find it instructive to consider *An Administrative Law View of the PTAB's 'Ordinary Meaning' Rule*, Westlaw J. Intellectual Property 25:21 13-16 (Jan 30 2019), available at https://ssrn.com/abstract=3326827.

**D. PTAB precedential opinions**

PTAB precedential opinions are not an acceptable substitute for rulemaking procedures required by statute. *Aqua Products, Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017) reviewed a PTAB rule promulgated by precedential opinion. Though the *en banc* court fractured in five opinions, Judge Reyna's swing opinion consolidated the views of seven of the nine judges of this Court that reached the procedural defect issue: "The Patent Office cannot effect an end-run around [the APA] by conducting rulemaking through adjudication …." *Id.* at 1339. In *Facebook, Inc. v. Windy City Innovations, LLC*, 953 F.3d 1313, 1343 (Fed. Cir. 2020) and 973 F.3d 1321, 1347-54 (Fed. Cir. 2020), a unanimous "additional views" discussion held that the PTAB lacks rulemaking authority, and therefore its precedential decisions are not

entitled to force of law under *Chevron* deference (or any other legal theory).

In the five years since *Aqua Products*, the PTAB has issued ***thirty-four*** precedential opinions.[39] After the March 2020 *Windy City* decision, the PTAB designated three more within two weeks. After this Court's latest opinion on the issue, within a few months the PTAB issued five more.[39] The PTO has cited its own precedential opinions as binding about 3,000 times in recent years. *See*, *e.g., Ex parte Stenneth*, Appeal 2019-006578, slip. op. at 6-7, 2020 WL 2848033, at *3 (PTAB May 7, 2020) ("we are bound by a PTAB precedential decision" even though the analogy is loose indeed).

The APA offers a mechanism for immediate rulemaking that works just fine for other agencies. An interim rule can have immediate effect on publication, if the agency follows 5 U.S.C. § 553(d)(3). The agency may follow up with notice-and-comment rulemaking. A search of the Federal Register for "Action: interim rule" shows that other agencies have issued "interim rules" over 1,700 times in 28 years.[40]

---

[39] Patent and Trademark Office, *Precedential Opinions*, https://www.uspto.gov/patents/ptab/decisions-and-opinions/precedential

[40] https://www.federalregister.gov/documents/search?conditions%5Bterm%

The PTO does not observe notice and comment or any of the rest of rulemaking law for PTAB precedential decisions.

### E. Senior career staff refuse to implement the President's *Bulletin on Agency Good Guidance Practices*

In January 2007, the OMB/OIRA issued the *Bulletin for Agency Good Guidance Practices*, 72 Fed. Reg. 3432 (Jan 25, 2007). The *Bulletin* is largely a consolidation and restatement of court decisions interpreting the APA, reminding agencies of familiar and settled principles. For example, subregulatory guidance may not be given binding force of law against the public; rather guidance must be treated as purely advisory, and agency staff may not rely on it to "foreclose consideration by the agency of positions advanced by affected private parties." 72 Fed. Reg. 3436 col. 3. The *Bulletin* requires agencies to review their guidance documents and remove mandatory language, unless it describes a statutory or regulatory requirement. The *Bulletin* adds a few prudential requirements: agencies must have written procedures for approval of significant guidance documents, must provide notice at several points, and must designate "an office (or

---

5D=%22action+interim+rule%22&conditions%5Btype%5D%5B%5D=RULE#

offices) to receive and address complaints by the public" relating to agency misuse of guidance. 72 Fed. Reg. 3440. Fifteen years after it was issued, the PTO has never implemented the *Bulletin*.

The *Good Guidance Bulletin* would assist the PTO in avoiding unlawful conduct. For example, in April 2007, the PTO issued a guidance document to the examining corps that fundamentally changed restriction practice (under 35 U.S.C. § 121)—but the PTO kept the guidance document secret. The public received no notice (let alone a copy), and was given no opportunity for notice and comment. A petition for rulemaking[41] requested rescission of the secret guidance document, and implementation of the *Good Guidance Bulletin* so that errors in the PTO's use of guidance would not be repeated. The petition was denied[42] by the then-Acting Associate Commissioner for Patent Examination Policy Robert Bahr. The Bahr decision disclaimed any obligation to carry out the President's instructions:

---

[41] Pat. App. 10/890,692, petition of Feb. 17, 2010.

[42] 10/890,692, Decision on petition, Nov. 30, 2010, at 19-20.

Finally, a significant portion of the petition addresses whether the USPTO guidance and other informational documents (e.g., MPEP and memoranda to the Patent Examining Corps) complies with Executive order 12866 (Sept. 30, 1993) (Regulatory Planning and Review)[2] and the Office of Management and Budget (OMB) Bulletin on Good Guidance Practice. Section 11 of Executive order 12866 expressly indicates that: "[t]his Executive order is intended only to improve the internal management of the Federal Government and does not create any right or benefit, substantive or procedural, enforceable at law or equity, against the United States, its agencies or instrumentalities, its officers or employees, or any other person." See Executive Order 12866 of September 30, 1993; Regulatory Planning and Review, 58 Fed. Reg. 51735 (Oct. 4, 1993). The Bulletin on Good Guidance Practice is a bulletin issued by OMB in a Federal Register notice entitled Final Bulletin for Agency Good Guidance Practices, published at 72 Fed. Reg. 3432 (Jan. 25, 2007). Similar to Executive order 12866, the Final Bulletin for Agency Good Guidance Practices expressly indicates that: "[t]his Bulletin is intended to improve the internal management of the Executive Branch and is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or equity, against the United States, its agencies, or other entities, its officers or employees, or any other person." See Final Bulletin for Agency Good Guidance Practices, 72 Fed. Reg. at 3440. Any person may bring issues of alleged non-compliance on the part of the USPTO with Executive order 12866 or the Final Bulletin for Agency Good Guidance Practices to the attention of the Department of Commerce or the Office of Management and Budget; however, petitioners' issues concerning compliance or non-compliance with Executive order 12866 or the Final Bulletin for Agency Good Guidance Practices do not provide a basis for setting aside or otherwise disturbing the TC Director's decision in the above-identified application. See, e.g., Teledyne, Inc. v. United States, 50 Fed. Cl. 155, 190 (Fed. Cl. 2001) (plaintiff cannot rely upon an Executive order that, by its plain terms, precludes judicial review of an agency's compliance with its directive as a basis for challenging agency action).

Robert W. Bahr
Acting Associate Commissioner for
Patent Examination Policy

Mr. Bahr has no known involvement in Chestek's case. However, as (now Deputy) Commissioner for Patent Examination Policy, Mr. Bahr is one of the two most influential persons in the PTO with respect to the PTO's rulemaking (along with Counsel for Regulatory and Legislative Affairs in the Office of General Counsel). Some years ago,

Mr. Bahr was the PTO's liaison to OMB/OIRA for regulatory review issues,[43] so he is well aware of the laws governing rulemaking. If Mr. Bahr was willing to publicly state this view of law that governs guidance, rulemaking, fair process for the public, and Presidential authority, the Court may infer that similar opinions are pervasive among senior PTO career staff.

Under the Freedom of Information Act, U.S. Inventor (a nonprofit organization) requested the annual performance agreement for the Deputy Commissioner for Patent Examination Policy.[44] The 2020 performance agreement sets the incentives for the PTO's rulemaking activities. The performance agreement does not list compliance with rulemaking law as a relevant compensation metric. Financial concerns, however, are central to the PTO's rulemaking:

---

43 Affidavit of Richard Belzer, https://docs.justia.com/cases/federal/district-courts/virginia/vaedce/1:2007cv00846/221151/178/1.html ¶ 40.

44 U.S. Inventor's FOIA requests are at https://usinventor.org/ptab-foia-documents. The Deputy Commissioner's 2020 performance agreement is at https://usinventor.org/wp-content/uploads/PAP-and-PD-for-various-PTO-Executives.pdf pages 811-824.

| Performance Requirement 2: **Patent Legal Administration, Examination Guidance and Rulemakings [Weight 35%]** | Strategic Alignment: **Strategic Goal 1 /Objective Alignment 1, 2, and 3** |
|---|---|
| Develop an effective and efficient planning strategy and performance measurement system for the Office of Patent Legal Administration to contribute to the achievement of goals, objectives and targets based on requirements in the President's Budget and *USPTO 2018-2022 Strategic Plan*.<br><br>As a fee-funded agency, the USPTO relies on user fee collections to fund operations. The USPTO considers a number of economic factors and relevant indicators when forecasting its workloads. While many of these defining indicators point toward renewed economic expansion, considerable uncertainty still remains regarding the current and near future prospects for growth. This uncertainty could affect anticipated USPTO workloads and fee collections which in turn could significantly impact the USPTO's long-term goals, objectives and targets, and therefore simultaneously affect any interim results.<br><br>Success of these objectives will be determined by the specific performance measures laid out in the attached document and will be measured based on overall performance taking into account the totality of all the measures in the attached document. Meeting or exceeding the targets set forth in the attached document represents a level of outstanding performance. | Goal I, Objectives 1, 2 and 3 of the *USPTO 2018-2022 Strategic Plan*. |

## CONCLUSION

This Court should set aside the TTAB's decision in Chestek Legal, and should set aside the domicile address rule, under 5 U.S.C. § 706(2)(A) (arbitrary and capricious) or (D) (without observance of procedure required by law).

Date: September 16, 2022

By: /s/ David E. Boundy

DAVID E. BOUNDY

POTOMAC LAW GROUP PLLC
P.O. BOX 590638
NEWTON, MA 02459
(646) 472 9737
DavidBoundyEsq@gmail.com

*Amicus Curiae*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief is 6267 words, less than the 7000 words authorized by Federal Rule of Appellate Procedure 29(a)(5), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This brief has been prepared in a proportionally spaced typeface, Century Schoolbook 14 pt, using Microsoft Word 2003.

Date: September 16, 2022 By: /s/ David E. Boundy
DAVID E. BOUNDY