22-1843

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**IN RE CHESTEK PLLC,**

*Appellant*

Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board, Application No. 88/938,938

**BRIEF FOR APPELLEE—DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE**

THOMAS W. KRAUSE
Solicitor

FARHEENA Y. RASHEED
Deputy Solicitor

CHRISTINA J. HIEBER
Senior Counsel for Trademark Policy and
Litigation

MARY BETH WALKER
Associate Solicitor

Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
(571) 272-9035

*Attorneys for the Director of the
United States Patent and Trademark Office*

January 31, 2023

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES .................................................................. 1

STATEMENT OF THE CASE WITH RELEVANT FACTS ..................................... 4

    I.    Statutory and regulatory background ................................................ 4

    II.    Factual and procedural background ................................................. 11

        A.    Procedural background .......................................................... 11

        B.    The Board's decision ............................................................ 12

SUMMARY OF THE ARGUMENT ............................................................. 14

STANDARD OF REVIEW ...................................................................... 16

ARGUMENT ................................................................................... 16

    I.    The Board properly concluded that Chestek failed to comply with the domicile address requirement and that registration must be refused as a result ................................................................................ 16

    II.    The domicile address requirement was properly promulgated .................. 18

        A.    The USPTO was not required to undertake notice-and-comment rulemaking in promulgating the domicile address requirement ......... 18

        B.    The procedures the USPTO followed in promulgating the domicile address requirement were proper even under the notice-and-comment rulemaking standard ..................................................... 20

            1.    The Final Rule was a logical outgrowth of the NPRM. ............. 21

            2.    The rulemaking was not arbitrary and capricious. .................... 25

CONCLUSION ................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Actelion Pharm. v. Kappos,*
  972 F. Supp. 2d 51 (D.D.C. 2013), *aff'd*, 565 F. App'x 887 (Fed. Cir. 2014) .......... 18

*Alto Dairy v. Veneman,*
  336 F.3d 560 (7th Cir. 2003) ....................................................................... 22

*Amoco Oil Co. v. United States,*
  234 F.3d 1374 (Fed. Cir. 2000) .................................................................. 21

*Animal Legal Def. Fund v. Quigg,*
  932 F.2d 920 (Fed. Cir. 1991) ..................................................................... 18

*Cooper Techs. Co. v. Dudas,*
  536 F.3d 1330 (Fed. Cir. 2008) .................................................................. 19

*Forester v. Consumer Prod. Safety Commn. of the United States,*
  559 F.2d 774 (D.C. Cir. 1977) .................................................................... 28

*JEM Broad. Co. v. FCC,*
  22 F.3d 320 (D.C. Cir. 1994) ...................................................................... 19

*Mid Continent Nail Corp. v. United States,*
  846 F.3d 1364 (Fed. Cir. 2017) .........................................................16, 21, 27

*National Mining Ass'n v. Mine Safety and Health Administration,*
  512 F.3d 696 (D.C. Cir. 2008) .................................................................... 21

*Novacare, Inc. v. Thompson,*
  357 F. Supp. 2d 268 (D.D.C. 2005) ............................................................ 20

*Nuvio Corp. v. FCC,*
  473 F.3d 302 (D.C. Cir. 2006) .................................................................... 27

*Omega SA, In re,*
  494 F.3d 1362 (Fed. Cir. 2007) .................................................................. 16

*SICPA Holding SA, In re,*
  2021 USPQ2d 613 (TTAB 2021) ................................................................ 16

*Thrifty, Inc., In re,*
  274 F.3d 1349 (Fed. Cir. 2001) ................................................................. 16

*Veterans Justice Group, LLC v. Sec. of Veterans Affairs,*
  818 F.3d 1336 (Fed. Cir. 2016) ................................................................. 22

**Statutes**

5 U.S.C. § 553 ................................................................... 18, 19, 28

15 U.S.C. § 1051 ................................................................. 8, 11, 19

15 U.S.C. § 1123 ....................................................................... 4, 18

35 U.S.C. § 2 .................................................................................. 4

Trademark Modernization Act of 2020,
  Pub. L. No. 116-260, div. Q, tit. II, subtit. B, § 228, 134 Stat. 1182 (2020) ............. 5

**Regulations**

37 C.F.R. § 2.2 ................................................................... 7, 8, 22

37 C.F.R. § 2.2(o) ......................................................... 2, 6, 8, 11

37 C.F.R. § 2.2(p) ............................................................. 2, 8, 11

37 C.F.R. § 2.11 ........................................................................ 8, 23

37 C.F.R. § 2.11(a) .................................................... 9, 11, 22

37 C.F.R. § 2.11(b) ........................................................................ 9

37 C.F.R. § 2.22(a)(1) ..................................................... 8, 24

37 C.F.R. § 2.22(a)(20) ................................................................ 9

37 C.F.R. § 2.22(a)(21) ................................................................ 6

37 C.F.R. § 2.32 ...................................................................... 24

37 C.F.R. § 2.32(a)(2) ...................................................... 2, 8, 9

37 C.F.R. § 2.63(b) ..................................................................... 16

37 C.F.R. § 2.146 ..................................................................... 12

37 C.F.R. § 2.146(a)(5) ..................................................... 11

37 C.F.R. § 2.148 ............................................................. 11

37 C.F.R. § 2.189 ......................................................... 2, 8, 9, 11, 24

## Other Authorities

Notice of Proposed Rulemaking: Requirement of U.S. Licensed Attorney for
    Foreign Trademark Applicants and Registrants,
    84 Fed. Reg. 4393 (Feb. 15, 2019) ..........................................................*passim*

Final Rule: Requirement of U.S. Licensed Attorney for Foreign Trademark
    Applicants and Registrants, 84 Fed. Reg. 31498 (July 2, 2019) ..........................*passim*

16AA Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 3975.1 (5th ed. 2022) ................................................ 21

H.R. Rep. No. 116-645 (2020) .......................................................... 5

Trademark Manual of Examining Procedure § 803.05 ................................ 9, 10

Trademark Application and Registration Records System of Records Notice,
    COMMERCE/USPTO-26 (Feb. 20, 2020) .............................................. 10

## STATEMENT OF RELATED CASES

The Director is unaware of any other appeal from the Trademark Trial and Appeal Board ("TTAB" or "Board") in connection with trademark application Serial No. 88/938,938 in this Court or any other court. The Director is also unaware of any related cases pending in this or any other court that will directly affect, or be affected by, this Court's decision in this pending appeal.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over Chestek's appeal from the Opinion and Order of the TTAB, dated March 30, 2022, affirming the refusal to register the mark CHESTEK LEGAL, pursuant to 28 U.S.C. § 1295(a)(4)(B) and 15 U.S.C. § 1071(a). The appeal from the TTAB's decision is timely because it was filed within 63 days of the decision date. 15 U.S.C. § 1071(a)(2); 37 C.F.R. § 2.145(d)(1)).

An action challenging the procedural process by which a rule is promulgated accrues from the time of the promulgation of the rule and is subject to a six-year statute of limitations. *Hyatt v. U.S. Pat. and Trademark Off.*, 904 F.3d 1361, 1371 (Fed. Cir. 2018). Chestek's procedural challenge to the rulemaking is timely because it was filed within six years of July 2, 2019, the date of the final rule.

## STATEMENT OF THE ISSUES

In 2019, the United States Patent and Trademark Office ("USPTO") adopted a requirement that all foreign-domiciled trademark applicants, registrants, and parties appearing before the USPTO in trademark matters retain U.S. counsel. The requirement was part of a multipronged approach to address the growing problem of foreign filers evading and violating statutory and regulatory requirements in trademark matters and concerns regarding the integrity of the federal trademark register resulting from apparently inaccurate and fraudulent filings. Because the requirement to obtain U.S. counsel turned on the domicile of the applicant, registrant, or party, it was necessary for the USPTO to collect domicile information in a way that could ensure reasonable accuracy of the information.

Although not required to do so, the agency adopted the U.S. counsel requirement through procedures consistent with informal rulemaking. As relevant to this case, the resulting rules tracked the statutory requirement that has existed in the Trademark Act since 1946 for providing "domicile" in a trademark application. And they defined domicile in a way that reasonably captured sufficient information to prevent parties from easily evading the U.S. counsel requirement by, for example, just providing a city and state that could not be easily cross-referenced by the agency. The final rules define a juristic entity's domicile as the location of the entity's "principal

place of business." See 37 C.F.R. §§ 2.2(o) & (p), 2.32(a)(2) and 2.189 (collectively the "domicile address requirement").

Appellant Chestek PLLC ("Chestek") declined to comply with the domicile address requirement when applying to register the mark CHESTEK LEGAL shown in Application Serial No. 88/938,938. Chestek's failure to comply with the statutory domicile requirement and the rules defining "domicile" is a proper basis on which to refuse registration. Thus, the TTAB correctly affirmed the refusal to register Chestek's mark.

Chestek's arguments that the rules were improperly promulgated are without merit. Chestek complains that the USPTO failed to comply with notice-and-comment rulemaking because, according to it, the final rule was not a logical outgrowth of the proposed rule and because the written explanation of the final rule did not explicitly reference privacy concerns that were not raised by any commentators. Chestek's argument fails because the domicile address requirement is contained in procedural rules for which notice-and-comment rulemaking is not required. But even if it were required, the proposed rule provided sufficient notice to the public to understand that the USPTO would be collecting from trademark applicants, registrants, and parties a domicile address defined as the permanent legal place of residence of a natural person or the principal place of business of a juristic entity. Without a domicile address the USPTO could not know whether an applicant or party was subject to the U.S. Counsel requirement.

The substantive definition of the required address information did not change between the proposed and final rules. The USPTO was not required to explicitly invite comments on a particular issue so long as the proposed rules made clear what was covered, which it did. That Chestek (apparently) failed to raise arguments it now wishes the USPTO had explicitly addressed in the final rule does not obligate the USPTO to redo its entirely proper process.

The issues in this case are:

(1) Whether Chestek failed to comply with a trademark application requirement such that the refusal to register its mark was proper;

(2) Whether the domicile address requirement was subject to notice-and-comment rulemaking under the Administrative Procedure Act (APA); and

(3) Whether the proposed rule provided sufficient notice of the domicile address requirement such that the final rule was a logical outgrowth of it and not arbitrary and capricious.

For the reasons discussed below, this Court should affirm the Board on issues one and two. If this Court reaches issue three, it should also affirm the Board's decision.

## STATEMENT OF THE CASE WITH RELEVANT FACTS

## I.     Statutory and regulatory background

In February 2019, the USPTO undertook a process to adopt a requirement
that foreign-domiciled applicants, registrants, and parties appearing before the agency
in trademark matters obtain U.S. counsel ("U.S. Counsel Rule"). Although it was not
required to engage in notice-and-comment rulemaking, the USPTO adopted the U.S.
Counsel Rule through a process that provided notice and an opportunity to
comment before the final rule was announced. The proposed and final rules cited the
Director's authority in 15 U.S.C. § 1123 and 35 U.S.C. § 2 to make rules and
regulations for the conduct of proceedings in the Office. Notice of Proposed
Rulemaking: Requirement of U.S. Licensed Attorney for Foreign Trademark
Applicants and Registrants, 84 Fed. Reg. 4393, 4400 (Feb. 15, 2019) ("NPRM");
Final Rule: Requirement of U.S. Licensed Attorney for Foreign Trademark
Applicants and Registrants, 84 Fed. Reg. 31498, 31507 (July 2, 2019) ("Final Rule").
They also made clear that the rulemaking "involve[d] rules of agency practice and
procedure, and or interpretive rules." 84 Fed. Reg. 4399; 84 Fed. Reg. 31506.

One purpose of the U.S. Counsel Rule was to address the unauthorized
practice of law that the USPTO had observed when foreign parties were improperly
representing foreign applicants. 84 Fed. Reg. 4394; 84 Fed. Reg. 31498. The USPTO
had also experienced a significant increase in foreign trademark filings in prior years

that violated U.S. trademark laws and USPTO regulations, and it had serious concerns about the integrity of the trademark register resulting from apparently inaccurate and fraudulent filings.[1] 84 Fed. Reg. 4393-4395; 84 Fed. Reg. 31498. As the NPRM explained, "requiring a qualified attorney to represent applicants, registrants, and parties whose domicile or principal place of business is not located within the U.S. or its territories is an effective tool for combatting the growing problem of foreign individuals, entities, and applicants failing to comply with U.S. law." *Id.* at 4396. Likewise, the Final Rule discussed the significant concerns about register integrity and the need to enforce compliance with statutory and regulatory requirements for trademark applications and post-registration filings. *Id.* at 31498, 31507. The Final Rule explained: "The USPTO is implementing the requirement for representation by a qualified U.S. attorney in response to the increasing problem of foreign trademark applicants who purportedly are pro se (i.e., one who does not retain a lawyer and appears for himself or herself) and who are filing inaccurate and possibly fraudulent submissions that violate the Trademark Act (Act) and/or the USPTO's rules." *Id.* at 31498; *see also id.* at 31507. By requiring U.S. counsel to

---

[1] Congress also had concerns about the integrity of the trademark register around the same time. H.R. Rep. No. 116-645, at 9-11(2020) (discussing the significant increase in fraudulent—or at least inaccurate—foreign trademark filings). Both Congress and the USPTO engaged in a multiprong approach to address register integrity concerns, of which the U.S. counsel requirement rule was one effort. *See* Trademark Modernization Act of 2020, Pub. L. No. 116-260, div. Q, tit. II, subtit. B, § 228, 134 Stat. 1182, 2209–10 (2020).

represent foreign-domiciled filers, the USPTO anticipated a reduction in improper trademark submissions because for U.S. lawyers the impact of the USPTO's disciplinary procedures could extend to the U.S. state bar(s) where the lawyer is authorized to practice law. 84 Fed. Reg. 4394; 84 Fed. Reg. 31499.

Many countries require local counsel for trademark filings. 84 Fed. Reg. 4396 (listing countries); 84 Fed. Reg. 31500. "The majority of countries with a similar requirement condition the requirement on domicile." 84 Fed. Reg. 4396; 84 Fed. Reg. 31500. Thus, in promulgating the U.S. Counsel Rule, the USPTO was also conforming with a common international practice.

As relevant here, the proposed rules in the NPRM referenced "domicile" several times, including a proposed definition of domicile in Rule 2.2(o)—"[t]he term domicile as used in this part means the permanent legal place of residence of a natural person[,]" *id.* at 4402 and in Rule 2.22(a)(21)'s requirement for counsel— "[a]n applicant whose domicile or principal place of business is not located within the United States or its territories must designate an attorney as the applicant's representative . . . ." *Id.* at 4403. In addition to defining "domicile" the NPRM defined "principal place of business" as "the location of a juristic entity's headquarters where the entity's senior executives or officers ordinarily direct and control the entity's activities and is usually the center from where other locations are controlled." *Id.* at 4402. The NPRM also included a rule authorizing the USPTO to "require an applicant, registrant, or party to a proceeding to furnish such information

or declarations as may be reasonably necessary to the proper determination of whether the applicant, registrant, or party is subject to the requirement" for representation by U.S. counsel. *Id.* The explanation for the rules also included the following discussion:

> To ensure clarity regarding who is subject to the requirement, § 2.2 would be amended to define "domicile" and "principal place of business." The proposed requirement is similar to the requirement that currently exists in many other countries, such as Brazil, Chile, the People's Republic of China, Israel, Japan, Jordan, Republic of Korea, Morocco, and South Africa, as well as the European Union's Intellectual Property Office. The majority of countries with a similar requirement *condition the requirement on domicile. The USPTO intends to follow this practice.* Moreover, requiring a qualified attorney to represent applicants, registrants, and parties whose domicile or principal place of business is not located within the U.S. or its territories is an effective tool for combatting the growing problem of foreign individuals, entities, and applicants failing to comply with U.S. law.

*Id.* at 4396 (emphasis added). Thus, it was abundantly clear that the USPTO intended to collect domicile address information to determine to which applicants the requirement for counsel applied.

In July 2019, the USPTO published the final U.S. Counsel Rule. 84 Fed. Reg. 31498. The Final Rule identified comments it received "regarding efforts by foreign applicants and registrants to circumvent the proposed requirement by using temporary or fraudulent U.S. addresses. . . ." *Id.* at 31505. In response, the USPTO noted the requirement for applicants and registrants to provide and keep current the address of their domicile, the requirement that all statements in trademark

7

documents be truthfully made, and the provision that those who provide false information regarding their domicile address will be subject to sanctions. *Id.*

The Final Rule also explained that the USPTO was making certain clarifying changes to the rules as proposed, for example:

- To ensure clarity regarding who is subject to the requirements of § 2.11 [the U.S. Counsel requirement], § 2.2 is amended to define "domicile" and "principal place of business."

- For consistency with [the U.S. counsel] requirement, the USPTO has clarified that the address required in §§ 2.22(a)(1) and 2.32(a)(2) is the domicile address. Further, to authorize the USPTO to require an applicant or registrant to provide and maintain a current domicile address, the USPTO codifies a new regulatory section at 37 C.F.R. § 2.189.

84 Fed. Reg. 31500. In the Final Rule, 37 C.F.R. § 2.189 provided: "An applicant or registrant must provide and keep current the address of its domicile, as defined in § 2.2(o)." *Id.* at 31511. Rule 2.189 conforms with the statutory requirement that each application "include specification of the applicant's domicile…." 15 U.S.C. § 1051(a)(2).

The Final Rule streamlined the definition of the term "domicile" in Rule 2.2(o) to include "principal place of business": "(o) … the permanent legal place of residence of a natural person or the principal place of business of a juristic entity." *Id.* at 31510. Rule 2.2(p) was unchanged, defining the term "principal place of business" as meaning "the location of a juristic entity's headquarters where the

entity's senior executives or officers ordinarily direct and control the entity's activities and is usually the center from where other locations are controlled." *Id.*

Based on the Final Rule, a complete trademark application must include an applicant's domicile address. 37 C.F.R. § 2.32(a)(2). An applicant "whose domicile is not located within the United States or its territories must be represented by an attorney, as defined in § 11.1 of this chapter, who is qualified to practice under § 11.14 of this chapter." 37 C.F.R. § 2.11(a); *see also* 37 C.F.R. §§ 2.22(a)(20); 2.32(a)(2). Trademark Rule 2.189 sets forth the general requirement that "[a]n applicant or registrant must provide and keep current the address of its domicile, as defined in § 2.2(o)." 37 C.F.R. § 2.189. The Trademark Manual of Examining Procedure ("TMEP"), which incorporates the examination guide issued concerning the Final Rule, explains that "[a]n applicant generally must provide its domicile street address…. In most cases, a post-office box, a 'care of' (c/o) address, the address of a mail forwarding service, or other similar variation cannot be a domicile address." Trademark Manual of Examining Procedure ("TMEP") § 803.05(a) (July 2022). An applicant may be required to furnish additional information or declarations to the USPTO to determine whether the applicant is subject to the requirement. 37 C.F.R. § 2.11(b).

Although not explicitly addressed in the U.S. Counsel Rule, the USPTO has procedures in place to address privacy concerns in providing a domicile address. Applicants, registrants, and parties in trademark matters before the USPTO have the

option of hiding from public view their domicile address. The Trademark
Application and Registration Records System of Records Notice,
COMMERCE/USPTO-26 (Feb. 20, 2020), specifies that the USPTO will not make
domicile address information publicly available if it is entered in the appropriate
form field or requested to be hidden from public view.[2] USPTO application, post-
registration, and change of address forms, including the versions in effect when
Chestek filed its application in May 2020, provide two address fields—one field for
entering the address where the owner receives mail, which can be a post-office box
or "care-of" address that will be displayed in the USPTO's public records, and a
second field for entering the "domicile address(es)" for the owner(s), the contents of
which will not be displayed in the USPTO's public records. TMEP § 803.05(a); *see
also* Appx37. If these forms are used to provide a separate domicile address, it will
not be publicly viewable and also will not be retrievable in bulk-data downloads.
TMEP § 803.05(a); Appx37. An applicant may also request a waiver of the

---

[2] The Notice states the following: "1. Public Disclosure - Records in this
system of records are available for public inspection, except as of December 21, 2019,
the USPTO will not make publicly available the address provided in the 'Domicile
Address' field on trademark forms. The USPTO will continue to make postal
addresses provided for mark owners on trademark forms available for public
inspection. Postal and domicile addresses can be different, but when a mark owner
elects to provide the same address for both the postal and domicile address, that
address will still be available for public inspection. Individuals may also request
domicile addresses provided before December 21, 2019, or otherwise present in this
system of records, not be made available for public inspection." *Available at*
https://www.osec.doc.gov/opog/privacyact/SORNs/pat-tm-26.html.

application of the domicile address requirement to a particular application by filing a petition with the Director. 37 C.F.R. §§ 2.146(a)(5) & 2.148.

## II.   Factual and procedural background

### A.   Procedural background

On May 29, 2020, Chestek filed trademark application Serial No. 88/938,938 for the mark CHESTEK LEGAL for "legal services" in International Class 45, based on use in commerce under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a). Appx57-61. As a juristic entity, Chestek was required to provide the location of its principal place of business as the domicile address. 37 C.F.R. §§ 2.2(o)-(p), 2.11(a), and 2.189. In the application, signed by Applicant's owner, Pamela S. Chestek, Chestek provided a post office box number in Raleigh, North Carolina as its domicile address. Appx57-61. Chestek did not appoint an attorney when it filed its application. Appx57-58. Nor did it later appoint an attorney. Appx67, Appx95 (showing attorney as "none" throughout the application process).

The examining attorney refused registration on the basis that Chestek had not provided a domicile address consistent with the requirements set forth in 37 C.F.R. §§2.2(o)-(p), 2.11(a), and 2.189. Appx75-76. He explained that "[a]ll applications must include the applicant's domicile address, and domicile dictates whether an applicant is required to have an attorney who is an active member in good standing of the bar of the highest court of a U.S. state or territory represent the applicant at the USPTO." Appx75. He further explained that "[i]n most cases, a post office box is not

acceptable. An address that is not a street address is not acceptable as a domicile address because it does not identify the location of applicant's headquarters where the entity's senior executives or officers ordinarily direct and control the entity's activities." Appx75-77. The examining attorney therefore required Chestek to provide its domicile street address or "demonstrate that the listed address is, in fact, the applicant's domicile." *Id.*

In response, Chestek declined to provide a street address or demonstrate that the listed address was its domicile. Chestek did not seek a waiver of the rule from the Director. Instead Chestek maintained during prosecution that the applicable rules requiring the domicile address and the accompanying guidance were unlawfully promulgated and should not be enforced. Appx81-92. After the examining attorney made the refusal final, Appx97-100, Chestek appealed to the Board.[3] Appx102.

## B.    The Board's decision

The Board concluded that Chestek failed to comply with the requirement to provide a domicile address identifying the location of its "principal place of business." Appx5. The Board recognized that Chestek's appeal rested solely on the contention

---

[3] During the pendency of the appeal Chestek also filed a petition to the Director. Appx190-243. Chestek acknowledged the availability of a process to seek a waiver of the physical domicile address requirement, but expressly disavowed any "extraordinary situation" that warranted an exception to the rule. Appx199. Rather, it requested that the "Director decline to enforce the cited rule and reverse the refusal." *Id.* The petition was dismissed for procedural deficiencies—an applicant can appeal to the Board or petition the Director, not both—and because the relief sought was not petitionable subject matter under 37 C.F.R. § 2.146. Appx247-248.

that the Board should reject enforcement of the applicable rules. Appx5. The Board found unsupported Chestek's proposition that an administrative tribunal that is part of the same agency could consider an APA challenge to rules promulgated by that agency. Appx5.

It nonetheless considered the arguments made by Chestek about the unenforceability of the rules based on allegedly improper rulemaking procedures, and found them unavailing. Appx6-9. The Board's decision incorporated by reference a petition for rulemaking concerning the domicile address requirement filed by a third party (who was represented by Appellant's owner, Pamela Chestek), The Software Freedom Conservancy, and the USPTO's decision denying that petition, both of which were cited by Chestek and the examining attorney in the appeal. Appx6, Appx104-143, Appx161-174, Appx176-188. The Board explained that the petition decision addressed the USPTO's compliance with the APA and to the extent there was overlap between Chestek's arguments on appeal and those made by the Software Freedom Conservancy, the rulemaking petition decision represented the views of the agency. Appx6. The Board determined that Chestek's arguments did not provide a basis to not comply with the domicile address requirement. Appx7.

Because the Board found no basis on which to invalidate the relevant rules with which Chestek failed to comply, the Board affirmed the refusal to register. Appx9.

## SUMMARY OF THE ARGUMENT

In applying to register a trademark, Chestek declined to comply with a statutory and regulatory requirement for a complete application when it did not provide its domicile address. Chestek did not argue before the agency, and does not argue here, that it is somehow exempt from the requirement to provide a domicile address as part of its application. Rather, Chestek's sole challenge to the Board's decision rests on perceived deficiencies in the notice-and-comment rulemaking procedures that are not applicable to a rule of agency procedure such as the U.S. Counsel Rule. Because the relevant rules are exempt under the APA from the notice-and-comment rulemaking procedures, Chestek's arguments regarding those procedural complaints are misplaced.

Even if the USPTO had been required to engage in notice-and comment rulemaking, it complied with those requirements in promulgating the rules. Although the Final Rule differed in minor ways from the NPRM, the overall stated focus and purpose of the rules, as well as the relevant definitions, remained unchanged. The NPRM set out a stated purpose of adopting a requirement for foreign-domiciled trademark applicants to be represented by U.S. counsel to curb abusive and otherwise improper trademark filings and practice before the agency. The NPRM made clear that the domicile of a trademark applicant would form the basis for determining if the applicant was subject to the U.S. counsel requirement, which necessarily meant that the USPTO would collect domicile information from applicants. It also made clear

the USPTO's authority to collect information necessary to determine an applicant's domicile for the purpose of assessing whether the applicant was subject to the U.S. counsel requirements. And the proposed rule provided only a single definition for "domicile" and "principal place of business," clearly evincing the USPTO's intent not to differentiate between U.S.- and foreign-domiciled applicants in the address information it collected.

The NPRM provided ample notice to the public that the USPTO intended to collect domicile information, including principal place of business addresses for juristic entities. The changes to the final rule text were for clarification and consistency but did not substantively change the requirements proposed in the NPRM. Had Chestek wanted to offer comments on the purported privacy concerns it now raises, it was on notice and free to do so during the rulemaking process. Its failure to do so does not mean that the agency improperly promulgated the rules. Rather, the Final Rule was closely connected to the requirements announced in the NPRM and thus easily clears the "logical outgrowth" requirement. Moreover, because the Final Rule was consistent with the stated purpose of the NPRM, it was not arbitrary and capricious.

Because Chestek failed to comply with the domicile address requirement, the Board's decision affirming the refusal to register its trademark should be affirmed.

## STANDARD OF REVIEW

This Court reviews the Board's conclusions of law de novo and findings of fact

for substantial evidence. *See, e.g., In re Thrifty, Inc.*, 274 F.3d 1349, 1351 (Fed. Cir.

2001).

The Court reviews the procedural process by which rules are promulgated

under the arbitrary-and-capricious standard. *Mid Continent Nail Corp. v. United States*,

846 F.3d 1364, 1372 (Fed. Cir. 2017). Such review is "highly deferential" to the

agency. *Id.*

## ARGUMENT

**I.    The Board properly concluded that Chestek failed to comply with the domicile address requirement and that registration must be refused as a result.**

Chestek's failure to comply with the requirement to provide its domicile

address made the application incomplete and properly resulted in refusal of

registration. *See, e.g.*, 37 C.F.R. § 2.63(b); *In re Omega SA*, 494 F.3d 1362 (Fed. Cir.

2007) (affirming refusal based on requirement to identify goods with particularity); *In

re SICPA Holding SA*, 2021 USPQ2d 613, at *6 (TTAB 2021) ("Noncompliance with

an information requirement is an independent ground for refusing registration,

separate and apart from any substantive grounds for refusal."). Chestek does not

dispute that it failed to comply with agency rules in filing its trademark application. Br.

at 16. Chestek also failed to avail itself of an available option to seek a waiver or

suspension of the relevant rules. For example, were Chestek's stated concerns about

privacy the reason it did not want to provide a domicile address to the USPTO,[4] it could have filed a petition explaining the "extraordinary situation" that justified it being excused from the domicile address requirement. But instead, Chestek expressly disavowed the applicability of any extraordinary situation in this case. Appx199.

Both before the Board and in this appeal, the only basis Chestek advances to excuse its failure to comply with the domicile address requirement is that it believes the rules to be "invalid." Br. at 17, 26. For the reasons discussed below and in the decision on the petition for rulemaking (Appx10-19) that the Board incorporated by reference in its decision (Appx6), Chestek's challenges to the procedures by which the domicile address requirement was promulgated lack merit and do not excuse Chestek's failure to comply with the requirement.

Even assuming that Chestek's arguments have merit, its proposed solution—a rule that would permit applicants that have designated counsel to provide an alternative form of domicile information, Br. at 33-34—would not have the effect of a different outcome for its application here. Chestek never appointed counsel before the agency. Appx57-58, Appx67, Appx95.

---

[4] Although it is unlikely in most circumstances that an incorporated entity such as Chestek would have privacy concerns, it is possible that a small company run out of a person's home could articulate a privacy concern of its principal sufficient to demonstrate an "extraordinary situation." There is no allegation in this case that Chestek had a particular privacy concern. Rather, the brief relies on the privacy concerns of others. Br. at 13.

Because Chestek was required to provide its domicile address, indisputably failed to do so, and provided no valid basis to avoid the requirement, the Board properly affirmed the refusal to register.

## II.     The domicile address requirement was properly promulgated.

### A.     The USPTO was not required to undertake notice-and-comment rulemaking in promulgating the domicile address requirement.

5 U.S.C. § 553 sets forth the general principles for agency rulemaking. It contains certain exceptions, including for "rules of agency organization, procedure, or practice…." 5 U.S.C. § 553(b)(A).

The USPTO's governing statutes provide that the Director "may establish regulations, not inconsistent with law, which—(A) shall govern the conduct of proceedings in the Office; [and] (B) shall be made in accordance with [5 U.S.C. § 553]…." 35 U.S.C. § 2(b)(2); *see also* 15 U.S.C. § 1123 ("Director shall make rules and regulations, not inconsistent with law, for the conduct of proceedings in the Patent and Trademark Office under this [Act]."). Courts have determined that the USPTO is not "required to use notice-and-comment rulemaking" to issue an interpretive or procedural rule. *Actelion Pharm. v. Kappos*, 972 F. Supp. 2d 51, 58 n.9 (D.D.C. 2013) (citing 5 U.S.C. § 553(b)(A)), *aff'd*, 565 F. App'x 887 (Fed. Cir. 2014); see *Animal Legal Def. Fund v. Quigg*, 932 F.2d 920, 931 (Fed. Cir. 1991) (observing that not "every action taken by an agency pursuant to statutory authority [is] subject to public notice and comment," since such a requirement "would vitiate the statutory exceptions in section

553(b) itself"). Leaving the USPTO with a choice of when to establish procedural rules using the notice and comment process to obtain the views of its stakeholders does not mean that anytime the USPTO chooses to use the process, the rules are subject to the formal requirements of APA section 553 and can be challenged for failure to follow them. For example, this Court has held that the USPTO's "interpretation of 'original application' was . . . not subject to the formal notice-and-comment requirements of section 553." *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1336–37 (Fed. Cir. 2008). This was true even though the rule at issue did go through a notice-and-comment process. *Id.* at 1337.

The domicile address requirement is a rule of agency procedure, exempting it from notice-and-comment requirements under 5 U.S.C. § 553, because "it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." *JEM Broad. Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994) (quotation marks omitted). As the NPRM and Final Rule explained, "[t]he changes in this rulemaking involve[d] rules of agency practice and procedure, and/or interpretive rules." 84 Fed. Reg. 4399; 84 Fed. Reg. 31506.

The domicile address requirement does not alter the rights or interests of parties. Rather, it is a procedural tool to identify when U.S. counsel is required for an application or other trademark filing, and it interprets the statutory requirement of "specification of [an] applicant's domicile," 15 U.S.C. § 1051(a)(2), and facilitates its

19

administration. It requires a trademark filer to provide only basic address information, which can be shielded from public view. In that way it is akin to the rules considered procedural in *Novacare, Inc. v. Thompson*, 357 F. Supp. 2d 268, 273 (D.D.C. 2005). In *Novcare*, the D.C. Circuit held agency docket administration rules to be procedural because they did not "alter the substantive standards" by which Medicare claims were considered. *Id.* Likewise, here, the U.S. Counsel Rule, including the domicile address requirement, do not alter the substantive standard by which trademark application or other trademark filings are assessed.

Because Chestek's challenges to the domicile address requirement all relate to procedures for notice-and-comment rulemaking that are inapplicable here, they fail on that basis. 5 U.S.C. §553(b)(A) (exempting from notice-and-comment rulemaking "rules of agency organization, procedure, or practice"). They also fail on the merits for the reasons discussed below.

### B. The procedures the USPTO followed in promulgating the domicile address requirement were proper even under the notice-and-comment rulemaking standard.

Even if the rules were subject to notice-and-comment rulemaking, the procedures followed by the USPTO were proper. Chestek argues that the final rules

were not a logical outgrowth of the proposed rules, and that the adoption of the final rules was arbitrary and capricious. Neither argument is correct.[5]

### 1.    The Final Rule was a logical outgrowth of the NPRM.

Chestek argues that the agency failed to provide adequate notice of the domicile address requirement in the NPRM such that the Final Rule was not a logical outgrowth of the proposed rules. Br. at 19-26.

"The dispositive question in assessing the adequacy of notice under the APA is whether an agency's final rule is a 'logical outgrowth' of an earlier request for comment." *Mid Continent Nail*, 846 F.3d at 1373. The legal standard for a violation of the APA for when a final rule fails to be a logical outgrowth of the NPRM is whether the notice adequately alerted the interested parties of the possibility of the changes that were eventually adopted. *See National Mining Ass'n v. Mine Safety and Health Administration,* 512 F.3d 696, 699 (D.C. Cir. 2008). Logical outgrowth issues arise when a final rule "finds no roots in the agency's proposal" or "where interested parties would have had to divine the agency's unspoken thoughts, because the final rule was surprisingly distant from the agency's proposal." *Mid Continent Nail Corp. v.*

---

[5] To the extent the Brief of Amicus Curiae David E. Boundy makes additional arguments about the rulemaking procedures, the Court should not consider them because Chestek did not raise them as issues in its opening brief. *See Amoco Oil Co. v. United States*, 234 F.3d 1374, 1377-78 (Fed. Cir. 2000) (explaining that issues raised by an amicus curiae that are not argued in an appellant's opening brief will not be considered); 16AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3975.1 (5th ed. 2022) ("In ordinary circumstances, an amicus will not be permitted to raise issues not argued by the parties.").

*United States*, 846 F.3d. at 1374 (cleaned up). But this does not mean that the final rule must match exactly the proposed one. *Veterans Justice Group, LLC v. Sec. of Veterans Affair*s, 818 F.3d 1336, 1344 (Fed. Cir. 2016); *see also Alto Dairy v. Veneman,* 336 F.3d 560, 569-70 (7th Cir. 2003) ("The purpose of a rulemaking proceeding is not merely to vote up or down the specific proposals advanced before the proceeding begins, but to refine, modify, and supplement the proposals in the light of evidence and arguments presented in the course of the proceeding. If every modification is to require a further hearing at which that modification is set forth in the notice, agencies will be loath to modify initial proposals, and the rulemaking process will be degraded.").

Here, the USPTO provided adequate notice of the domicile address requirement in the preamble to the NPRM. 84 Fed. Reg. 4396 (discussing "domicile" and "principal place of business"). The NPRM proposed definitions of "domicile" and "principal place of business" to be added to Rule 2.2 for clarity regarding who is subject to the U.S. counsel requirement. *Id.* at 4396. The definition of "domicile" was "the permanent legal place of residence of a natural person," and "principal place of business" was defined as "location of a juristic entity's headquarters where the entity's senior executives or officers ordinarily direct and control the entity's activities and is usually the center from where other locations are controlled." *Id.* at 4402. The NPRM set out the requirement for representation in proposed Rule 2.11(a) for those "whose domicile or principal place of business is not located within the United States," and

provided in subsection (b) of that rule that the "Office may require an applicant,

registrant, or party to a proceeding to furnish such information or declarations as may

be reasonably necessary to the proper determination of whether the applicant,

registrant, or party is subject to the requirement in paragraph (a)…." *Id.* The language

in the NPRM was clear that "permanent legal place of residence of a natural person"

and "principal place of business" of a juristic entity identify a physical location and

that the USPTO would be collecting those addresses for a trademark applicant,

registrant, or party to a proceeding. Moreover, the NPRM made clear that the USPTO

"intend[ed] to follow [the] practice" in other countries with domestic counsel

requirements by "condition[ing] the requirement on domicile." 84 Fed. Reg. 4396.

     In the final rule, the USPTO streamlined the definitions by adding "principal

place of business," which is properly considered the domicile of a juristic entity, to the

definition of "domicile," 84 Fed. Reg. at 31510, but it did not substantively change the

definition of "domicile" for a natural person or "principal place of business" for a

juristic entity. *Id.* This slight revision was made "[f]or consistency with" the

requirement for representation, the trigger for which is domicile. *Id.* at 31500. It also

allowed the USPTO to simplify and clarify the text of the final rules by using only

"domicile" and "domicile address" to identify the required address for all filers instead

of the more cumbersome "domicile or principal place of business." *See id.* at 31510-

31511 (setting forth final rules 2.11 ("[a]n applicant, registrant, or party to a

proceeding whose domicile is not located within the United States" must be

represented by counsel), 2.22(a)(1) ("[t]he applicant's name and domicile address" required for a TEAS Plus application), and 2.32 (a)(2) ("[t]he name and domicile address of each applicant" required for a complete application)).

Based on the language in the NPRM, it is clear that the public could reasonably have anticipated that all trademark filers—both foreign- and U.S.-domiciled—would have to provide their domicile address. Both the NPRM and the Final Rule were clear that the USPTO would be relying on the address identifying the location of the permanent legal place of residence of a natural person or the principal place of business of a juristic entity to determine whether a filer was subject to the U.S. Counsel requirement. *See* 84 Fed. Reg. 4396; 84 Fed. Reg. 31500. The only way the agency could rely on that information to identify which filers were foreign-domiciled would be *to collect that information*.

Comments received in response to the NPRM expressed concerns about circumvention of the rules, and the USPTO made some clarifying changes as a result. *See* 84 Fed. Reg. 31505. The NPRM and Final Rule differed slightly in the proposed text of Rule 2.32—"address" versus "domicile address"—a change that was consistent with streamlining the definition of "domicile" to include persons and juristic entities in the Final Rule. *See* 84 Fed. Reg. 4403; 84 Fed. Reg. 31511. Likewise, the addition of Rule 2.189 clarified that the domicile address information would be required to be maintained throughout the application process, for registrations, and in other trademark matters. *See* 84 Fed. Reg. 31500; *see also* 37 C.F.R. § 2.189 (requiring

an applicant or registrant to provide "the address of its domicile, as defined in §2.2(o)").

Those clarifying changes were not substantive changes that meant that the public was not adequately apprised of the domicile issue by the NPRM. Rather, it was obvious from the NPRM that to administer the requirement for foreign-domiciled filers to be represented by U.S. counsel, the USPTO would need and could require all filers to provide their domicile address. The changes to the final rule text merely clarified that fact.

To the extent that a commenter wanted to raise the type of privacy concerns Chestek now raises with respect to the USPTO's collection of domicile address information, they were on notice with the NPRM that the USPTO would be collecting that information. There's no argument here that commenters would have had to divine the agency's unspoken thoughts because the NPRM was clear that the USPTO intended to rely on the permanent legal place of residence and principal place of business addresses, which necessarily meant that it would need to collect them.

## 2.    The rulemaking was not arbitrary and capricious.

The proposed rule provided a reasoned explanation for requiring an applicant, registrant, or party to a trademark proceeding to provide its domicile address that satisfies the requirements of the APA. The USPTO explained that domicile address was required to identify those applicants, registrants, and parties who were not located in the U.S. and thus were required to retain a qualified attorney licensed to practice in

the U.S. 84 Fed. Reg. 4396. The primary purpose for requiring foreign-domiciled applicants to retain U.S. counsel was to combat the growing problem of foreign filers failing to comply with U.S. law. Moreover, this requirement is consistent with the practice of countries that also condition the requirement for representation of foreign filers on a filer's domicile. 84 Fed. Reg. 4396; 84 Fed. Reg. 31500.

As explained in the NPRM and the Final Rule, the requirement of a domicile address benefits the U.S. trademark system by distinguishing between U.S.- and foreign-domiciled filers. Without the U.S. Counsel Rule, which requires domicile address information, many foreign-domiciled filers were evading statutory and regulatory requirements in trademark registration matters. 84 Fed. Reg. 4394; 84 Fed. Reg. 31498-31499. Additionally, foreign parties were engaged in the unauthorized practice of law, improperly representing applicants, registrants, or parties before the Office and submitting documents to the USPTO that violated USPTO rules, resulting in potentially invalid trademark applications and registrations. The U.S. counsel requirement is logically related to addressing these concerns by requiring foreign-domiciled applicants, registrants, and parties appearing before the USPTO to obtain U.S. counsel who are familiar with U.S. laws and subject to disciplinary rules in the United States. And the only way that the USPTO could determine whether a party was subject to the U.S. counsel requirement was to collect reasonably reliable address information: the permanent legal place of residence of a natural person or the principal place of business of a juristic entity.

The additional theory under which Chestek argues that the rules were arbitrary and capricious overlaps with its logical outgrowth arguments to the extent that both turn on whether the USPTO provided sufficient notice in the NPRM. *See* Br. at 30-34. As discussed above, the notice requirement is not so rigid that a final rule must be identical to the proposed rule. An NPRM "'need not specify every precise proposal which [the agency] may ultimately adopt….'" *Mid Continent Nail*, 846 F.3d at 1373 (quoting *Nuvio Corp. v. FCC*, 473 F.3d 302, 310 (D.C. Cir. 2006)). Rather, it need only "fairly apprise interested parties of the issues involved." *Id.*

Here there's no question that the definition of domicile was an issue involved in the rulemaking. In the proposed rule, the USPTO specifically stated the proposed definition of domicile was the permanent legal place of residence of a natural person and the principal place of business of a juristic entity. 84 Fed. Reg. 4402. Moreover, the proposed rule stated that domicile would be used to determine whether an applicant or trademark filer was required to retain U.S. counsel. In light of the clear purpose of the U.S. counsel rule as stated in the NPRM, as well as the unequivocal position that the requirement for counsel would be predicated on the domicile of an applicant, that the USPTO slightly amended the approach to the definition of domicile and amended "address" to "domicile address" does not make the Final Rule arbitrary and capricious. Compare 84 Fed. Reg. 4403 with 84 Fed. Reg. 31511. Rather, the proposed rule provided the public with adequate notice that the USPTO was open

to comments of all sorts on the rule proposal, including countervailing arguments against the proposal.

Chestek argues that the USPTO failed to invite comment on, consider, or weigh any countervailing reasons why it would be inadvisable to require a physical address, and therefore the rulemaking was not properly promulgated. Br. at 30-31. The USPTO complied with the requirement of the APA in undertaking this rulemaking, and sought comment on the proposed regulations concerning collection of addresses consistent with normal rulemaking procedures. A proposed rule that provides either the terms or substance of the proposed rule or a description of the subjects and issues involved satisfies the procedural requirements of the APA. See 5 U.S.C. § 553(b)(3). The APA contains no requirement that a proposed rule specifically invite comment on countervailing reasons why it would be inadvisable to require a domicile street address in order for the rulemaking to be properly promulgated. *See Forester v. Consumer Prod. Safety Commn. of the United States,* 559 F.2d 774, 787 (D.C. Cir. 1977) ("[N]otice is sufficient if it affords interested parties a reasonable opportunity to participate in the rulemaking process.").

And the USPTO received and acted on comments directly relating to the "domicile" address and concerns about providing fake addresses to evade the U.S. counsel requirement. 84 Fed. Reg. 31505. Chestek points to no arguments related to the privacy concerns it now raises that the USPTO failed to consider in the rulemaking process. Rather it argues—without basis—that the USPTO should have

explicitly discussed privacy concerns in the Final Rule notwithstanding that it received no comments on those issues. Br. at 30. As discussed above, the USPTO separately addressed privacy concerns in both its guidance on the rule, which explained how applicants could request that their address information not be made publicly available, and in its trademark forms, which provide a separate field for entering a domicile address that automatically hides the information from public view. *See supra*, pp. 9-10. Rather than demonstrate some deficiency in the process, the fact that the USPTO acted on concerns about privacy shows both that the process affords flexibility to address such concerns, and that the USPTO is responsive when issues come to light.

# CONCLUSION

Because Chestek failed to comply with a requirement for registration, the Court should affirm the Board's decision affirming the refusal to register the mark. Chestek's arguments regarding the rulemaking procedure are without merit and thus are not a basis on which to reverse or vacate the Board's decision.

Respectfully submitted,

January 31, 2023

/s/ Mary Beth Walker

THOMAS W. KRAUSE
Solicitor

FARHEENA Y. RASHEED
Deputy Solicitor

CHRISTINA J. HIEBER
Senior Counsel for Trademark Policy and
Litigation

MARY BETH WALKER
Associate Solicitor

Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
*Attorneys for the Director of the*
*United States Patent and Trademark Office*