No. 22-1843

IN THE UNITED STATES COURT OF APPEALS
FEDERAL CIRCUIT

In re: Chestek PLLC,
*Appellant.*

On Appeal from the United States Patent and Trademark Office,
Trademark Trial and Appeal Board
Serial No. 88938938

## Reply Brief of Appellant Chestek PLLC

ANDREW M. GROSSMAN
KRISTIN A. SHAPIRO
RENEE M. KNUDSEN
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., NW,
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

*Counsel for Appellant Chestek PLLC*

# **Table of Contents**

Introduction ......................................................................................1

Argument ..........................................................................................3

    I.     The PTO Failed To Provide the Required Notice.............................3

          A.     The Domicile Address Requirement Is Not a
                  Logical Outgrowth of the Proposed Rule ...................................3

          B.     The PTO Was Required To Comply with the
                  APA's Notice-and-Comment Procedures..................................7

    II.    The Domicile Address Requirement is
           Arbitrary and Capricious ...............................................................14

Conclusion .....................................................................................18

# Table of Authorities

## Cases

*Actelion Pharm. v. Kappos*,
　972 F. Supp. 2d 51 (D.D.C. 2013)..............................................................14

*AFL-CIO v. NLRB*,
　57 F.4th 1023 (D.C. Cir. 2023)............................................................8, 10

*Am. Hosp. Ass'n v. Bowen*,
　34 F.2d 1037 (D.C. Cir. 1987)....................................................................8

*Animal Legal Def. Fund v. Quigg*,
　932 F.2d 920 (Fed. Cir. 1991)...................................................................14

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
　501 U.S. 104 (1991). ...................................................................................12

*CSX Transp., Inc. v. Surface Transp. Bd.*,
　584 F.3d 1076 (D.C. Cir. 2009)..................................................................6

*D.C. v. U.S. Dep't of Agric.*,
　444 F. Supp. 3d 1 (D.D.C. 2020)..............................................................12

*Disabled Am. Veterans v. Gober*,
　234 F.3d 682 (Fed. Cir. 2000)...................................................................15

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
　653 F.3d 1 (D.C. Cir. 2011)........................................................................10

*Encino Motorcars, LLC v. Navarro*,
　579 U.S. 211 (2016) ......................................................................................16

*Gallegos v. Lyng*,
　891 F.2d 788 (10th Cir. 1989)...................................................................12

*GHS Health Maint. Org., Inc. v. United States*,
　536 F.3d 1293 (Fed. Cir. 2008)...........................................................16, 18

*Inova Alexandria Hosp. v. Shalala*,
　244 F.3d 342 (4th Cir. 2001)......................................................................8

*Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*,
　407 F.3d 1250 (D.C. Cir. 2005)...................................................................4

*James V. Hurson Assocs., Inc. v. Glickman*,
229 F.3d 277 (D.C. Cir. 2000) ...............................................8, 15

*Klaips v. Bergland*,
715 F.2d 477 (10th Cir. 1983) .....................................................12

*Kooritzky v. Reich*,
17 F.3d 1509 (D.C. Cir. 1994) .......................................................4

*Levesque v. Block*,
723 F.2d 175 (1st Cir. 1983) ........................................................12

*Mid Continent Nail Corp. v. United States*,
846 F.3d 1364 (Fed. Cir. 2017) .................................................3, 5

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.*,
463 U.S. 29 (1983) .......................................................................17

*Nat'l Ass'n of Home Health Agencies v. Schweiker*,
690 F.2d 932 (D.C. Cir. 1982) ....................................................10

*Nat'l Whistleblower Ctr. v. Nuclear Regul. Com'n*,
208 F.3d 256 (D.C. Cir. 2000) ....................................................15

*Novacare, Inc. v. Thompson*,
357 F. Supp. 2d 268 (D.D.C. 2005) ............................................10

*Pierce Cnty. v. Guillen*,
537 U.S. 129 (2003) .....................................................................13

*Saunders v. Sec'y of Dep't of Health & Human Servs.*,
25 F.3d 1031 (Fed. Cir. 1994) .....................................................12

*Sebelius v. Auburn Reg'l Med. Ctr.*,
568 U.S. 145 (2013) .....................................................................15

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947) .....................................................................17

*Stone v. INS*,
514 U.S. 386 (1995) .....................................................................13

*Tafas v. Dudas*,
541 F. Supp. 2d 805 (E.D. Va. 2008) ..........................................14

*Tafas v. Kappos*,
586 F.3d 1369 (Fed. Cir. 2009) ...................................................14

*Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers v. Fed. R.R. Admin.*, 988 F.3d 1170 (9th Cir. 2021) ................................................... 6

*Veterans Just. Grp., LLC v. Sec'y of Veterans Affs.*, 818 F.3d 1336 (Fed. Cir. 2016) ................................................... 17

## Statutes and Regulations

2 U.S.C. § 1383 ................................................................................. 12

5 U.S.C. § 551 .................................................................................. 15

5 U.S.C. § 553 ................................................... 8, 10, 11, 12, 13, 14

5 U.S.C. § 706 .................................................................................. 15

7 U.S.C. § 2013 ................................................................. 11, 14, 15

9 U.S.C. § 306 .................................................................................. 12

12 U.S.C. § 1735f-17 ........................................................................ 12

21 U.S.C. § 358 ................................................................................ 12

35 U.S.C. § 2 ....................................................................... 11, 13

35 U.S.C. § 3 .................................................................................... 13

35 U.S.C. § 6 (1994) ........................................................................ 13

39 U.S.C. § 504 ............................................................................... 12

42 U.S.C. § 421 ............................................................................... 12

42 U.S.C. § 1437 ............................................................................. 12

*Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants*, 84 Fed. Reg. 4393 (Feb. 15, 2019) ................................. 3, 6, 7, 11

## Other Authorities

TMEP § 803.05 ................................................................................. 5

## **Introduction**

The Patent and Trademark Office promulgated a rule that requires trademark applicants to disclose their domicile address—for individuals and proprietors of home businesses, the place where they sleep at night—to the agency, which was then bound by its existing regulations to publicly disclose that information. The agency now defends that approach on the basis that it received no public comments spelling out the obvious invasion of personal privacy, risk to threatened applicants like domestic-violence victims and celebrities, and impact on applicants and potential applicants, who might understandably be deterred from seeking a trademark at all. But the agency received no comments criticizing this new disclosure requirement only because it was sprung on the public in the final rule, after the proposed rule disclaimed any intention to impose new reporting requirements on applicants. The final rule sparked a public backlash, and the agency has spent the past several years scrambling to repair the damage.

As the PTO tells the story, this was all according to plan and the letter of the law. The proposed rule, it insists, provided notice that a blanket requirement that every trademark applicant disclose her domicile address was on the table because it defined the term "domicile" (without requiring applicants to disclose their domicile addresses) and provided that the agency might request information from applicants it suspected were lying about their location to evade the requirement they obtain domestic counsel. The notion that these things tipped off the public about the PTO's plans is a complete *non sequitur*.

1

And even the PTO seems to recognize that. While it goes through the motions on notice, the agency places primary emphasis on an aggressive argument that it, alone among agencies, is completely exempt from the Administrative Procedure Act's notice-and-comment requirements and so was not required to give interested parties any notice of its rulemaking activities. That is wrong, both in this instance, because the rule at issue is not a "rule of agency…procedure" exempt from notice and comment, and in general, because the PTO is bound by statute to undertake notice-and-comment rulemaking.

So unconfident is the agency in its rulemaking that it also claims to be exempt from arbitrary-and-capricious review. To be fair, defending the domicile address requirement is a difficult task. The PTO is unable to identify a single word in the final rule explaining why it adopted the requirement, concedes that it gave no consideration to the impact on applicants or to obvious alternatives, and still cannot justify the requirement's sweeping scope. Any one of these failures would, in the ordinary case, compel the conclusion that the agency's action was arbitrary and capricious. So too here: even if the domicile address requirement was exempt from notice and comment, controlling precedent holds that it is still subject to arbitrary-and-capricious review, which it flunks.

This case is a textbook example of an agency's attempted procedural shortcut leading to unreasoned rulemaking and public harm. The Court should set aside the domicile address requirement and vacate the PTO's rejection of Appellant Chestek PLLC's trademark application for non-compliance with that requirement.

## Argument

## I.    The PTO Failed To Provide the Required Notice

The domicile address requirement is not a logical outgrowth of the proposed rule because nothing in the PTO's proposal even hinted that the agency would impose such a sweeping and potentially burdensome and injurious requirement on all trademark applicants. The PTO's arguments to the contrary focus on other aspects of its rulemaking that are not in contention, reflecting that it has nothing to say about the requirement at issue here. And its claim that all of its rulemaking activities are exempt from notice-and-comment requirements, such that its rules are immunized against procedural claims, conflicts with both the Administrative Procedure Act and the Patent Act.

### A.    The Domicile Address Requirement Is Not a Logical Outgrowth of the Proposed Rule

The PTO fails to demonstrate that its proposed rule provided any notice the agency was considering the domicile address requirement that it adopted in the final rule. To begin with, the agency outright ignores the proposed rule's express disclaimers that the rulemaking would "impose[] no new reporting or recordkeeping requirements" and "would not impact individuals or large or small entities with a domicile or principal place of business within the U.S." 84 Fed. Reg. 4393, 4400/2, 4401/2 (Feb. 15, 2019). For an interested party to divine that the PTO actually was contemplating a new reporting requirement that would impact every single filer would require more than merely guessing "the agency's unspoken thoughts," *Mid Continent Nail Corp. v. United States*, 846 F.3d

3

1364, 1374 (Fed. Cir. 2017); it would require assuming that the agency intended to reverse course and impact an entire class of persons that the agency had assured had no reason to take interest in this rulemaking. The proposed rule's disclaimers are precisely the kind of representations that courts have understood to inform the public that different approaches are off the table and not open for consideration. *See Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1260 (D.C. Cir. 2005); *Kooritzky v. Reich*, 17 F.3d 1509, 1513 (D.C. Cir. 1994).

The PTO identifies nothing in the proposed rule that could have tipped off interested parties that the agency actually was considering (despite its disavowals) requiring all filers to disclose their domicile address as a condition of obtaining a trademark. Rather than address that requirement—the thing that's at issue here—its argumentation focuses instead on the fact that the proposed rule included a definition for "domicile." PTO Br. 22–23. But the material difference between the proposed rule and final rule is not the definition but that only the latter imposes a requirement that every filer must disclose her domicile address:

| **§ 2.32   Requirements for a complete trademark or service mark application.** | **§ 2.32   Requirements for a complete trademark or service mark application.** |
|---|---|
| (a) * * *<br><br>(4) The address of the applicant. When the applicant is, or must be, represented by a practitioner, as defined in § 11.1 of this chapter, who is qualified to practice under § 11.14 of this chapter, the practitioner's name, postal address, email address, and bar information;<br><br>*    *    *    *    * | (a) * * *<br><br>(2) The name and domicile address of each applicant;<br><br>*    *    *    *    *<br><br>(4) When the applicant is, or must be, represented by an attorney, as defined in § 11.1 of this chapter, who is qualified to practice under § 11.14 of this chapter, the attorney's name, postal address, email address, and bar information;<br><br>*    *    *    *    *<br><br>■ 7. Add § 2.189 to read as follows:<br><br>**§ 2.189   Requirement to provide domicile address.**<br><br>An applicant or registrant must provide and keep current the address of its domicile, as defined in § 2.2(o). |
| Proposed Rule[1] | Final Rule |

The agency describes *this* change, mention of which it relegates to a string-cite parenthetical, as part of a broader restyling to "to simplify and clarify the text of the final rules." PTO Br. 23; *see also id.* at 25 (insisting that these "changes were not substantive"). But imposing an entirely new requirement for applications, as well as an entirely new ongoing reporting obligation, is not a stylistic change or clarification. The PTO's refusal to take its own rule's provisions at face value and inability to show that their substantive content has some grounding in what the agency proposed confirms that they are "a logical outgrowth of nothing." *Mid Continent Nail Corp.*, 846 F.3d at 1374 (quotation marks omitted).

---

[1] The "address" referred to in the proposed rule is not a "domicile address" and may be a P.O. box or other "mailing address." Trademark Manual of Examining Procedure ("TMEP") § 803.05(a) (Oct. 2012).

Nor do the two other portions of the proposed rule cited by the PTO (at 23) provide any indication that the agency was considering a new requirement for trademark applications or ongoing reporting requirement. The proposed rule's preambular discussion of other countries' use of domestic counsel requirements states only that the agency intends to follow those other countries' lead in requiring foreign applicants to be represented by domestic counsel. 84 Fed. Reg. at 4396/2. Not a word in this three-sentence-long discussion refers to disclosure and reporting requirements.

Likewise, the proposed rule's provision that the agency "may," on a case-by-case basis, require an applicant to provide evidence showing that it is not subject to the domestic counsel requirement does not even hint that the agency was considering the entirely different approach of requiring every single filer to disclose her domicile address as a condition of obtaining a trademark. *Id.* at 4402/3 (proposed § 2.11(b)). To the contrary, that provision suggests that the agency was *not* considering that blanket approach. *See Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers v. Fed. R.R. Admin.*, 988 F.3d 1170, 1181 (9th Cir. 2021) (reasoning that an agency's proposal to approve operations on a "case-by-case basis" indicated to the public that it "was not contemplating" the blanket approach it ultimately adopted). This proposed provision gives "no indication that the agency was considering a different approach" from the case-by-case approach that it proposed, and the agency "nowhere even hinted that [it] might consider" the kind of blanket approach that it expressly disavowed. *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1081–82

(D.C. Cir. 2009). Instead, the proposed rule specifically disclaimed that it was imposing any kind of blanket reporting requirement, specifically one that would impact domestic filers. The PTO's "complete turnaround" in the final rule is not a logical outgrowth of its proposal. *Id.* at 1082.

Finally, the PTO insists (at 25) that "it was obvious" the agency "would need and could require all filers to provide their domicile address" to enforce the domestic counsel requirement. The proposed rule, however, contradicts that view through its embrace of a more tailored approach: relying on filers in the first instance to ascertain their domiciles and comply with the domestic counsel requirement, authorizing the agency to request domicile information in cases where compliance appears doubtful, and punishing filers found to have made false representations of domestic domicile. *See* 84 Fed. Reg. at 4396/2–3 (describing general approach); *id.* at 4402/3 (proposed regulatory language). If it was "obvious" that the PTO would have to collect the domicile address of every single filer—even ones already represented by domestic counsel—the proposed rule would have laid out and presumably sought to justify that approach. It did not. Instead, it proposed a tailored case-by-case approach that is the opposite of a blanket requirement.

### B. The PTO Was Required To Comply with the APA's Notice-and-Comment Procedures

The PTO's contention that it was not required to undertake notice-and-comment rulemaking, and only did so gratuitously, is wrong twice over. First, the domicile address requirement is a substantive rule imposing a new

requirement on trademark filers, not a rule of agency procedure exempt from notice and comment under the Administrative Procedure Act. Second, and independently, the Patent Act expressly requires the PTO to undertake notice-and-comment rulemaking when establishing regulations.

1.    The domicile address requirement is not a "rule[] of agency organization, procedure, or practice" exempt from notice and comment, 5 U.S.C. § 553(b), because it "substantively alter[s] the rights or interests of [trademark applicants]." *AFL-CIO v. NLRB*, 57 F.4th 1023, 1035 (D.C. Cir. 2023) (quotation marks omitted). The exception for procedural rules is a "limited carveout…intended for 'internal house-keeping measures organizing agency activities.'" *Id.* at 1034 (quoting *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045 (D.C. Cir. 1987)). "[T]he critical feature of a rule that satisfies the so-called procedural exception is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter *the manner* in which the parties present themselves or their viewpoints to the agency." *Id.* (quoting *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 280 (D.C. Cir. 2000)) (emphasis added).[2] The exception does not apply to a rule that "imposes [a] substantive burden," "trenches on substantial private rights [or] interests," or "otherwise alter[s] the rights or interests of parties." *Id.* at 1034–35 (quotation marks omitted). For example, the D.C. Circuit recently held that regulatory provisions governing the timing of agency actions were procedural rules and therefore exempt from notice

---

[2] *See also Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 349 (4th Cir. 2001) (reciting and applying same standard).

and comment. *Id.* at 1043–46. By contrast, it held that a provision requiring employers to disclose employee information was not a procedural rule because it was not "directed at the manner in which regulated parties present themselves or their viewpoints to the agency." *Id.* at 1036 (quotation marks and alteration omitted).

The domicile address requirement is not procedural because it does not regulate the *manner* in which a party proceeds before the agency. It does not, for example, prescribe a timing or formatting requirement, the means of submitting applications to the agency or making payment, the course of agency proceedings, or anything of the sort. Instead, it directly imposes a substantive burden on filers: that they disclose what may be sensitive personal information that had never been previously required as a condition of obtaining a trademark. No matter what procedure an applicant follows, if she does not disclose her domicile address to the agency, her application will be rejected and her substantive right to issuance of a trademark denied. That is the hallmark of a substantive rule. And the impact on applicants and their rights and interests is substantial, as demonstrated by the backlash to the final rule and the PTO's *ad hoc* efforts to mitigate some of its most damaging effects. *See* Chestek Br. 13–15.

The PTO's argumentation attempts to sidestep the substantive burden that the domicile address requirement imposes on filers. The agency contends that it is "a procedural tool to identify when U.S. counsel is required for an application or other trademark filing." PTO Br. 19. While the PTO's internal procedures for assessing and enforcing compliance with the domestic counsel requirement may

9

be procedural, that does not extend to the requirement that filers disclose their domicile addresses. The difference is that the latter places an additional burden to disclose potentially sensitive information on filers, while the former addresses how the agency proceeds with that information. Under the PTO's mistaken view that the two are the same, it could escape notice and comment for any disclosure requirement on the basis that the information is an input to agency procedures. The same would hold true for any agency collecting practically any type of information. It is precisely to avoid this kind of agency maneuvering that "[e]xceptions to the notice and comment provisions of section 553 are to be recognized only reluctantly." *Nat'l Ass'n of Home Health Agencies v. Schweiker*, 690 F.2d 932, 949 (D.C. Cir. 1982) (quotation marks omitted); *see also Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 6 (D.C. Cir. 2011) ("[T]he exception for procedural rules must be narrowly construed.") (quotation marks omitted).

The PTO's sole authority on this point only illustrates how far the domicile address requirement is from being a rule of agency procedure. *Novacare, Inc. v. Thompson*, 357 F. Supp. 2d 268, 272 (D.D.C. 2005), held that notice and comment was not required for a rule providing that an agency appeal board could dismiss appeals if the appealing party fails to timely file its briefing. That sort of timing rule falls within the heartland of agency procedure because it regulates only the manner of proceeding before an agency and imposes no substantive duty. *See AFL-CIO*, 57 F.4th at 1035. By contrast, the domicile address requirement does not regulate timing or any other procedural matter but imposes a new substantive duty on filers. It speaks volumes that the PTO relies on a timing-rule

10

case and cannot identify a single authority holding a disclosure obligation like this one to be a rule of agency procedure exempt from notice and comment under the APA.

**2.**        Separately, the PTO is bound by statute to undertake notice-and-comment rulemaking when establishing regulations. The PTO relied on 35 U.S.C. § 2(b)(2) as authority to promulgate the final rule. 84 Fed. Reg. at 4403/1. That provision authorizes the PTO to "establish regulations" that "govern the conduct of proceedings in the Office," provided that those "regulations…shall be made in accordance with section 553 of title 5," which generally prescribes notice-and-comment procedures for rulemaking. The PTO contends that, notwithstanding this statutory mandate that it make rules in accordance with the APA's notice-and-comment provision, it is completely exempt from notice and comment based on section 553's exception for "rules of agency…procedure." PTO Br. 18.

But this kind of cross-reference to section 553 is Congress's standard way of mandating notice-and-comment rulemaking and overriding section 553's carveouts. For example, the Food Stamp Act authorizes an agency to issue regulations "in accordance with the procedures set forth in section 553 of title 5." 7 U.S.C. § 2013(c). But section 553 contains an explicit exception for any "matter relating to…grants [and] benefits," which (if it applied) would render the cross-reference to section 553 a nullity. Consistent with the rule against nullifying statutory language, courts have consistently understood the cross-reference to section 553 to mandate notice-and-comment rulemaking, notwithstanding the

11

carveout for benefits programs. *See, e.g.*, *Gallegos v. Lyng*, 891 F.2d 788, 789 (10th Cir. 1989); *Levesque v. Block*, 723 F.2d 175, 179 (1st Cir. 1983); *Klaips v. Bergland*, 715 F.2d 477, 482 (10th Cir. 1983); *D.C. v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 7 (D.D.C. 2020).[3]

Here, section 2(b)(2) of the Patent Act authorizes the PTO to issue regulations governing the conduct of proceedings so long as it does so pursuant to the APA provision that mandates notice-and-comment rulemaking, with an exception for "rules of agency…procedure." As with the Food Stamp Act, accepting the PTO's view that the exception applies would nullify the requirement that the PTO regulate "in accordance with section 553 of title 5." And that would plainly violate the "settled rule of statutory interpretation that a statute is to be construed in a way which gives meaning and effect to all of its parts." *Saunders v. Sec'y of Dep't of Health & Human Servs.*, 25 F.3d 1031, 1035 (Fed. Cir. 1994); *see also Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991).

---

[3] Many other statutory provisions similarly require that regulations relating to agency procedure or benefits be promulgated pursuant to 5 U.S.C. § 553, and all would be nullified under the PTO's interpretative approach here. *See, e.g.*, 21 U.S.C. § 358(c) (designation of official names for drugs and devices); 2 U.S.C. § 1383(b) (procedural rules for Office of Compliance); 42 U.S.C. § 1437d(j)(2)(A)(i) ("procedures for designating troubled public housing agencies"); 9 U.S.C. § 306(b) ("rules of procedure of the Inter-American Commercial Arbitration Commission"); 12 U.S.C. § 1735f-17(a)(2) (procedures by which a person may ask agency to determine whether a mortgagee is in compliance with legal requirements); 39 U.S.C. § 504(g)(3)(A) ("a procedure for according appropriate confidentiality to information identified by the Postal Service"); 42 U.S.C. § 421(k)(1) (standards for "determining whether individuals are under disabilities" and therefore eligible for benefits).

Moreover, the PTO's interpretation is foreclosed by statutory history. Congress amended the Patent Act[4] in 1999 specifically to add the notice-and-comment requirement. *Compare* American Inventors Protection Act ("AIPA"), Pub. L. No. 106-113, App. I, 113 Stat. 1501A-552, 572–73 (1999) (codified at 35 U.S.C. § 2(b)(2)(B)) (providing that "regulations…govern[ing] the conduct of proceedings in the Office…shall be made in accordance with section 553 of title 5"), *with* 35 U.S.C. § 6(a) (1994) (authorizing Commissioner to "establish regulations…for the conduct of proceedings" without any reference to 5 U.S.C. § 553). "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995). The PTO's interpretation would deprive the amendment of any force and resurrect the pre-amendment version of the provision. It must be rejected on that basis. *See Pierce Cnty. v. Guillen*, 537 U.S. 129, 145 (2003) (rejecting interpretation supported by other canons of construction because it would render statutory amendment "an exercise in futility").

The PTO's interpretation must also be rejected because it would nullify a related statutory provision. Section 3(a)(2)(B) of Title 35 directs the PTO to consult with a public advisory committee when "changing or proposing to change…regulations which are subject to the requirement to provide notice and opportunity for public comment under section 553 of title 5." 35 U.S.C. § 3(a)(2)(B). This consultation requirement contemplates that regulations

---

[4] Although section 2(b)(2) is part of the Patent Act, it generally governs the PTO's authority, including with respect to trademarks. *See* 35 U.S.C. § 2(b).

13

promulgated pursuant to section 2(b)(2) will be subject to the APA's notice-and-comment requirements; otherwise, it too would be entirely superfluous.

Neither of the two authorities cited by the PTO (at 18) provides a basis for it to escape the plain language of section 2(b)(2). *Animal Legal Defense Fund v. Quigg*, 932 F.2d 920 (Fed. Cir. 1991), which addressed an interpretative rule, was decided before Congress added the explicit notice-and-comment rulemaking requirement in 1999 and therefore has nothing to say about the statutory language at issue here. Similarly, the footnote that PTO cites from *Actelion Pharmaceuticals v. Kappos*, 972 F. Supp. 2d 51 (D.D.C. 2013), does not address the import of section 2(b)(2)(B)'s requirement that PTO regulations "shall be made in accordance with section 553 of title 5." Indeed, the only court decision to address that language concluded that "the structure of Section 2(b)(2) makes it clear that the USPTO must engage in notice and comment rulemaking when promulgating rules it is otherwise empowered to make — namely, procedural rules." *Tafas v. Dudas*, 541 F. Supp. 2d 805, 812 (E.D. Va. 2008), *district court decision reinstated*, *Tafas v. Kappos*, 586 F.3d 1369 (Fed. Cir. 2009). That is the only possible reading of the statute because it is the only one that gives meaning and effect to every provision.

## II.    The Domicile Address Requirement is Arbitrary and Capricious

Whether or not the domicile address requirement was exempt from notice and comment, it is invalid because it is arbitrary and capricious. The final rule offers no reasoning in support of its decision to adopt the domicile address requirement and fails to consider the requirement's impact on trademark

applicants and potential applicants who may be discouraged from filing. The PTO now seeks to evade these defects by focusing on the rule's separate domestic counsel requirement and recapitulating its (mistaken) argument that its proposed rule provided adequate notice of its intentions.

As an initial matter, the PTO's position that procedural rules are exempt from arbitrary-and-capricious review is wrong. *See* PTO Br. 20. Arbitrary-and-capricious review applies to any "agency action," 5 U.S.C. § 706(2), which is defined to include "the whole or a part of an agency rule," *id.* § 551(13). Courts regularly undertake arbitrary-and-capricious review of agency procedural rules. *E.g., Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 157 (2013) (timing rule); *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 702 (Fed. Cir. 2000) (rule barring refiling of benefits claims); *Nat'l Whistleblower Ctr. v. Nuclear Regul. Com'n*, 208 F.3d 256, 263 (D.C. Cir. 2000) (procedure for obtaining extensions). For example, the D.C. Circuit in *James V. Hurson Associates* reversed a district court's denial of leave to amend a complaint to add an "arbitrary-and-capricious claim" challenging a rule that it held to be procedural. 229 F.3d at 284. Such a claim, it explained, may press, among other things, "that the agency failed to articulate an adequate explanation for its new policy" or "that it failed to consider factors made relevant by Congress." *Id.* And it recognized that the plaintiff in that case could prevail if, for example, it proved that the agency "fail[ed] to proffer an adequate explanation for its decision to eliminate face-to-face [meetings]," which was the procedural rule at issue, or failed to consider relevant factors. *Id.*

15

The plaintiff, it held, "had an absolute right to add an arbitrary-and-capricious claim" and obtain review. *Id.*

On the merits, the PTO is understandably unable to identify any portion of the final rule setting forth a rationale for the domicile address requirement *because there is none*. Puzzlingly, the agency begins (at 25) by focusing on the proposed rule, when its obligation was to "give adequate reasons for its decision[]" to adopt a requirement that emerged only in the final rule. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). The agency's argumentation proceeds (at 26) to address the reasons why it adopted the domestic counsel requirement, without even attempting to identify some stated rationale for the domicile address requirement. The agency then pivots back (at 27–29) to its "logical outgrowth" argument, which has no conceivable bearing on whether its action adopting the domicile address requirement was adequately reasoned. On the question of whether the agency adequately explained its decision to impose the domicile address requirement, the fact that the PTO's relevant briefing (at 25–29) does not quote a single word of the final rule tells the Court all it needs to know.

The agency now contends, however, that requiring every single applicant to disclose her domicile address is "the only way" for the agency to implement the domestic counsel requirement. PTO Br. 26. For one thing, that claim is conspicuously unsupported by any citation, *id.*, reflecting that no part of the final rule's discussion supports it. This is a *post hoc* rationale and therefore unavailing to the agency. *See, e.g.*, *GHS Health Maint. Org., Inc. v. United States*, 536 F.3d

16

1293, 1302 (Fed. Cir. 2008) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). For another, it is obviously wrong. As described above, the proposed rule set forth the more tailored approach of requesting domicile information on a case-by-case basis. And the PTO has never explained why it would need the domicile addresses of applicants who are already represented by U.S. counsel or admit to foreign domicile. There are any number of ways the PTO could have implemented the domestic counsel requirement without requiring every single applicant to disclose her domicile address, from the case-by-case approach to simply trusting applicants to follow the rules. The agency's obligation was to justify the approach that it chose, which it still has not done.

Nor does the agency point to any indication that it considered the domicile address requirement's impact on filers and potential filers. How a new filing requirement would impact the parties subject to it is indisputably "an important aspect of the problem" before the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Veterans Just. Grp., LLC v. Sec'y of Veterans Affs.*, 818 F.3d 1336, 1351 (Fed. Cir. 2016) (considering whether Department of Veterans Affairs "adequately considered and addressed the impact on the veteran population"). Indeed, the PTO does not dispute the point. Yet the agency concedes (at 28–29) that it did not "explicitly discuss[]" those impacts in its final rule. It did not even obliquely avert to them, and even now the PTO does not contend, because it cannot, that it gave them any consideration whatsoever in the rulemaking. Instead, it ignored the issue entirely, leading to a backlash from the trademark community and mad scramble by the

17

agency to respond. (That includes the subsequent "guidance" and changes to "trademark forms" that the PTO mentions. PTO Br. 29.) These are the consequences of unreasoned rulemaking.

Finally, the PTO does not offer even a *post hoc* justification for adopting a blanket rule that sweeps in both applicants already represented by U.S. counsel and those who admit their foreign domicile. *See* Chestek Br. 33–34. Apparently the PTO does not disagree that the requirement's sweeping scope "makes no sense." *GHS Health*, 536 F.3d at 1303.

## Conclusion

The Court should vacate the judgment below.

Dated: March 7, 2023                    Respectfully submitted,

/s/ Andrew M. Grossman
ANDREW M. GROSSMAN
KRISTIN A. SHAPIRO
RENEE M. KNUDSEN
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., NW,
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

*Counsel for Appellant Chestek PLLC*

## **Certificate of Compliance**

I certify that this brief complies with the type-volume limitation set by Fed. Cir. R. 32(b)(1) because it contains 4,497 words, excluding the parts of the brief exempted by Fed. Cir. R. 32(b)(2) and Fed. R. App. P. 32(f).

Dated: March 7, 2023

*/s/ Andrew M. Grossman*
Andrew M. Grossman

## <u>Certificate of Service</u>

I certify that on March 7, 2023, I caused the foregoing brief to be filed with the Court electronically using the CM/ECF system, which will send a notification to all counsel of record.

Dated: March 7, 2023

*/s/ Andrew M. Grossman*

Andrew M. Grossman