# United States Court of Appeals for the Federal Circuit

---

**IN RE: CHESTEK PLLC,**
*Appellant*

---

2022-1843

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 88938938.

---

Decided: February 13, 2024

---

ANDREW M. GROSSMAN, Baker & Hostetler LLP, Washington, DC, argued for appellant. Also represented by RENEE KNUDSEN, KRISTIN ANN SHAPIRO.

MARY BETH WALKER, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Katherine K. Vidal. Also represented by CHRISTINA J. HIEBER, FARHEENA YASMEEN RASHEED.

DAVID E. BOUNDY, Potomac Law Group PLLC, Newton, MA, as amicus curiae, pro se.

---

Before LOURIE, CHEN, and STOLL, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Chestek PLLC ("Chestek") appeals from a Trademark Trial and Appeal Board ("the Board") decision affirming the examiner's refusal to register the mark CHESTEK LEGAL for failure to comply with the domicile address requirement of 37 C.F.R. §§ 2.32(a)(2) and 2.189. *In Re Chestek PLLC*, No. 88938938, 2022 WL 1000226 (T.T.A.B. Mar. 30, 2022) ("*Decision*"). Chestek challenges the procedural process by which the rules containing the domicile address requirement were promulgated. For the following reasons, we affirm.

## BACKGROUND

In 2019, the United States Patent and Trademark Office ("the USPTO") engaged in notice-and-comment rulemaking to require trademark applicants, registrants, or parties to a trademark proceeding with domiciles outside the United States or its territories to be represented by United States licensed counsel ("the U.S. counsel requirement"). *See* Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants, 84 Fed. Reg. 4393 (Feb. 15, 2019) (to be codified at 37 C.F.R. pts. 2, 11) ("*Proposed Rule*"); Requirement of U.S. Licensed Attorney for Foreign Trademark Applicants and Registrants, 84 Fed. Reg. 31498 (July 2, 2019) (to be codified at 37 C.F.R. pts. 2, 7, 11) ("*Final Rule*"). The USPTO explained that the rule was enacted to combat "the growing problem of foreign individuals, entities, and applicants failing to comply with U.S. law." *Proposed Rule* at 4396; *Final Rule* at 31500. The USPTO further stated that the proposed changes were "rules of agency practice and procedure, and/or interpretive rules" exempt from the requirements of notice-and-comment rulemaking but that it had nevertheless "chosen to seek public comment before implementing the rule to benefit from the public's input." *Proposed Rule* at 4399.

As part of the final rule adopting the U.S. counsel requirement, the USPTO revised 37 C.F.R. § 2.32 to require

all applications to include "[t]he name and domicile address of each applicant" and added 37 C.F.R. § 2.189 to require "[a]n applicant or registrant [to] provide and keep current the address of its domicile" ("the domicile address requirement"). *Final Rule* at 31511. In the proposed rule, "domicile" was defined to mean "the permanent legal place of residence of a natural person," *Proposed Rule* at 4402, and in the final rule, that definition was expanded to include "the principal place of business of a juristic entity." *Final Rule* at 31510; 37 C.F.R. § 2.2(o). While the proposed rule did not expressly include the domicile address requirement, it provided that the USPTO may require an applicant to provide any information "reasonably necessary to the proper determination of whether the applicant . . . is subject to the [U.S. counsel] requirement[.]" *Proposed Rule* at 4402; *Final Rule* at 31510; 37 C.F.R. § 2.11(b). Previously, applicants were required to provide a mailing address, which could include a P.O. box, but the USPTO explained that, in adopting the U.S. counsel requirement, it was following the practice of other countries with similar domestic attorney requirements and conditioning it on domicile. *Proposed Rule* at 4396; *Final Rule* at 31500.

In May 2020, Chestek, a law firm that represents clients in trademark matters, applied for the mark CHESTEK LEGAL and provided only a P.O. box as its domicile address. *Decision* at *1. The examiner refused Chestek's application for failure to comply with 37 C.F.R. §§ 2.32(a)(2) and 2.189. *Id.* Chestek declined to change its address and argued that the rules enforced against it were improperly promulgated under the Administrative Procedure Act ("the APA"). *Id.* The examiner made the refusal final, and Chestek appealed to the Board, where Chestek conceded its failure to comply with the domicile address requirement but maintained its argument that the rules enforced against it were improperly promulgated. *Id.* at *2. To address Chestek's procedural challenge, the Board incorporated by reference the USPTO's denial of an earlier

petition for rulemaking submitted by Chestek on behalf of a third-party client that made similar arguments regarding the improper promulgation of the domicile address requirement. *Id.* at *3. The Board then affirmed the examiner's refusal based on Chestek's failure to comply with the domicile address requirement in 37 C.F.R. §§ 2.32(a)(2) and 2.189. *Id.* at *4. Chestek timely appealed. We have jurisdiction to consider Chestek's APA challenge to a USPTO rule adversely enforced against it. *See Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *see, e.g., Aqua Prod., Inc. v. Matal*, 872 F.3d 1290, 1300–01 (Fed. Cir. 2017). We have jurisdiction over appeals from the Board under 28 U.S.C. § 1295(a)(4)(B) and 15 U.S.C. § 1071(a).

## DISCUSSION

We review agency procedures for compliance with the APA *de novo* and must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] without observance of procedure required by law." 5 U.S.C. §§ 706(2)(A), (D); *EmeraChem Holdings, LLC v. Volkswagen Grp. of Am., Inc.*, 859 F.3d 1341, 1345 (Fed. Cir. 2017).

Chestek argues that the domicile address requirement was improperly promulgated for two independent reasons and that the Board's decision enforcing the domicile address requirement should therefore be vacated. Chestek first argues that the USPTO was required to comply with the requirements of notice-and-comment rulemaking under 5 U.S.C. § 553 but failed to do so because the proposed rule did not provide notice of the domicile address requirement adopted in the final rule. Second, Chestek argues that the domicile address requirement is arbitrary and capricious because the final rule failed to offer a satisfactory explanation for the domicile address requirement and

failed to consider important aspects of the problem it purports to address, such as privacy.

I

We first address whether or not the USPTO was required to promulgate the domicile address requirement through notice-and-comment rulemaking. Under 35 U.S.C. § 2(b)(2), the USPTO has authority to establish regulations to "govern the conduct of proceedings in the Office," which "shall be made in accordance with section 553 of title 5." Section 553, which generally prescribes notice-and-comment rulemaking, provides:

> (a) This section applies, according to the provisions thereof, except to the extent that there is involved—
>
> > (1) a military or foreign affairs function of the United States; or
> >
> > (2) a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.
>
> (b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—
>
> > (1) a statement of the time, place, and nature of public rule making proceedings;
> >
> > (2) reference to the legal authority under which the rule is proposed; [and]
> >
> > (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved; . . .
>
> Except when notice or hearing is required by statute, this subsection does not apply—

> (A) *to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice*; or
>
> (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

5 U.S.C. § 553 (emphasis added).

As provided above, § 553(b)(A) does not require the formalities of notice-and-comment for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." *Id.* In the context of distinguishing between a "substantive" rule that requires notice-and-comment rulemaking and an "interpretive" rule that does not, this court has described a "substantive" rule as one that "effects a change in existing law or policy which affects individual rights and obligations." *Animal Legal Def. Fund v. Quigg*, 932 F.2d 920, 927 (Fed. Cir. 1991) (cleaned up); *see also Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1336–37 (Fed. Cir. 2008) (holding that the USPTO's interpretation of "original application" was not subject to the formal notice-and-comment requirements of § 553 because it "merely clarifie[d]" existing law). This court has not, however, directly addressed when a rule is procedural and excepted from notice-and-comment rulemaking as a "rule[] of agency organization, procedure, or practice."

Chestek argues that the domicile address requirement is a substantive rule and that the USPTO was therefore required to undertake notice-and-comment rulemaking to adopt it. In the alternative, Chestek argues that the USPTO is required to undertake notice-and-comment rulemaking for procedural rules. Both arguments are unpersuasive.

Chestek first argues that the domicile address requirement is a substantive rule because it imposes a new requirement on applicants to obtain a trademark—providing a domicile address rather than a mailing address—and therefore substantively alters the rights or interests of applicants. We disagree.

The parties each cite several cases from the United States Court of Appeals for the D.C. Circuit addressing the boundaries of substantive and procedural rules to support their respective positions. The most instructive case here is *JEM Broadcasting Co. v. F.C.C.*, 22 F.3d 320 (D.C. Cir. 1994), which states that the "critical feature of the procedural exception [of § 553(b)(A)] is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." *Id.* at 326 (internal quotation marks omitted) (citation omitted). The court recognized that nearly any procedural requirement that impacts outcomes could then be described as substantive, "but to pursue that line of analysis results in the obliteration of the distinction that Congress demanded." *Id.*; *see also Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Nat'l Lab. Rels. Bd.*, 57 F.4th 1023, 1034 (D.C. Cir. 2023) (describing "rules as procedural if they are primarily directed toward improving the efficient and effective operations of an agency.") (internal quotation marks omitted) (citation omitted).

The key distinction here is similarly not whether compliance with the domicile address requirement affects a party's ability to obtain a trademark, but whether the requirement affects the substantive trademark standards by which the Office examines a party's application. *See JEM Broadcasting*, 22 F.3d at 327 ("The critical fact here, however, is that the [challenged] rules did not change the *substantive standards* by which the FCC evaluates license applications, *e.g.*, financial qualifications, proposed programming, *and transmitter location.* This fact is fatal to

JEM's claim."). Here, the new rule requires additional information about applicants, *i.e.*, their domicile address. Requiring different or additional information from applicants regarding their addresses merely "alter[s] the manner in which the [applicants] *present themselves* . . . to the agency." *Id.* at 326 (emphasis added). It does not alter the substantive standards by which the USPTO evaluates trademark applications, *e.g.*, a mark's use in commerce or distinctiveness. The USPTO's requirement for applicants to provide a domicile address under 37 C.F.R. §§ 2.32(a)(2) and 2.189 is therefore a procedural rule that is excepted from notice-and-comment rulemaking.

Chestek alternatively argues that, even if the rule is procedural, 35 U.S.C. § 2 of the Patent Act expressly requires the USPTO to undertake notice-and-comment rulemaking because a cross-reference to § 553 of the APA is Congress's standard way of mandating notice-and-comment rulemaking and overriding § 553's carveouts. *See* 35 U.S.C. § 2(b)(2) ("regulations . . . shall be made in accordance with section 553 of title 5"). To support that argument, Chestek points to the Food Stamp Act which similarly authorizes an agency to issue regulations "in accordance with the procedures set forth in section 553 of title 5," 7 U.S.C. § 2013(c), despite § 553(a)'s explicit exemption for "matter relating to . . . grants [and] benefits," 5 U.S.C. § 553(a)(2).

As an initial matter, the relevant language of the Food Stamp Act and the Patent Act is not identical. The Food Stamp Act explicitly invokes "*the procedures set forth* in section 553," 7 U.S.C. § 2013(c) (emphasis added) whereas 35 U.S.C. § 2 does not. Rather, 35 U.S.C. § 2 generally authorizes the USPTO to promulgate regulations "in accordance with section 553 of title 5." 35 U.S.C. § 2(b)(2)(B). Additionally, Chestek's arguments relating to the Food Stamp Act only address the subject matter exemptions under § 553(a) and fail to address the distinction between these subject matter exemptions and the procedural

exceptions under § 553(b). In fact, several of the cases Chestek cited recognize that the procedural and good-cause exceptions to notice-and-comment rulemaking in §§ 553(b)(A) and (B) still apply to the Food Stamp Act despite the cross-reference to § 553. *See generally Levesque v. Block*, 723 F.2d 175, 179–85 (1st Cir. 1983) (recognizing that the interpretive rule and good-cause exceptions would still apply to rulemaking under the Food Stamp Act); *Klaips v. Bergland*, 715 F.2d 477, 482–83 (10th Cir. 1983) (discussing the 5 U.S.C. § 553(b) exceptions to notice-and-comment rulemaking in the context of the Food Stamp Act). Chestek has therefore offered no support for its position that the cross-reference to § 553 in 35 U.S.C. § 2(b) displaces the procedural exceptions to notice-and-comment rulemaking contained within § 553(b). That is particularly true when displacing that exception for procedural rules would be inconsistent with our holdings regarding interpretive rules under the same provision of § 553(b). *See Cooper Techs.*, 536 F.3d at 1336–37 (holding that 5 U.S.C. § 553, and thus 35 U.S.C. § 2(b)(2)(B), does not require notice-and-comment rulemaking for interpretative rules); *Animal Legal Def. Fund*, 932 F.2d at 931. The procedural exception to notice-and-comment rulemaking under § 553(b) therefore applies to the domicile address requirement.

Having found the challenged rules within the procedural exception to notice-and-comment rulemaking, we need not address Chestek's argument that the proposed rule failed to provide sufficient notice of the domicile address requirement.

II

Next, Chestek argues that the USPTO's promulgation of the domicile address requirement was arbitrary and capricious. An agency rule is arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an

important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Courts must "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). But courts "may not supply a reasoned basis for the agency's action that the agency itself has not given." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Chestek argues that the final rule is arbitrary and capricious because it offers an insufficient justification for the domicile address requirement. It argues that the USPTO's explanations for the changes from the proposed rule to the final rule were its only justification for the domicile address requirement and that they were insufficient because the USPTO stated only that "[f]or consistency with this [U.S. counsel] requirement, the USPTO has clarified that the address required in §§ 2.22(a)(1) and 2.32(a)(2) is the domicile address," and that, "to authorize the domicile address, the USPTO codifies a new regulatory section at 37 CFR 2.189." *See Final Rule* at 31500.

Chestek's argument that the USPTO offered an insufficient justification for the domicile address requirement is incorrect. The USPTO adopted the domicile address requirement as part of a larger regulatory scheme to require foreign trademark applicants, registrants, or parties to a trademark proceeding to be represented by U.S. counsel. In the proposed rule, the USPTO explained that the U.S. counsel requirement was needed because of the influx of unauthorized practice of law by foreign parties improperly representing trademark applicants and purportedly *pro se* foreign applicants failing to comply with the requirements of the USPTO. *Proposed Rule* at 4394. It went on to explain the inadequacies of the current mechanisms and

sanctions and provided statistics showing, among other things, the influx in *pro se* foreign applicants. *Id.* at 4395–96. The USPTO then explained that a majority of other countries with similar domestic counsel requirements "condition the requirement on domicile" and that the USPTO "intends to follow this practice." *Id.* at 4396. To condition the U.S. counsel requirement on domicile, the USPTO would necessarily need to know applicants' domicile, which it defined in the final rule as "the permanent legal place of residence of a natural person or the principal place of business of a juristic entity." *Final Rule* at 31510. Because the USPTO would need to know an applicant's domicile address to determine if the U.S. counsel requirement applied, it reasonably required all applicants to provide their domicile address. The USPTO's justification for all applicants to provide a domicile address is therefore at least reasonably discernable when considered in the full context of the U.S. attorney requirement and the decision to condition that requirement on domicile.

That the final rule represents a change in longstanding USPTO policy does not alter our conclusion. The USPTO "display[ed] awareness that it [was] changing position" and "show[ed] that there [were] good reasons for the new policy." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). As Chestek acknowledges, 37 C.F.R. § 2.32 has long required an applicant to provide an address. The USPTO understood that its final rule would enact a change in policy. *Final Rule* at 31500 (explaining that the domicile address requirement would revise "the address required in §§ 2.22(a)(1) and 2.32(a)(2) [to be] the domicile address" and acknowledging that the final rule would "authorize the USPTO to require an applicant or registrant to provide and maintain a current domicile address."). And, as discussed above, this is not a situation where an agency "gave almost no reasons at all" and offered

only "conclusory statements" to explain its new policy. *Encino Motorcars*, 579 U.S. at 224.

Additionally, the USPTO's statements that the revisions from the proposed rule to the final rule were "[f]or consistency" were not offered as justification for the domicile address requirement, as suggested by Chestek. Those statements were an explanation for the changes from the proposed rule to the final rule. *See Final Rule* at 31500. Those statements were adequate to explain its shift in position from the proposed rule to the final rule because, contrary to Chestek's position, the USPTO did not drastically shift that position. In the proposed rule, the USPTO indicated that it would follow other countries' practices and condition the U.S. counsel requirement on domicile. *Proposed Rule* at 4396. It then defined domicile under 37 C.F.R. § 2.2(o) to include "the permanent legal place of residence of a natural person." *Id.* at 4402. The USPTO also included in the proposed rule revisions to 37 C.F.R. § 2.32(a) to require applicants to provide "[t]he address of the applicant" and to 37 C.F.R. § 2.11(b) to state that it could request any information necessary from applicants to determine if the U.S. counsel requirement applied. *Id.* at 4402–03. The information necessary to determine the applicability of the U.S. counsel requirement would logically include information verifying the applicants domicile address. Accordingly, the proposed rule clearly indicated that the USPTO may request that information from applicants and that it would require applicants to provide an address. The final rule then clarified that the required address was the domicile address and that all applicants must, rather than may be required to, provide it, *see Final Rule* at 31500, 31511, which was not a drastic shift in policy from the proposed rule. The USPTO's decision to require the address provided by all applicants to be a domicile address was therefore not arbitrary or capricious for failure to provide a reasoned justification.

Finally, Chestek argues that the domicile address requirement was arbitrary and capricious because the final rule failed to consider privacy and other concerns introduced by the requirement, such as its impact on victims of domestic violence or on homeless individuals. However, an agency is not required "to consider all policy alternatives in reaching decision." *State Farm*, 463 U.S. at 51. On appeal, courts must "judge the reasonableness of an agency's decision on the basis of the record before the agency at the time it made its decision." *Rural Cellular Ass'n v. F.C.C.*, 588 F.3d 1095, 1107 (D.C. Cir. 2009). That is particularly true where, as here, the policy concerns Chestek raises now were not raised before the agency. Indeed, Chestek does not contend that those concerns were before the agency at the time it promulgated the final rule. In fact, the only concerns before the USPTO regarding the domicile address requirement were raised in comments relating to foreign applicants potentially filing fraudulent addresses, which the USPTO considered and addressed. *Final Rule* at 31505. The USPTO did not receive comments from parties expressing the privacy and other concerns raised by Chestek in this case.

Separately, that situation is unlike the situation in *State Farm*, where the agency regulating vehicle safety standards failed to consider the impact of two different styles of seatbelts on seatbelt usage, because there, unlike here, the record contained information on "precisely the type of issue" the agency was expected to "bring its expertise to bear." *See* 463 U.S. at 53–54. We therefore find that the USPTO did not act arbitrarily or capriciously by failing to consider an important aspect of the problem based on the record before it. *See id.* at 51 ("[R]ulemaking cannot be found wanting simply because the agency failed to include every alternative . . .") (internal quotation marks omitted) (citation omitted).

## CONCLUSION

Because we conclude the USPTO properly promulgated the domicile address requirement and Chestek failed to comply with this requirement, we affirm the Board's refusal to register Chestek's mark. We have considered Chestek's remaining arguments and find them unpersuasive.

**AFFIRMED**